**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

JONATHAN L. ADAM and    §
GCZ GLOBAL, LLC,        §
                        §
    Plaintiffs,         §
                        §
                        §   **Civil Action No. 4:26-cv-5240**
v.                      §
                        §
SECURITIES AND EXCHANGE §
COMMISSION and BLISS CREEK §
FUND 1, LLC             §
                        §
    Defendants.         §

---

**COMPLAINT IN INTERPLEADER
AND FOR DECLARATORY JUDGMENT**

---

Plaintiffs Jonathan L. Adam ("Adam") and GCZ Global, LLC ("GCZ," and collectively "Plaintiffs"), by and through their undersigned counsel, respectfully file this *Complaint in Interpleader and for Declaratory Judgment* pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. § 2201, and in support thereof state as follows:

**INTRODUCTION**

1. Plaintiffs bring this action because both the SEC and Bliss Creek seek to hold Plaintiffs liable for the same alleged wrongful conduct—the operation of an alleged securities scheme through which Bliss Creek and others provided funds to GCZ—and both are pursuing overlapping recoveries against the same finite pool of frozen assets. Plaintiffs face obligations arising from (1) an asset freeze order and a consent judgment entered in the Northern District of Georgia requiring Plaintiffs to pay disgorgement of any ill-gotten gains, prejudgment interest, and civil penalties to Defendant Securities and Exchange Commission ("SEC") in amounts yet to be

determined, and (2) a default judgment of $141,063,243.99 entered in favor of Defendant Bliss Creek Fund 1, LLC ("Bliss Creek" and, collectively with the SEC, the "Claimants") by the Natrona County District Court of Wyoming. Plaintiffs seek a judicial determination to resolve the multiple potential obligations Plaintiffs face and protect them from the risk of multiple liability for the same underlying conduct and the same resulting harm. Unless any payment to Bliss Creek is credited against the SEC's overlapping disgorgement or investor-loss claim (or vice versa), Plaintiffs may be forced to pay twice for the same alleged loss arising from the same transactions.

2.    Time is of the essence. On June 5, 2026, Bliss Creek filed an Application for Writ of Execution in the Texas Business Court seeking to seize and sell Adam's property statewide in satisfaction of its judgment—the very same property that the federal Asset Freeze Order prohibits Adam from transferring or disposing of. Absent prompt judicial intervention, Plaintiffs face the precise situation Rule 22 interpleader is designed to address: multiple claimants seeking to impose liability on Plaintiffs for the same alleged wrongdoing, creating irreconcilable obligations and a risk of double liability. GCZ, as a co-defendant in the SEC action and a co-judgment debtor under the Wyoming default judgment, faces the same competing demands and is equally entitled to interpleader and declaratory relief.

3.    This Court's authority to enter such relief is inherent in the interpleader remedy itself. A court exercising jurisdiction over competing claims to a finite pool of assets necessarily possesses the equitable power to preserve that pool pending adjudication. *See* 28 U.S.C. § 2361 (expressly authorizing courts in statutory interpleader cases to restrain claimants from instituting or prosecuting any proceeding affecting the property at issue); *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015) (Rule 22 interpleader and statutory interpleader under 28 U.S.C. § 1335 "differ in jurisdictional requirements but not in substance");

**COMPLAINT IN INTERPLEADER**                    2

*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 532 n.9 (1967) (recognizing that interpleader encompasses actions "in the nature of interpleader"). The same equitable principles that authorize restraining orders in statutory interpleader cases apply with equal force to Rule 22 actions.

4.     The Anti-Injunction Act, 28 U.S.C. § 2283, does not bar this relief. Section 2283 applies only to injunctions staying "proceedings in a State court." The SEC enforcement action is a federal proceeding, so § 2283 is inapplicable to any restraint directed at the SEC. As to Bliss Creek, Plaintiffs do not seek to enjoin any state court proceeding, either in Wyoming or Texas; rather, Plaintiffs seek to enjoin Bliss Creek from engaging in collection efforts—execution, levy, garnishment, and turnover—against Plaintiffs. In any event, to the extent § 2283 applies at all, the requested relief falls squarely within the statute's "necessary in aid of jurisdiction" exception. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334–35 (5th Cir. 1981) (upholding injunction against state court proceedings where necessary to protect federal court's flexibility and authority to decide case before it), cert. denied, 456 U.S. 936 (1982); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (federal court may enjoin proceedings where necessary to preserve its ability to adjudicate the matter before it).

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). In Rule 22 interpleader actions, as in declaratory judgment actions, federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant. *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 585 (D.C. Cir. 1993); *Bell & Beckwith v. United States, IRS*, 766 F.2d 910, 912–14 (6th Cir. 1985) ("[I]nterpleader may be used 'to reach an early and effective determination of disputed questions'" and the jurisdictional principle applicable to declaratory judgments applies equally to interpleader); *Morongo Band of*

**COMPLAINT IN INTERPLEADER**                    3

*Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1384 (9th Cir. 1988) ("In an interpleader action, as in an action for declaratory relief the plaintiff seeks an adjudication of claims that the defendants threaten to assert against the plaintiff . . . Federal jurisdiction over both types of action is proper if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law.").

6.      Here, the SEC not only could bring but has brought a coercive action under the federal securities laws to enforce its disgorgement judgment and Asset Freeze Order against Plaintiffs' assets. That action arises under the Securities Act of 1933 and the Securities Exchange Act of 1934, as would any other enforcement actions the SEC might bring. Federal question jurisdiction therefore exists in this interpleader. *See Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 302 (S.D.N.Y. 2001) (finding federal question jurisdiction in interpleader action where the SEC held a disgorgement judgment and asset freeze order creating its claim to a brokerage account); *see also Franchise Tax Bd. of State of Cal. v. Constr. Lab. Vacation Trust for S. Cal.,* 463 U.S. 1, 13 (1983) (federal question exists where suit requires resolution of a substantial question of federal law). Supplemental jurisdiction over state-law claims exists under 28 U.S.C. § 1367.

7.      The SEC is not immune from suit in this action. Sovereign immunity does not bar claims seeking relief other than money damages against a federal agency. 5 U.S.C. § 702. Plaintiffs do not seek money damages from the SEC; they seek equitable and declaratory relief. Additionally, the United States may be named as a party in any civil action to adjudicate a disputed title to real or personal property on which the United States has or claims a lien or other interest. 28 U.S.C. § 2410(a). The SEC claims an equitable interest in the Disputed Assets (defined below) through the

**COMPLAINT IN INTERPLEADER**                        4

Asset Freeze Order and has sought a constructive trust over the Angleton, Texas real properties. The SEC's equitable interest constitutes a "lien or other interest" within the meaning of § 2410.

8.    This Court has personal jurisdiction over the SEC as an agency of the United States government subject to suit in any district where venue is proper. This Court has personal jurisdiction over Bliss Creek because Bliss Creek has purposefully availed itself of the privilege of conducting activities within this judicial district by negotiating agreements with GCZ in this district upon which its Wyoming judgment is based, domesticating its Wyoming judgment in the Texas Business Court, filing an Application for Writ of Execution seeking to levy upon property located within this district, and noticing a post-judgment deposition of Adam in Texas. Bliss Creek's claims also arise directly out of its Texas enforcement activities.

9.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the competing claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district, including real property located in Angleton, Texas. Moreover, this is the only federal district in which all Claimants are subject to personal jurisdiction. Bliss Creek's relevant contacts—its negotiations with GCZ in this district, its domestication of the Wyoming judgment in the Texas Business Court, and its Application for Writ of Execution seeking to levy upon property in this district—are all in the Southern District of Texas. Bliss Creek is not a party to the SEC enforcement action in the Northern District of Georgia and, upon information and belief, has no contacts with that forum that would support the exercise of personal jurisdiction over it there. Wyoming would likewise be an inappropriate jurisdiction as Adam has a live appeal contesting personal jurisdiction in that forum. Because this action is brought under Rule 22, which does not provide for nationwide service

**COMPLAINT IN INTERPLEADER**                    5

of process, Plaintiffs must bring this interpleader in a forum where all adverse claimants can be joined. This district is that forum.

## PARTIES

10.    Adam is an individual who resides in Brazoria County, Texas. Adam is a named defendant in an SEC enforcement action pending in the Northern District of Georgia, Case No. 24-3774-MHC, and is a judgment debtor under a default judgment entered in the Natrona County District Court of Wyoming, Case No. 2024-CV-0114404.

11.    GCZ is a limited liability company incorporated in Wyoming in 2023. Adam is the sole member of GCZ. GCZ is a named defendant in an SEC enforcement action pending in the Northern District of Georgia, Case No. 24-3774-MHC, and is a judgment debtor under a default judgment entered in the Natrona County District Court of Wyoming, Case No. 2024-CV-0114404.

12.    The SEC is an agency of the United States government. The SEC obtained a Consent Order Freezing Assets against Tanner S. Adam, Jonathan L. Adam, Triten Financial Group, LLC, and GCZ Global LLC in the Northern District of Georgia on August 26, 2024.

13.    Bliss Creek is a Wyoming limited liability company. Bliss Creek obtained a default judgment in the amount of $141,063,243.99 against GCZ and Adam from the Natrona County District Court of Wyoming on April 4, 2025, which was subsequently domesticated as to Adam in the Texas district court.

## FACTUAL BACKGROUND

**A.    The SEC Enforcement Action and Asset Freeze**

14.    On or about August 26, 2024, the United States District Court for the Northern District of Georgia entered two Consent Orders Freezing Assets in the matter styled *Securities and Exchange Commission v. Tanner S. Adam, Jonathan L. Adam, Triten Financial Group, LLC, and*

**COMPLAINT IN INTERPLEADER**                6

4930-9685-5225, v. 1

*GCZ Global LLC*, Civil Action File No. 24-3774-MHC (collectively, the "Asset Freeze Orders"). Attached as **Exhibits A and B**.

15.    One of the asset freeze orders dated August 26, 2024 directly froze the assets of Plaintiffs, including but not limited to funds located in any bank, brokerage firm, financial institution, third-party payment processor, cryptocurrency exchange, or any other holder or custodian of digital assets, as well as real property. **Exhibit A**. The second asset freeze order directly froze the assets of the "T. Adam Defendants" (defined as Tanner Adam and Triten Financial Group, LLC), including but not limited to funds located in any bank, brokerage firm, financial institution, third-party payment processor, cryptocurrency exchange, or any other holder or custodian of digital assets. *See* **Exhibit B.**

16.    The Asset Freeze Orders independently enjoin all persons who hold or possess the direct or indirect proceeds of the securities offering alleged in the SEC's complaint from withdrawing, selling, transferring, dissipating, assigning, pledging, alienating, encumbering, disposing of, or diminishing the value of such funds or assets. To the extent Plaintiffs hold any proceeds derived from the securities offering at issue, the Asset Freeze Orders prohibit them from transferring, alienating, or disposing of those assets regardless of whether they are held in Adam's individual name, through GCZ Global LLC, or otherwise.

17.    The frozen assets include real property located at 715 S. Walker Street, Angleton, Texas 77515; 9 Greystone Court, Angleton, Texas 77515; 518 Bryan Street, Angleton, Texas 77515; and 719 S. Walker, Angleton, Texas 77515. *See* **Exhibit A**, pp. 3-4. 518 Bryan Street, Angleton, Texas 77515 is Adam's homestead. Importantly, the remaining properties subject to the Asset Freeze Order are homesteaded properties of uninvolved relatives of Adam.

**COMPLAINT IN INTERPLEADER**                    7

18.     The Asset Freeze Orders further froze numerous financial accounts held at First Carolina Bank, JP Morgan Chase Bank, N.A., Comerica Bank, and Chicago Title Insurance Company, as well as cryptocurrency accounts at Kraken exchange. *Id*.

19.     On August 27, 2024, the same Georgia court entered a separate Consent Judgment as to Adam (the "Adam Consent Judgment"). Attached as **Exhibit C**.

20.     Critically, Section IV of the Adam Consent Judgment orders Adam to pay disgorgement of any ill-gotten gains, prejudgment interest thereon, and a civil penalty, with the amounts to be determined by the Court upon motion of the Commission. Prejudgment interest is to be calculated from January 1, 2023.

21.     Similarly, on August 27, 2024, the court entered a Consent Judgment as to GCZ that orders GCZ to pay disgorgement of any ill-gotten gains, prejudgment interest thereon, and a civil penalty, with the amounts to be determined by the Court upon motion of the Commission. Attached as **Exhibit D**.

**B.      The Wyoming Default Judgment**

22.     On September 19, 2024, Bliss Creek filed a Complaint against GCZ and Adam in the Natrona County District Court of Wyoming, Seventh Judicial District, Case No. 2024-CV-0114404 (the "Wyoming Action"), stating causes of action for fraud, negligence, breach of contract, and breach of the implied duty of good faith and fair dealing.

23.     In the Wyoming Action, Bliss Creek alleged $14 million in actual damages, approximately $29 million in claimed compensatory damages (i.e., alleged delinquent earnings), and **nearly $100 million in punitive damages**.

24.     Adam was served on December 4, 2024, and GCZ was served on December 5, 2024.

COMPLAINT IN INTERPLEADER                    8

4930-9685-5225, v. 1

25.     Defendants' defaults were entered on January 28, 2025.

26.     On April 4, 2025, a default judgment was entered in the Wyoming Action in favor of Bliss Creek and against GCZ and Adam, jointly and severally, in the total amount of $141,063,243.99, representing $47,021,081.33 in unpaid principal and compensatory damages and $94,042,162.66 in punitive damages, plus interest at 7% per annum. Attached as **Exhibit E**.

**C.      Domestication of the Wyoming Judgment in Texas**

27.     On February 6, 2026, Bliss Creek filed a Notice of Filing of Foreign Judgment against Adam in Texas under the Uniform Enforcement of Foreign Judgments Act ("UEFJA"). Adam removed the matter to the Business Court of Texas, Third Division, Cause No. 26-BC11A-0019.

28.     Adam filed a Motion to Vacate Domesticated Foreign Judgment, arguing that the Wyoming Court lacked personal jurisdiction over him individually and that the default judgment was obtained through extrinsic fraud.

29.     On April 21, 2026, the Texas Business Court denied Adam's Motion to Vacate, finding that Adam did not overcome the presumption of validity of the Wyoming judgment through clear and convincing evidence. Attached as **Exhibit F**.

30.     On May 7, 2026, Adam filed a Notice of Appeal to the Fifteenth Court of Appeals, appealing the Texas Business Court's April 21, 2026 order denying his Motion to Vacate. Attached as **Exhibit G**. The appeal remains pending.

**D.      GCZ's Motion for Relief from the Wyoming Judgment**

31.     GCZ filed a Rule 60(b) Motion for Relief from the Wyoming Default Judgment on March 27, 2026, based, in part, on Bliss Creek's fraud, misrepresentation, and misconduct.

**COMPLAINT IN INTERPLEADER**                    9

Attached as **Exhibit H**. Briefing on that matter has concluded, but the Wyoming court has yet to issue a ruling.

E.     **Bliss Creek's Post-Judgment Enforcement Efforts**

32.     On June 5, 2026, Bliss Creek filed an Application for Writ of Execution in the Texas Business Court, Eleventh Division A, seeking issuance of a writ directing the sheriff or constable of any county in Texas to seize and sell the non-exempt property of Adam and GCZ in satisfaction of the $141,063,243.99 judgment, plus post-judgment interest and costs. Attached as **Exhibit I**.

33.     Bliss Creek's Application specifically seeks to levy upon all non-exempt personal and real property of Adam, including but not limited to bank accounts and financial accounts, accounts receivable, cash on hand, vehicles, equipment, inventory, business assets, interests in business entities, intellectual property interests and royalty rights, and any other non-exempt property located within the State of Texas.

F.     **The Disputed Assets**

34.     As used in this Complaint, the "Disputed Assets" means all assets of Plaintiffs that are simultaneously subject to the Asset Freeze Order entered by the Northern District of Georgia and the Wyoming default judgment upon which Bliss Creek seeks execution, including but not limited to: (a) the real property located at 715 S. Walker Street, Angleton, Texas 77515; 9 Greystone Court, Angleton, Texas 77515; and 719 S. Walker, Angleton, Texas 77515; (b) all funds held in financial accounts at First Carolina Bank, JP Morgan Chase Bank, N.A., Comerica Bank, Chicago Title Insurance Company, and Wells Fargo Bank, N.A. (including but not limited to accounts ending in 1972 and 4153 held in Adam's individual name and accounts ending in 3372 and 5573 held in the name of GCZ), to the extent frozen by the Asset Freeze Order; (c) all

**COMPLAINT IN INTERPLEADER**          10

cryptocurrency holdings at Kraken exchange and Coinbase, to the extent frozen by the Asset Freeze Order; (d) non-frozen funds to pay owed interest calculated since January 1, 2023; and (e) any other non-exempt personal or real property of Adam located within the State of Texas that is subject to both the Asset Freeze Order and Bliss Creek's Application for Writ of Execution. The Disputed Assets do not include any property that is exempt from execution or forced sale under Texas or federal law, including Adam's homestead located at 518 Bryan Street, Angleton, Texas 77515.

35.    Notably, the SEC's enforcement action includes the loss of funds upon which Bliss Creek's judgment is based. Bliss Creek purchased approximately $16,040,000 of Tether from GCZ represented in a third-party account between approximately March 2023 and June 2024.[1] The funds Bliss Creek used to purchase Tether from GCZ are included within the SEC's calculation of total funds raised from all individuals and entities that provided funds to the Defendants in the SEC enforcement action—a pool the SEC defines as approximately $61,559,934. The SEC seeks to recover these losses from the Plaintiffs herein through disgorgement, constructive trust, and the Asset Freeze Order. In other words, the SEC is seeking to remediate Bliss Creek's losses as part of the broader pool of "investor" losses. Bliss Creek is simultaneously seeking to recover those same losses independently through enforcement of a $141,063,243.99 default judgment. Both claimants—the SEC and Bliss Creek—are seeking to impose liability on Plaintiffs for the same alleged wrongdoing and the same resulting harm. They are also pursuing the same finite pool of frozen assets to satisfy claims arising from the same underlying transactions.

---

[1] Although the SEC characterizes all providers of funds to GCZ as "investors," Plaintiffs dispute that characterization. Bliss Creek provided funds to GCZ pursuant to purchase and sale agreements and a technology services agreement— not the promissory notes or lending agreements used with Triten. Nothing in this Complaint is intended to, and nothing herein shall be construed to, waive, concede, or otherwise prejudice Plaintiffs' position that Bliss Creek and the other fund providers to GCZ were purchasers or counterparties under commercial agreements, not investors in securities. Plaintiffs reserve all rights and defenses on that issue.

**COMPLAINT IN INTERPLEADER**                11

36.     The risk of double liability is compounded by the limited nature of the Disputed Assets. The Disputed Assets consist of specifically identified property: four parcels of real property in Angleton, Texas (one of which is Adam's exempt homestead); financial accounts at First Carolina Bank, JP Morgan Chase Bank, N.A., Comerica Bank, Chicago Title Insurance Company, and Wells Fargo Bank, N.A.; and cryptocurrency holdings at Kraken exchange and Coinbase, and any other assets that fall within the purview of the Asset Freeze Order and Consent Judgments. The total value of these non-exempt assets is vastly insufficient to satisfy either competing claim, let alone both. The SEC seeks a constructive trust over the same Angleton real properties on the theory that investor funds—including Bliss Creek's funds—were used to purchase or improve those properties. Bliss Creek's Application for Writ of Execution targets those same properties and accounts. The overlap is nearly total: there is effectively no asset in the Disputed Assets pool that is claimed by one party but not the other.

**G.     The Competing Claims Create a Risk of Multiple Liability for the Same Alleged Wrongdoing**

37.     Plaintiffs face competing claims to the same pool of assets from multiple parties in multiple jurisdictions, again both to satisfy liability for the same alleged harm. The SEC asserts a claim to Plaintiffs' assets through the Asset Freeze Order, the Adam Consent Judgment, and the GCZ Consent Judgment, which orders Plaintiffs to pay disgorgement and civil penalties in amounts yet to be determined by the Northern District of Georgia. Bliss Creek asserts a claim to Plaintiffs' assets by virtue of the $141,063,243.99 default judgment entered in the Wyoming Action and domesticated in Texas, and Bliss Creek is actively seeking to execute on those assets through a writ of execution.

38.     The conflict between the competing claims is now immediate and concrete. Bliss Creek's Application for Writ of Execution seeks to seize and sell the very same assets that the

**COMPLAINT IN INTERPLEADER**                    12

Asset Freeze Order prohibits Plaintiffs from transferring, alienating, or disposing of. If a writ of execution issues and a sheriff or constable levies upon frozen assets, Adam will be unable to comply with both the federal asset freeze and the state-court execution—the competing obligations are irreconcilable. This is precisely the type of "double or multiple liability" that Rule 22 interpleader exists to resolve. *See* Fed. R. Civ. P. 22(a)(1).

39.     Moreover, absent interpleader or an agreement that each dollar Plaintiffs pay to Bliss Creek will reduce the SEC judgment dollar-for-dollar, or *vice versa*, Plaintiffs face a substantial risk of being compelled to satisfy overlapping judgments for the same alleged conduct and the same alleged damages—effectively paying twice from the same limited pool of frozen assets for a single asserted injury. That risk is not speculative: Bliss Creek seeks immediate execution against assets that are already subject to a federal freeze, while the SEC judgment remains outstanding and enforceable. Without a mechanism to prevent duplicative recovery, any payment to Bliss Creek could simply deplete the frozen estate without reducing Plaintiffs' exposure to the SEC, leaving Plaintiffs liable twice over for the same alleged loss.

40.     GCZ is exposed to the same competing claims: it is independently subject to the Asset Freeze Order, the GCZ Consent Judgment, and the Wyoming default judgment, and Bliss Creek's Application for Writ of Execution expressly seeks to levy upon GCZ's assets, all to satisfy liability for the same alleged harm. The fact that Bliss Creek has not yet initiated a separate execution proceeding against GCZ does not defeat GCZ's standing; Rule 22 requires only that a plaintiff "is or ***may be*** exposed to double or multiple liability." *See Tittle v. Enron Corp.*, 463 F.3d 410, 424 n.10 (5th Cir. 2006) ("even the mere 'threat of multiple vexation by future litigation

**COMPLAINT IN INTERPLEADER**                    13

provides sufficient basis for interpleader'") (emphasis added) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, S.A., 696 F.2d 359, 364 (5th Cir. 1983)).[2]

**H.      Efforts to Reach Agreement Without Judicial Intervention**

41.      Plaintiffs' counsel raised concerns about competing judgments with counsel for Bliss Creek. Counsel for Bliss Creek confirmed that, although it is in active communications with the SEC, there is no existing agreement between Bliss Creek and the SEC outlining how payment on one judgment will affect the other. Counsel for Bliss Creek further agreed to discuss the possibility of such an agreement with the SEC in order to avoid the need for judicial intervention. Counsel for Bliss Creek has not secured an agreement. Accordingly, judicial intervention is required.

## CAUSE OF ACTION

**1.      Interpleader Under Federal Rule of Civil Procedure 22**

42.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 41 above.

43.      Federal Rule of Civil Procedure 22 permits a party who is or may be exposed to double or multiple liability to join all claimants in a single action and obtain a determination of their respective rights to the disputed property. *See* Fed. R. Civ. P. 22(a)(1).

---

[2] Nothing in this Complaint is intended to, and nothing herein shall be construed to, waive, diminish, or otherwise affect Plaintiffs' rights to claim any exemptions available under applicable law, including but not limited to Adam's homestead exemption under Article XVI, Section 50 of the Texas Constitution and Texas Property Code §§ 41.001–41.003. The disputed assets that are the subject of this action do not include any property that is exempt from execution or forced sale under Texas or federal law. Moreover, nothing in this Complaint waives the rights of Adam to contest the domesticated judgment on appeal or for Plaintiffs to contest the default judgment in Wyoming. In addition, nothing in this Complaint is intended to waive, diminish, or otherwise affect the rights of the owners of other properties subject to the Asset Freeze Order.

**COMPLAINT IN INTERPLEADER**                    14

44.     Two or more adverse claimants, including the SEC and Bliss Creek, claim entitlement to the same assets and funds currently held by or attributable to Plaintiffs.

45.     Plaintiffs are or may be exposed to double or multiple liability by reason of these competing claims. The Asset Freeze Order prohibits Plaintiffs from transferring or disposing of assets, while Bliss Creek is actively seeking a writ of execution to seize and sell those same assets. These obligations are irreconcilable, and Plaintiffs cannot satisfy one without potentially violating the other. *See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 195 (5th Cir. 2015) ("even the mere 'threat of multiple vexation by future litigation provides sufficient basis for interpleader'"). Accordingly, Plaintiffs face the prospect of double liability for the same conduct, including paying on the default judgment while remaining liable to the SEC for the same conduct and having to pay again from the same finite pool.

46.     Plaintiffs ask this Court to adjudicate and determine the respective rights, priorities, and interests of the competing claimants in and to the Disputed Assets based on the same alleged wrongful conduct.

47.     Plaintiffs are entitled to interpleader relief under Rule 22 regardless of whether their own claim to the assets is adverse to, or independent of, the claims of the other parties. *See* Fed. R. Civ. P. 22(a)(1) (permitting interpleader by any party "exposed to double or multiple liability," without requiring disinterestedness); *Airborne Freight Corp. v. United States*, 195 F.3d 238, 240 (5th Cir. 1999) (recognizing that "an action in the nature of interpleader, in which the plaintiff-stakeholder also makes a claim to the stake," may be maintained under either Rule 22 or § 1335); *Pan Am. Fire & Cas. Co. v. Revere*, 188 F. Supp. 474, 486 n.10 (E.D. La. 1960) ("Rule 22(1), F.R.Civ.P., provides that the remedy is available even though the plaintiff avers that he is not liable in whole or in part to any or all of the claimants."); *see also Auto Parts Mfg. Miss., Inc. v. King*

**COMPLAINT IN INTERPLEADER**                    15

*Constr. of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015) (Rule 22 interpleader and statutory interpleader under 28 U.S.C. § 1335 "differ in jurisdictional requirements but not in substance"); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 532 n.9 (1967) (recognizing that federal interpleader encompasses actions "in the nature of interpleader," meaning "those in which the plaintiff is not wholly disinterested with respect to the fund").

**2.     Declaratory Judgment (28 U.S.C. § 2201)**

48.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 47 above.

49.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration in a case of actual controversy within its jurisdiction.

50.     An actual, justiciable controversy exists between Plaintiffs and Defendants regarding the respective priority of the SEC's claims (arising from the Asset Freeze Order and the Adam Consent Judgment) and Bliss Creek's claims (arising from the domesticated Wyoming default judgment) to Plaintiffs' assets. This controversy is concrete and immediate: Bliss Creek is actively seeking a writ of execution to seize assets that are subject to the federal Asset Freeze Order, and the SEC holds an adjudicated but unliquidated claim for disgorgement and penalties against those same assets.

51.     Plaintiffs require a judicial declaration determining: (a) the relative priority of the SEC's interest in Plaintiffs' assets under the Asset Freeze Order, the Adam Consent Judgment, and the GCZ Consent Judgment as against Bliss Creek's interest under the domesticated Wyoming default judgment for the same alleged wrongful conduct; (b) whether Bliss Creek may lawfully execute upon assets that are subject to the federal Asset Freeze Order; and (c) whether, to the extent

**COMPLAINT IN INTERPLEADER**                    16

Bliss Creek recovers from assets subject to the SEC's disgorgement, constructive trust, or investor-loss claims, such recovery must reduce Plaintiffs' corresponding obligation to the SEC dollar-for-dollar to prevent duplicative recovery for the same alleged losses.

52.     Absent such a declaration, Plaintiffs are left without guidance as to which competing obligation takes precedence and face the imminent risk of sanctions, contempt, or other adverse consequences regardless of which obligation they honor. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory judgment appropriate where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jonathan L. Adam and GCZ Global, LLC respectfully request that this Court:

1. Accept jurisdiction over this interpleader and declaratory judgment action;

2. Issue an order requiring all Defendants/Claimants to interplead and settle among themselves their respective rights to the Disputed Assets;

3. Enter a preliminary order staying all enforcement and collection efforts against Plaintiffs' assets, including but not limited to execution, levy, garnishment, or turnover proceedings, until this Court has determined the respective rights, priorities, and interests of the competing claimants for the same alleged wrongful conduct;

4. Enter an order determining the respective rights, priorities, and interests of the claimants in and to the Disputed Assets for the same alleged wrongful conduct;

5. Enter a declaratory judgment determining the relative priority of the SEC's claims and Bliss Creek's claims to Plaintiffs' assets for the same alleged wrongful conduct, declaring whether Bliss Creek may lawfully execute upon assets subject to the federal Asset Freeze Order, and declaring that any recovery by Bliss Creek from assets subject to the SEC's overlapping disgorgement, constructive trust, or investor-loss claims must be credited dollar-for-dollar against Plaintiffs' corresponding obligation to the SEC to prevent duplicative recovery;

**COMPLAINT IN INTERPLEADER**          17

6.  Award Plaintiffs reasonable attorneys' fees and costs incurred in bringing this action; and

7.  Enter an order confirming that nothing in this action or any order entered herein shall affect, waive, or diminish Plaintiffs' rights to assert any exemptions available under applicable law, including but not limited to Adam's homestead exemption under Texas law.

Respectfully submitted,

*/s/ Victor Vital*
Victor Vital
State Bar No. 00794798
victor.vital@haynesboone.com
Elizabeth Wirmani
State Bar No. 24052268
elizabeth.wirmani@haynesboone.com
Haynes and Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR PLAINTIFFS**
**JONATHAN L. ADAM AND GCZ**
**GLOBAL, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure on July 1, 2026.

*/s/ Elizabeth Wirmani*
Elizabeth Wirmani

**COMPLAINT IN INTERPLEADER**            18

4930-9685-5225, v. 1