WY Natrona County District Court
7th JD
Mar 27 2026 05:08PM
2024-CV-0114404
78890941
FILED

Andrew Orr (WSB #7-6235)
HOLLAND & HART LLP
P.O. Box 68
Jackson, WY 83001
Tel: (307) 739-9741
acorr@hollandhart.com

Katelyn B. Jones (WSB #8-7439)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
Cheyenne, WY 82001
Tel: (307) 778-4200
kbjones@hollandhart.com

John Cardinal Parks (*Pro Hac Vice* Forthcoming)
Practus, LLP
P.O. Box 370501
Denver, CO 80237
Tel: (303) 916-4051

*Attorneys for Defendant GCZ Global LLC*

| | | |
|---|---|---|
| STATE OF WYOMING | ) | IN THE DISTRICT COURT |
| | ) ss | |
| COUNTY OF NATRONA | ) | SEVENTH JUDICIAL DISTRICT |

| | | |
|---|---|---|
| BLISS CREEK FUND 1, LLC, | ) | |
| | ) | Civil Action No.: 2024-CV-0114404 |
| | ) | |
| Plaintiff, | ) | **DEFENDANT GCZ GLOBAL LLC'S MOTION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT** |
| | ) | |
| v. | ) | |
| | ) | |
| GCZ GLOBAL LLC; and JONATHAN L. ADAM, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

Defendant GCZ Global LLC ("GCZ"), pursuant to Wyoming Rules of Civil Procedure 55 and 60, respectfully moves this Court to vacate and set aside the default and default judgment in favor of Plaintiff Bliss Creek Fund 1, LLC ("Bliss Creek") and, in support thereof, states as follows:

## INTRODUCTION

This Motion presents the question of whether GCZ should be bound by a default judgment against it in the amount of $141 million (i) based on facially faulty legal and factual arguments, (ii) on just three days' notice by mail and without any evidentiary hearing, and (iii) after being lulled by Bliss Creek into believing that the filing of this case was just a formality and that no action would be taken to enforce the default judgment. For the reasons set forth below, the answer to that question is an emphatic "No."

How did this $141 million default judgment happen? While the parties were engaged in negotiations, Dale Toney, Bliss Creek's co-owner and longtime friend of GCZ principal Jonathan Adam, told Mr. Adam that the filing of this case was a mere formality and that any judgment would never be enforced. After entries of default and been entered against Defendants, Mr. Toney claimed he was shocked, representing that "nobody authorized this" and that Bliss Creek's Wyoming attorney "acted without consent." Mr. Toney even suggested filing a "Joint Stipulation to Vacate the Judgment." Mr. Adam, acting as the principal of GCZ and trusting the word of a longtime friend, did not retain Wyoming counsel or partake in a defense. That trust was exploited.

On April 1, 2025, Bliss Creek filed a Motion for Default Judgement and requested a $141 million dollar damage award, including $94 million in punitive damages. On April 4, 2025, within days of filing that motion, Bliss Creek obtained the full amount it requested, without any hearing, any credible evidence, or any opportunity for Defendants to be heard. Flouting basic procedural

rules, Bliss Creek sought unliquidated damages without offering the required proof or requesting an evidentiary hearing. Now Bliss Creek has asked a court in Texas to enforce the very judgment that Mr. Toney claimed would not be sought in the first place. Mr. Adam has opposed domestication of the default judgment against him because this Court did not have personal jurisdiction over him. GCZ now seeks relief from the default judgment on other grounds.

The underlying dispute involves Bliss Creek's purchase of a position in Tether from GCZ that was used in a cryptocurrency venture operated by Group Gemini International Capital, S.A. ("GGP"), which was purportedly out of Panama. GCZ provided validation software services to GGP for use in GGP's flash lending pool. GCZ had purchased its own positions in GGP's flash lending pool using Tether, and Bliss Creek then purchased certain of these positions from GCZ pursuant to several Purchase and Sale Agreements. Bliss Creek—a sophisticated commercial entity represented by counsel—claimed that it was defrauded and entitled to contractual and tort damages exceeding $141 million.

Bliss Creek's dubious conduct should not be rewarded. As described below, Bliss Creek concealed from this Court foundational agreements mandating application of Texas law. It deceived GCZ about its litigation intentions. It obtained a judgment through violations of basic procedural rules. And now Bliss Creek is asking a Texas court to enforce that $141 million default judgment against GCZ and Mr. Adam in Texas. Bliss Creek's pattern of deception constitutes the type of fraud, misrepresentation, and misconduct that warrants relief under Rule 60(b). GCZ should not be financially saddled by a judgment procured through fraud, misrepresentations, and misconduct, entered without adherence to applicable rules of procedure, and enforced in bad faith.

Accordingly, GCZ respectfully requests that the Court grant it relief from the default judgment.

## BACKGROUND

### A. The Parties

GCZ is a limited liability company incorporated in Wyoming in 2023. 9/19/24 Complaint ("Compl.") ¶ 4. Mr. Adam is an individual who resides in Angleton, Texas. Ex. A, Affidavit of Jonathan Adam ("Adam Aff.") ¶ 2.[1] Mr. Adam is a principal of GCZ.[2] *Id.* ¶ 3; Compl. ¶ 3.

Bliss Creek is a Wyoming limited liability company that placed its investors' funds in a cryptocurrency flash lending ecosystem operated by a third-party, Group Gemini International Capital, S.A. ("GGP"). Compl. ¶ 1; Ex. A, Adam Aff. ¶ 4.

### B. The Underlying Dispute

This lawsuit arose from Bliss Creek's purchase of a position in a cryptocurrency flash lending ecosystem operated by GGP. Bliss Creek deployed approximately $17 million, received one distribution of approximately $3.2 million, and alleges the remainder was misappropriated by GCZ. 4/1/25 Plaintiff's Motion for Default Judgment ("DJ Mot.") at 2.

Bliss Creek could have sued the Defendants in Texas, which is GCZ's principal place of business and Mr. Adam's home state. Ex. A, Adam Aff. ¶¶ 2-3. Instead, Bliss Creek went forum-shopping and filed a complaint in this Court that was plagued by calculated omissions designed to manufacture the appearance of exclusive jurisdiction in Wyoming.

First, and most critically, Bliss Creek concealed the Purchase and Sale Agreements ("PSAs"), attached as Ex. B, the foundational agreements governing the funds Bliss Creek deployed in the cryptocurrency flash lending ecosystem. Instead, Bliss Creek attached as the only

---

[1] The Affidavit by Jonathan Adam and Declaration by Leslie Katz are captioned in Bliss Creek's enforcement proceeding in Texas because they were also used in connection with those proceedings.

[2] All references to Mr. Adam in this Motion pertain solely to his capacity as principal of GCZ and not in his individual capacity.

exhibits to its complaint the Technology Services Agreements ("TSAs")—subsidiary agreements that conveniently contained a Wyoming forum-selection clause. Compl. Ex. 1.

The PSAs established the fundamental buyer-seller relationship under which Bliss Creek purchased a total of $17,122,403 of Tether positioned in the GGP system from GCZ. Ex. B, PSAs § 2; Ex. A, Adam Aff. ¶ 4. This is the *exact amount* that Bliss Creek claimed to have "deployed" into a flash lending ecosystem in its Complaint, citing the TSAs. Compl. ¶ 14. Similarly, the Motion for Default Judgment represented to the Court that Bliss Creek had "invested" $17,122,403 in GCZ "following execution of several Technology Services Agreements." DJ Mot. at 11. The TSAs, however, merely address ancillary technology services and exist only to effectuate the cryptocurrency transactions contemplated by the PSAs, making the PSAs the controlling documents that govern the parties' relationship. *Compare* Compl. Ex. 1, TSAs, *with* Ex. B, PSAs.

Moreover, the PSAs (the agreements Bliss Creek concealed from this Court) expressly provide that they "shall be governed by and construed in accordance with the laws of the State of Texas." Ex. B, PSAs § 8. Each PSA also contains an integration clause providing that they "constitute[] the entire Agreement and supersede[] all prior agreements and understandings." Ex. B, PSAs § 5.

Moreover, the TSAs—the very agreements Bliss Creek relied upon to claim it was defrauded by GCZ—actually require that Bliss Creek ***pay*** GCZ, not the reverse. Specifically, the TSAs obligate Bliss Creek to pay GCZ certain dollar amounts per 112.5-day cycle for technology services, with all amounts payable "in full without any setoff, recoupment, counterclaim, deduction, debit or withholding." Compl. Ex. 1, TSAs § 2.

The TSAs also include numerous key disclaimers by GCZ, all of which Bliss Creek ignored in its Complaint and Motion for Default Judgment, including that (1) GCZ "does not make any

determination as to the suitability of any trade or investment . . . and makes no representation or warranty that any such trade or investment is suitable for [Bliss Creek]"; (2) Bliss Creek "should contract with [GCZ] only if [Bliss Creek] is willing and prepared to accept risks of loss with respect to the transactions described herein"; (3) GCZ "does not guarantee the performance of any trade or investment, the return of any investment or the achievement of any rate of return"; (4) "[i]nvestment in any of the digital assets available on the Technology carries substantial risk, including the possible loss of investment"; and (5) Bliss Creek "may risk losing digital assets that have been placed with an External Provider, and [GCZ] will not be liable [to Bliss Creek] for such loss." Compl. Ex. 1, TSAs §§ 6.1(a), 6.2(c)-(f). Bliss Creek's Complaint and Motion for Default Judgment, however, omit the PSAs, Bliss Creek's contractual obligations under the TSAs, and the foregoing disclaimers in the TSAs.

Bliss Creek is not some unsophisticated party caught unaware by contractual fine print. It is a limited liability company that deployed over $17 million into a cryptocurrency ecosystem, represented throughout by legal counsel. Bliss Creek and its attorneys understood precisely what they were signing, including the PSAs' Texas choice-of-law provisions and lack of exclusive jurisdiction provisions. It seems clear that Bliss Creek intentionally omitted the PSAs from its filings with this Court to avoid yet another factor pointing to Texas, and not Wyoming, being the appropriate forum. Having knowingly agreed to Texas law, Bliss Creek cannot now claim ignorance while strategically omitting the PSAs from its Complaint and Motion for Default Judgment.

Bliss Creek also relied heavily on allegations in a Complaint filed by the SEC to support its fraud claims. Compl. at 1-2; *see also* DJ Mot. at 3-4, 7-9. Critically, however, the SEC proceeding resulted only in consent to freeze orders of a limited nature, not adjudicated findings

of fact. In fact, the consent judgments explicitly provide that neither GCZ nor Mr. Adam admit or deny the allegations set forth in the SEC's complaint. Ex. C, Consent Judgments at 1. Bliss Creek's imbuing the SEC's allegations with the evidentiary force of adjudicated fact was improper.

Finally, Bliss Creek grossly exaggerated any reasonable damage award. As conceded in its Complaint, Bliss Creek placed $17,122,403 into the system operated by GGP and received a distribution of $3,233,379.60. Compl. ¶ 1. The TSAs upon which Bliss Creek relies specifically limited any monetary recovery. Compl. Ex. 1, TSAs § 8.2. That provision states as follows:

> IN NO EVENT WILL THE AGGREGATE LIABILITY OF [GCZ] ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING UNDER OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR ANY OTHER LEGAL OR EQUITABLE THEORY, EXCEED THE TOTAL AMOUNTS PAID TO [GCZ] UNDER THIS AGREEMENT IN THE TWELVE MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM. THE FOREGOING LIMITATIONS APPLY EVEN IF ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE.

*Id.* Bliss Creek, however, improperly requested an additional $29,539,418.19 in "compensatory damages" on top of the $17,122,403 alleged actual damages, plus consequential damages, punitive damages, and pre-judgment and post-judgment interest. Compl. at 7. The Motion for Default Judgment clarified that Bliss Creek's "investment"[3] accrued to $29,539,418.19. DJ Mot. at 2. Accordingly, Bliss Creek asked this Court for $47,021,081.33 in "compensatory damages" ($17,122,403 "investment" + $29,539,418.19 delinquent earnings). *Id*. at 11. Bliss Creek then asked this Court for an incredible $94,042,162.66 in punitive damages. *Id*. at 14. To the extent

[3] Bliss Creek's Complaint and Motion for Default Judgment, along with Mr. Towler's supporting affidavit, repeatedly refer to Bliss Creek's "investment" in GCZ. *See, e.g.*, Compl. at 3-5; DJ Mot. at 2, 9, 14-15. This constitutes a misrepresentation. Pursuant to the PSAs, Bliss Creek ***purchased*** from GCZ a position in the cryptocurrency ecosystem operated by GGP—a buyer-seller transaction, not an equity investment. This distinction is significant: Bliss Creek was a sophisticated commercial counterparty that negotiated and executed a purchase agreement governed by Texas law, not a passive, unsophisticated investor entitled to any special protections.

that Bliss Creek asks this Court to rely on the TSAs, it must admit that everything it requested, and was ultimately awarded by this Court, above $17,122,403, was expressly prohibited by the TSAs' damage limitation provision.

Bliss Creek's "evidence" of these damages amounts to a single line in a self-serving affidavit of Bliss Creek's officer: "Bliss Creek invested $17,122,403 in GCZ Global, with more than $29,898,678.33 in delinquent earnings which are increasing daily." 4/1/25 Affidavit of William Towler in Support of Plaintiff's Motion for Default Judgment ("Towler Aff.") ¶ 11. Bliss Creek offered no specifics, computations, arguments against the contractual cap on monetary damages, or other evidentiary justification for requesting approximately $120 million more than its alleged actual damages.

**C. Bliss Creek Secured the Default Judgment Through Deception**

The default judgment obtained by Bliss Creek was the product of a calculated strategy. Bliss Creek paired aggressive procedural tactics with systematic deception, lulling GCZ into a false sense of security with representations that were deliberately broken at every critical juncture.

From the outset, Mr. Toney, Bliss Creek's co-owner and Mr. Adam's longtime friend, characterized this lawsuit as a mere formality, and not something Bliss Creek intended to enforce. Ex. A, Adam Aff. ¶¶ 4-6. On January 30, 2025, days after Bliss Creek filed its Application for Default, Mr. Toney represented to Mr. Adam that "none of us authorized this" and "[o]ur [expletive] atty in WY acted without consent." *Id.* at Ex. A-1. Mr. Toney went so far as to suggest that Bliss Creek and Defendants file a joint stipulation to vacate the default. *Id.*

Despite Mr. Toney's representations, on April 1, 2025 (at 3:39 p.m.), Bliss Creek filed its Motion for Default Judgment. The motion was mailed to GCZ and Mr. Adam in Texas. Three days later, without the benefit of the PSAs or the critical context regarding what Bliss Creek was

representing to GCZ, this Court entered a $141 million judgment, including $94 million in punitive damages, without any evidentiary hearing. *See* 4/4/25 Order Granting Plaintiff's Motion for Default Judgment ("DJ Order"). GCZ requests that the Court take judicial notice that it is unlikely a motion filed at 3:39 p.m. on April 1, 2025, and served via U.S. Mail, even reached its representative in Texas before the Court entered the Default Judgment Order on April 4, 2025. In short, GCZ was not given a meaningful opportunity to respond, to raise the procedural irregularities, or to challenge the staggering damages Bliss Creek requested.

GCZ had no prior knowledge that Bliss Creek was seeking $141 million. When Mr. Adam confronted Mr. Toney, Mr. Toney reassured him that he did not intend to enforce those damages. Ex. A, Adam Aff. ¶¶ 4-6. These assurances were not limited to Mr. Toney's personal communications with GCZ. Bliss Creek's attorneys similarly implied to GCZ's counsel that the judgment was not intended to be enforced. Ex. D, Declaration of Leslie Katz ("Katz Decl.") ¶ 3.

Yet on February 6, 2026, Bliss Creek filed a Notice of Enforcement in Texas, forcing GCZ and Mr. Adam to defend against the very judgment that they had been led by Mr. Toney and Bliss Creek's attorneys to believe would never be pursued. Ex. E, Notice of Filing of Foreign Judgment. The contrast between Bliss Creek's prior representations and its current aggressive enforcement efforts could not be more stark. What once would never be enforced is now the basis for an active $141 million collection effort on a default judgment procured by calculated deception.

**D. Bliss Creek ignores procedural mandates**

This rushed timeline also violated Wyoming procedural rules. When damages are unliquidated—as they indisputably were here—a hearing or other non-conclusory evidentiary proof is required before entry of default judgment, and "[t]he burden . . . is upon those seeking more than mere nominal damages to prove their damages." *Halberstam v. Cokeley*, 872 P.2d 109,

112-13 (Wyo. 1994) (citations omitted). All Bliss Creek offered as "evidence" was an unsupported, self-serving one-liner in Mr. Towler's affidavit. *See* Towler Aff. ¶ 11. However, "a bald assertion of total damages without supporting evidence is insufficient to establish that damages were liquidated." *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 45 P.3d 647, 656 (Wyo. 2002). The Wyoming Supreme Court has been unequivocal: if a default judgment is entered on damages that are unliquidated without sufficient evidentiary proof, then the court has abused its discretion. *Id.*

Bliss Creek sought over $29.9 million in "delinquent earnings" and $94 million in punitive damages. DJ Order at 2. Bliss Creek should not have been awarded these unliquidated damages without sufficient evidentiary support. Yet Bliss Creek sought $141 million without offering a single piece of evidence or testimony, without seeking an evidentiary hearing, and without providing the Court with any mathematical computation supporting the damages. *Id*. This alone renders the default judgment voidable.

The result of Bliss Creek's orchestrated efforts is a judgment procured through procedural steamrolling, conflating and omitting the operative agreements, and deliberate deception. That judgment should be set aside.

## LEGAL STANDARD

"Rules 55(c) and 60(b) . . . are remedial and are intended to promote decisions on the merits when possible." *Nowotny v. L & B Contract Indus.*, 933 P.2d 452, 460 (Wyo. 1997). Rule 60(b) provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . [or] (6) any other reason that

justifies relief." A motion under Rule 60(b) must be made within a reasonable time, and for reasons (1) and (3), no more than a year after the entry of the judgment or order or the date of the proceeding. W.R.C.P. 60(c)(1). Rule 60(d) provides that the rule does not limit a court's power to set aside a judgment for fraud on the court. W.R.C.P. 60(d)(3). Time limitations under Rule 60(c) do not apply to motions under Rule 60(d). Under Rule 60(b)(3), relief on the ground of "misconduct" can be justified regardless of whether there was evil, innocent, or careless purpose. *Bros, Inc. v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965).

Under Wyoming law, "[f]raud may justify equitable relief from a judgment or decree where the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." *Routh v. State, ex rel. Wyoming Workers' Comp. Div.*, 952 P.2d 1108, 1116 (Wyo. 1998). Under Rule 60, fraud includes "deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008) (citation omitted).[4] To establish grounds for relief under Rule 60(b)(3), the moving party need not demonstrate that the adverse party has committed all the elements of fraud under applicable state law, but rather must simply show that the adverse party's conduct was fraudulent under a general common law understanding. *Id*. Further, a judgment may be set aside for fraud discovered after the entry of the judgment. *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972).

[4] "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *Matter of Gustke*, 545 P.3d 863, 870 (Wyo. 2024).

## ARGUMENT

### I. The Allegations of Bliss Creek's Complaint Failed to Establish GCZ's Liability or the Amount of Bliss Creek's Alleged Damages

#### A. Bliss Creek failed to prove fraud

Bliss Creek's Motion for Default Judgment argued that GCZ committed fraud because it failed to inform Bliss Creek that Mr. Adam had been convicted of securities fraud in 2004. DJ Mot. at 7-9. This alleged omission, however, does not constitute an actionable claim.

Under Wyoming law, assuming it applies, before nondisclosure or fraudulent concealment can be considered, a plaintiff must show that the defendant had a duty to disclose the information. *Sundown, Inc. v. Pearson Real Est. Co.*, 8 P.3d 324, 332 (Wyo. 2000). The Wyoming Supreme Court has thus far declined to expressly adopt a specific cause of action for nondisclosure under the Restatement (Second) of Torts § 551, rendering Mr. Towler's argument ineffective on this basis as well. Texas, where GCZ and Mr. Adam are based, and Oklahoma, where Bliss Creek is based, have likewise declined to adopt a specific cause of action for nondisclosure under the Restatement (Second) of Torts § 551.[5] If GCZ's alleged failure to inform Bliss Creek of Mr. Adam's 20-year-old conviction does not even give rise to a cause of action, it certainly cannot support a default judgment based on alleged fraud.

In addition, Bliss Creek's bare allegations, supported only by a self-serving affidavit, that GCZ did not disclose Mr. Adam's prior securities fraud conviction falls woefully short of proving actual fraud. In an affidavit attached to support the Motion for Default Judgment, Mr. Towler, an

---

[5] Even if Wyoming, Oklahoma, and Texas had adopted Restatement (Second) of Torts § 551, it defines liability for fraud or negligent misrepresentation based on a failure to disclose information in business transactions. It imposes a duty to exercise reasonable care to disclose facts—before a transaction is completed—if a fiduciary relationship exists, to correct misleading previous statements, or when facts are basic to the contract. Here, Mr. Adam's alleged "previous criminal conviction for securities fraud" was not basic to the transactions between Bliss Creek and GCZ, no fiduciary relationship existed, and there were no misleading statements to correct. Moreover, the sale of Tether is not the sale of a security.

owner of Bliss Creek, stated that Defendants "fraudulently omitted and concealed from Bliss Creek their communications and agreements that Jonathan L. Adams had a previous criminal conviction for securities fraud." Towler Aff. ¶ 4.

Critically, fraud claims must be pleaded with particularity, and conclusory allegations are insufficient. *See Elworthy v. First Tenn. Bank*, 2017 WY 33, ¶¶ 40-47. Mr. Towler's assertion depends entirely on a conclusory legal assertion that GCZ "fraudulently omitted" a prior conviction. In relying on such threadbare support, Bliss Creek failed to satisfy the heightened pleading standard for fraud, let alone prove it for purposes of judgment entering against GCZ. *Elworthy*, 2017 WY 33, ¶¶ 40-47. Further, not only is Mr. Adam's conviction a matter of public record, it occurred in 2004—almost 20 years prior to Bliss Creek's purchase of its Tether position in the flash lending pool.

### B. Bliss Creek failed to prove that GCZ breached the TSAs

Bliss Creek's Motion for Default Judgment argued that it had stated a valid claim for breach of the TSAs. DJ Mot. at 9. Specifically, Bliss Creek represented that it had "performed its obligation under [the TSAs] by furnishing the funds." *Id*. Bliss Creek argued that GCZ had breached the TSAs because, "as the SEC Complaint makes clear, Defendants operated a Ponzi Scheme where a vast majority of investor funds were either misappropriated to pay for personal expenses or used to pay interest, finders fees, and return principal to existing investors." *Id*. Based on the foregoing, Bliss Creek argued that it was "entitled to contract damages." *Id*. Bliss Creek's breach of contract claim, however, was a complete fiction. The TSAs do not require Bliss Creek to "furnish funds." The TSA is a services agreement under which GCZ was to provide technology services and Bliss Creek was to pay for such services. Further, Bliss Creek failed to demonstrate that GCZ had breached the TSAs. The allegations in the SEC Complaint that the defendants in

that case had operated a Ponzi scheme have nothing to do with whether GCZ had breached the TSAs. Moreover, the "evidence" offered by Bliss Creek in support of its allegations of breach were the unverified allegations in another complaint.[6]

### C. Bliss Creek failed to prove its damages and improperly failed to request a hearing on damages

Under the circumstances of this case, a hearing should have been held on Bliss Creek's Motion for Default Judgment because its alleged damages were unliquidated. The Wyoming Supreme Court has held that "it is an abuse of discretion for a court to enter a default judgment on damages that are unliquidated" when the only evidence offered in support of the unliquidated damages are "bald assertion[s]," such as those made in Mr. Towler's affidavit. *Multiple Resort Ownership*, 45 P.3d at 655.

In addition to the bald and unsupported claims that "Bliss Creek invested $17.122,403 in GCZ Global, with more than $29,898,678.33 in delinquent earnings which are increasing daily," Mr. Towler failed to disclose to the Court that the TSAs, the only agreements relied upon by Bliss Creek in its Complaint and Motion for Default Judgment, include a limitation of liability clause that limits Bliss Creek's recoverable damages, for all claims arising under or related to the TSAs, to the total amount paid by Bliss Creek to GCZ during the twelve month period preceding the event giving rise to the claim. Towler Aff. ¶ 11.

Bliss Creek violated these procedural and contractual mandates entirely, seeking a default judgment in the amount of $141 million, including $94 million in punitive damages, without offering any testimony or other evidence, seeking an evidentiary hearing, or proffering any findings to support its damages claims. DJ Order.

---

[6] For similar reasons, Bliss Creek failed to prove that GCZ had breached the implied duty of good faith and fair dealing under the TSAs.

## II. The Default Judgment Was Procured by Fraud, Misrepresentation, and Misconduct

Bliss Creek obtained the default judgment by fraud, misrepresentation, and misconduct. Bliss Creek's conduct is particularly egregious because it is a sophisticated commercial party, represented by counsel, that knowingly agreed to Texas law in the PSAs and then concealed those agreements from the Court to exploit an exclusive jurisdiction clause in the TSAs. Rather than present the foundational agreements that governed the parties' relationship and mandated Texas law (yet another factor pointing to Texas as the appropriate forum), Bliss Creek offered the TSAs as the controlling documents, subsidiary agreements cherry picked by Bliss Creek for no reason other than their Wyoming forum selection clauses. This concealment was not inadvertent. Instead, Bliss Creek made a strategic decision to hide the PSAs from the Court, knowing that its disclosure would undermine the factual and jurisdictional basis for this lawsuit.

Moreover, throughout the litigation, Mr. Toney induced GCZ to believe that any judgment would not be enforced. Ex. A, Adam Aff. ¶ 4. These assurances did not come solely from Mr. Toney. Bliss Creek's attorneys similarly let GCZ's counsel believe that the judgment was not intended to be enforced. Ex. D, Katz Decl. ¶ 3. GCZ and its counsel reasonably relied on the representations of Bliss Creek's attorneys.[7]

It is fair to infer that the statements were designed to induce GCZ's continued inaction. In similar circumstances, other courts have set aside default judgments. *Morin v. Burris*, 161 P.3d 956, 963 (Wash. 2007) (remanding case to district court to consider fraud and misrepresentation issue and concluding that plaintiff's counsel's failure to disclose the fact that the case had been filed and that a default judgment was pending when defendants' claim representative was calling

[7] Not only does Bliss Creek's conduct in this regard support granting GCZ relief from judgment on the ground of Bliss Creek's fraud, misrepresentation, and misconduct, it also supports granting relief on the grounds of surprise and excusable neglect.

and trying to resolve matters, and at a time when the time for filing an appearance was running, was inequitable); *Gallant Ins. Co. v. Toliver*, 695 N.E.2d 592, 595 (Ind. Ct. App. 1998) (reversing denial of motion to set aside default judgment where lawyer's representations in letter to appellant created implied duty to keep appellant updated on case, which appellants reasonably relied on, establishing excusable neglect); *Am. Republic Ins. Co. v. Westchester Gen. Hosp.*, 414 So. 2d 1163, 1163 (Fla. Dist. Ct. App. 1982) (reversing district court's denial of motion to set aside default judgment where appellants did not file a responsive pleadings based on their "reliance upon representations by opposing counsel that no default would be sought during the pendency of settlement negotiations" because appellants were thus unconscionably misled); *see also Rubenstein v. Richard Fidlin Corp.*, 346 So. 2d 89 (Fla. Dist. Ct. App. 1977) (reversing district court's denial of motion to set aside default judgment on similar facts).

Bliss Creek's weaponization of the judgment—despite assuring GCZ that it would never enforce it—demonstrates that its earlier representations were intentional misrepresentations designed to secure an uncontested judgment. This pattern of deception constitutes exactly the type of fraud, misrepresentation, and misconduct that warrants setting aside the judgment. GCZ did nothing wrong by trusting the representations of Mr. Adam's long-time friend. It should not be punished for that trust with a $141 million default judgment.

## III. The Entry of Default Should Likewise Be Set Aside

Under Rule 55(c), "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." To determine whether a default judgment may be set aside for good cause, Wyoming has adopted the three-factor test. The three factors are: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *M&A Const. Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 454-55 (Wyo. 1997).

Good cause exists to set aside the entry of default here. As set forth above, Defendants have meritorious defenses to the claims by Bliss Creek under the parties' agreements and Wyoming law. Further, Bliss Creek's conduct was culpable here—Bliss Creek intentionally lulled GCZ into a false sense of security related to the Wyoming action and the entry of default. Finally, the only prejudice to Bliss Creek is having to establish its claims on the merits. *Nowotny*, 933 P.2d at 460. Accordingly, the default should likewise be vacated and set aside so the case can be decided on its merits.

## CONCLUSION

For the reasons stated, GCZ asks the Court to grant it relief from the default judgment, set aside the default, and grant GCZ any other relief to which it is entitled.

Dated this 27th day of March 2026.

*/s/ Andrew Orr*
Andrew Orr (WSB #7-6235)
HOLLAND & HART LLP
P.O. Box 68
Jackson, WY 83001
Tel: (307) 739-9741
acorr@hollandhart.com

Katelyn B. Jones (WSB #8-7439)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
Cheyenne, WY 82001
Tel: (307) 778-4200
kbjones@hollandhart.com

John Cardinal Parks (Colorado Bar No. 18669)
Practus, LLP
P.O. Box 370501
Denver, CO 80237
Tel: (303) 916-4051
*Pro Hac Vice* forthcoming

*Attorneys for Defendant, GCZ Global LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27th, 2026, a true and correct copy of the foregoing *Motion for Relief From Judgment* was served by electronic mail properly addressed to the following:

Robert V. Cornish, Jr.
LAW OFFICES OF ROBERT V. CORNISH, JR., PC
680 South Cache Street, Suite 100
PO Box 12200
Jackson, WY 83001
rcornish@rcornishlaw.com

L. Jen James
An Employee of Holland & Hart LLP

# Ex. A, Affidavit of Jonathan Adam ("Adam Aff.")

**Case No. 138938-CV**

| | | |
|---|---|---|
| **BLISS CREEK FUND 1, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **149th DISTRICT COURT** |
| **GCZ GLOBAL LLC and JONATHAN ADAM** | § | |
| | § | |
| | § | |
| **Defendant.** | § | **BRAZORIA COUNTY, TEXAS** |

**AFFIDAVIT OF JONATHAN ADAM**

STATE OF TEXAS §
§
COUNTY OF BRAZORIA §

**BEFORE ME** the undersigned authority on this day personally appeared the undersigned affiant, who by me sworn, under oath stated:

1. My name is Jonathan Adam. I am over eighteen (18) years of age. I am fully competent and not otherwise disqualified from making this affidavit. I have personal knowledge of the facts stated herein and they are all true and correct.

2. I live in Angleton, Texas. I resided in Texas before, during, and after the events giving rise to this dispute. I do not have a residence, office, or physical presence in Wyoming.

3. I am the Principal of GCZ Global LLC ("GCZ). GCZ's principal place of business is in Texas.

4. Dale Toney is a long-time friend and the co-owner of Bliss Creek Fund 1, LLC ("Bliss Creek"). In 2025, I had multiple conversations with Mr. Toney concerning a dispute about Bliss Creek's purchase of a position in Tether from GCZ that was used in a cryptocurrency venture operated by Group Gemini International Capital, S.A. ("GGP"), a venture purportedly operated

out of Panama.. In those conversations, Mr. Toney told me that Bliss Creek had to file suit against GCZ as a formality and did not intend to enforce any judgment.

5. On January 30, 2026, I received the text message attached as Exhibit 1 from Mr. Toney.

6. I trusted Mr. Toney's representations about the lawsuit, in part because he was a long-time friend. Because of Mr. Toney's representations about the lawsuit, I did not engage local Wyoming counsel to defend against Bliss Creek's Complaint.

Further Affiant Sayeth Not

EXECUTED on March 6th, 2026.

Jonathan Adam

Subscribed and sworn to before me on 6th of March, 2026.

Notary Public Signature

Ryann Borg
Notary Public Printed Name

RYANN BORG
Notary Public, State of Texas
Comm. Expires 08-16-2028
Notary ID 135044583

# Ex. B, Purchase and Sale Agreements ("PSAs")

# PURCHASE & SALE AGREEMENT

This PURCHASE & SALE AGREEMENT (the "**Agreement**") is dated as of this 16th day of December 2023, by and between GCZ Global, LLC, and or its assigns, a Wyoming limited liability company ("**Seller**") and Bliss Creek Fund I, LLC and or its assigns, a Wyoming limited liability company ("**Buyer**") whereby Seller agrees to sell, and Buyer agrees to purchase a certain amount of Tether described below.

## RECITALS

WHEREAS, the Seller is the record owner and holder of a certain amount of Tether; and

WHEREAS, the Buyer desires to purchase said amount of Tether;

NOW THEREFORE, in consideration of the foregoing Buyer and Seller agree to the terms and conditions hereinafter set forth.

1. **Purchase Agreement.** Subject to the terms and conditions set forth herein, upon the execution of this Agreement, the Seller shall sell and deliver to or on behalf of the Buyer 5,100,000 Tether in one of the following two ways (please check one):

   a. ☐ Buyers' Tether wallet address ________________________________ **OR**

   b. ☒ Seller shall deploy such Tether on behalf of Buyer within 72 hours to the third-party wallet address listed on Addendum A.

   The Buyer shall purchase such Tether at the purchase price described in Section 2. Buyer further agrees that after a period of 12 months Buyer will resell the full amount of the Tether back to Seller at the same purchase price described in Section 2.

2. **Purchase Price.** The Parties agree that the purchase price to be paid by Buyer to Seller in exchange for the Tether is Five Million One Hundred Thousand Dollars ($5,100,000.00) in the form of a bank wire transfer.

3. **Representations and Warranties of Seller.**

   a. Seller is an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Seller has the requisite corporate power and authority to execute and deliver this Agreement and perform its obligations hereunder.

4. **Representations and Warranties of Buyer.**

   a. Buyer is an individual or an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Buyer has the requisite authority to execute and deliver this Agreement and perform its obligations hereunder.

   c. Buyer maintains the requisite funds to furnish the purchase price.

5. **Entire Agreement.** This Agreement constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

6. **Binding Effect.** This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

7. **Sections and Other Headings.** The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

8. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its conflicts of laws provisions.

9. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto on the date first written above.

| **SELLER** | **BUYER** |
|---|---|
| [signature] | Dale E. Toney [signature] |
| Authorized Signature | Authorized Signature |
| Jonathan Adam, Principal | Dale E. Toney, Manager |
| Name and Title | Name and Title |

**ADDENDUM A**

Third-party wallet address selected by Buyer is as follows
FX1SREB3e4rhnJ2dqPDA6uy5LCQzdg7rPVQQPGV7NFAN.

# PURCHASE & SALE AGREEMENT

This PURCHASE & SALE AGREEMENT (the "**Agreement**") is dated as of this 21st day of March 2024, by and between GCZ Global, LLC, and or its assigns, a Wyoming limited liability company ("**Seller**") and Bliss Creek Fund I, LLC and or its assigns, a Wyoming limited liability company ("**Buyer**") whereby Seller agrees to sell, and Buyer agrees to purchase a certain amount of Tether described below.

## RECITALS

WHEREAS, the Seller is the record owner and holder of a certain amount of Tether; and

WHEREAS, the Buyer desires to purchase said amount of Tether;

NOW THEREFORE, in consideration of the foregoing Buyer and Seller agree to the terms and conditions hereinafter set forth.

1. **Purchase Agreement.** Subject to the terms and conditions set forth herein, upon the execution of this Agreement, the Seller shall sell and deliver to or on behalf of the Buyer 2,583,000 Tether in one of the following two ways (please check one):

    a. ☐ Buyers' Tether wallet address ________________________________ **OR**

    b. ☒ Seller shall deploy such Tether on behalf of Buyer within 72 hours to the third-party wallet address listed on Addendum A.

    The Buyer shall purchase such Tether at the purchase price described in Section 2. Buyer further agrees that after a period of 12 months Buyer will resell the full amount of the Tether back to Seller at the same purchase price described in Section 2.

2. **Purchase Price.** The Parties agree that the purchase price to be paid by Buyer to Seller in exchange for the Tether is Two Million Five Hundred Eighty-Three Dollars ($2,583,000.00) in the form of a bank wire transfer.

3. **Representations and Warranties of Seller.**

    a. Seller is an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

    b. Seller has the requisite corporate power and authority to execute and deliver this Agreement and perform its obligations hereunder.

4. **Representations and Warranties of Buyer.**

   a. Buyer is an individual or an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Buyer has the requisite authority to execute and deliver this Agreement and perform its obligations hereunder.

   c. Buyer maintains the requisite funds to furnish the purchase price.

5. **Entire Agreement**. This Agreement constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

6. **Binding Effect**. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

7. **Sections and Other Headings**. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

8. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its conflicts of laws provisions.

9. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto on the date first written above.

| **SELLER** | **BUYER** |
|---|---|
| [signature] | [signature: Dale E. Toney] |
| Authorized Signature | Authorized Signature |
| Jonathan Adam, Principal | Dale E. Toney, Manager |
| Name and Title | Name and Title |

**ADDENDUM A**

Third-party wallet address selected by Buyer is as follows FX1SREB3e4rhnJ2dqPDA6uy5LCQzdg7rPVQQPGV7NFAN.

# PURCHASE & SALE AGREEMENT

This PURCHASE & SALE AGREEMENT (the "**Agreement**") is dated as of this 15th day of April 2024, by and between GCZ Global, LLC, and or its assigns, a Wyoming limited liability company ("**Seller**") and Bliss Creek Fund I, LLC and or its assigns, a Wyoming limited liability company ("**Buyer**") whereby Seller agrees to sell, and Buyer agrees to purchase a certain amount of Tether described below.

## RECITALS

WHEREAS, the Seller is the record owner and holder of a certain amount of Tether; and

WHEREAS, the Buyer desires to purchase said amount of Tether;

NOW THEREFORE, in consideration of the foregoing Buyer and Seller agree to the terms and conditions hereinafter set forth.

1. **Purchase Agreement**. Subject to the terms and conditions set forth herein, upon the execution of this Agreement, the Seller shall sell and deliver to or on behalf of the Buyer 4,204,403.00 Tether in one of the following two ways (please check one):

   a. ☐ Buyers' Tether wallet address ______________________________ **OR**

   b. ☒ Seller shall deploy such Tether on behalf of Buyer within 72 hours to the third-party wallet address listed on Addendum A.

   The Buyer shall purchase such Tether at the purchase price described in Section 2. Buyer further agrees that after a period of 12 months Buyer will resell the full amount of the Tether back to Seller at the same purchase price described in Section 2.

2. **Purchase Price**. The Parties agree that the purchase price to be paid by Buyer to Seller in exchange for the Tether is Four Million Two Hundred Four Thousand Four-Hundred Three Dollars ($4,204,403.00) in the form of a bank wire transfer.

3. **Representations and Warranties of Seller**.

   a. Seller is an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Seller has the requisite corporate power and authority to execute and deliver this Agreement and perform its obligations hereunder.

4. **Representations and Warranties of Buyer.**

   a. Buyer is an individual or an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Buyer has the requisite authority to execute and deliver this Agreement and perform its obligations hereunder.

   c. Buyer maintains the requisite funds to furnish the purchase price.

5. **Entire Agreement.** This Agreement constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

6. **Binding Effect.** This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

7. **Sections and Other Headings.** The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

8. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its conflicts of laws provisions.

9. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto on the date first written above.

| **SELLER** | **BUYER** |
| --- | --- |
| [signature] | Dale E. Toney [signature] |
| Authorized Signature | Authorized Signature |
| Jonathan Adam, Principal | Dale E. Toney, Manager |
| Name and Title | Name and Title |

**ADDENDUM A**

Third-party wallet address selected by Buyer is as follows FX1SREB3e4rhnJ2dqPDA6uy5LCQzdg7rPVQQPGV7NFAN.

# PURCHASE & SALE AGREEMENT

This PURCHASE & SALE AGREEMENT (the "**Agreement**") is dated as of this 16th day of May 2024, by and between GCZ Global, LLC, and or its assigns, a Wyoming limited liability company ("**Seller**") and Bliss Creek Fund I, LLC and or its assigns, a Wyoming limited liability company ("**Buyer**") whereby Seller agrees to sell, and Buyer agrees to purchase a certain amount of Tether described below.

## RECITALS

WHEREAS, the Seller is the record owner and holder of a certain amount of Tether; and

WHEREAS, the Buyer desires to purchase said amount of Tether;

NOW THEREFORE, in consideration of the foregoing Buyer and Seller agree to the terms and conditions hereinafter set forth.

1. **Purchase Agreement.** Subject to the terms and conditions set forth herein, upon the execution of this Agreement, the Seller shall sell and deliver to or on behalf of the Buyer 1,585,000 Tether in one of the following two ways (please check one):

   a. ☐ Buyers' Tether wallet address ______________________________ **OR**

   b. ☒ Seller shall deploy such Tether on behalf of Buyer within 72 hours to the third-party wallet address listed on Addendum A.

   The Buyer shall purchase such Tether at the purchase price described in Section 2. Buyer further agrees that after a period of 12 months Buyer will resell the full amount of the Tether back to Seller at the same purchase price described in Section 2.

2. **Purchase Price.** The Parties agree that the purchase price to be paid by Buyer to Seller in exchange for the Tether is One Million Five Hundred Eighty-Five Thousand Dollars ($1,585,000.00) in the form of a bank wire transfer.

3. **Representations and Warranties of Seller.**

   a. Seller is an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Seller has the requisite corporate power and authority to execute and deliver this Agreement and perform its obligations hereunder.

4. **Representations and Warranties of Buyer**.

   a. Buyer is an individual or an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Buyer has the requisite authority to execute and deliver this Agreement and perform its obligations hereunder.

   c. Buyer maintains the requisite funds to furnish the purchase price.

5. **Entire Agreement**. This Agreement constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

6. **Binding Effect**. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

7. **Sections and Other Headings**. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

8. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its conflicts of laws provisions.

9. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto on the date first written above.

| **SELLER** | **BUYER** |
| --- | --- |
| [signature] | [signature] Dale E. Toney |
| Authorized Signature | Authorized Signature |
| Jonathan Adam, Principal | Dale E. Toney, Manager |
| Name and Title | Name and Title |

# ADDENDUM A

Third-party wallet address selected by Buyer is as follows FX1SREB3e4rhnJ2dqPDA6uy5LCQzdg7rPVQQPGV7NFAN.

## PURCHASE & SALE AGREEMENT

This PURCHASE & SALE AGREEMENT (the "**Agreement**") is dated as of this 31st day of May 2024, by and between GCZ Global, LLC, and or its assigns, a Wyoming limited liability company ("**Seller**") and Bliss Creek Fund I, LLC and or its assigns, a Wyoming limited liability company ("**Buyer**") whereby Seller agrees to sell, and Buyer agrees to purchase a certain amount of Tether described below.

## RECITALS

WHEREAS, the Seller is the record owner and holder of a certain amount of Tether; and

WHEREAS, the Buyer desires to purchase said amount of Tether;

NOW THEREFORE, in consideration of the foregoing Buyer and Seller agree to the terms and conditions hereinafter set forth.

1. **Purchase Agreement.** Subject to the terms and conditions set forth herein, upon the execution of this Agreement, the Seller shall sell and deliver to or on behalf of the Buyer 3,650,000 Tether in one of the following two ways (please check one):

   a. ☐ Buyers' Tether wallet address ______________________________ **OR**

   b. ☒ Seller shall deploy such Tether on behalf of Buyer within 72 hours to the third-party wallet address listed on Addendum A.

   The Buyer shall purchase such Tether at the purchase price described in Section 2. Buyer further agrees that after a period of 12 months Buyer will resell the full amount of the Tether back to Seller at the same purchase price described in Section 2.

2. **Purchase Price.** The Parties agree that the purchase price to be paid by Buyer to Seller in exchange for the Tether is Three Million Six Hundred Fifty Thousand Dollars ($3,650,000.00) in the form of a bank wire transfer.

3. **Representations and Warranties of Seller.**

   a. Seller is an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Seller has the requisite corporate power and authority to execute and deliver this Agreement and perform its obligations hereunder.

4. **Representations and Warranties of Buyer**.

   a. Buyer is an individual or an entity duly organized, validly existing and in good standing under the laws of the State of Wyoming.

   b. Buyer has the requisite authority to execute and deliver this Agreement and perform its obligations hereunder.

   c. Buyer maintains the requisite funds to furnish the purchase price.

5. **Entire Agreement**. This Agreement constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

6. **Binding Effect**. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

7. **Sections and Other Headings**. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

8. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its conflicts of laws provisions.

9. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto on the date first written above.

| **SELLER** | **BUYER** |
|---|---|
| [signature] | Dale E. Toney [signature] |
| Authorized Signature | Authorized Signature |
| Jonathan Adam, Principal | Dale E. Toney, Manager |
| Name and Title | Name and Title |

## ADDENDUM A

Third-party wallet address selected by Buyer is as follows FX1SREB3e4rhnJ2dqPDA6uy5LCQzdg7rPVQQPGV7NFAN.

# Ex. C, Consent Judgments

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TANNER S. ADAM, JONATHAN L. ADAM, TRITEN FINANCIAL GROUP, LLC, and GCZ GLOBAL LLC,<br><br>Defendants. | Civil Action File No. 1:24-cv-03774-MHC<br><br>JURY DEMAND |

**CONSENT JUDGMENT AS TO DEFENDANT JONATHAN L. ADAM**

The Securities and Exchange Commission having filed a Complaint and Defendant Jonathan L. Adam having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction and except as otherwise provided herein in paragraph VI); waived findings of fact and conclusions of law; and waived any right to appeal from this Judgment:

I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating, directly or

indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(A) any investment strategy or investment in securities,

(B) the prospects for success of any product or company,

(C) the use of investor funds,

(D) compensation to any person,

(E) Defendant's qualifications to advise investors; or

(F) the misappropriation of investor funds or investment proceeds.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

**II.**

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(A) any investment strategy or investment in securities,

(B) the prospects for success of any product or company,

(C) the use of investor funds,

(D) compensation to any person,

(E) Defendant's qualifications to advise investors; or

(F) the misappropriation of investor funds or investment proceeds.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

**III.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Defendant is permanently restrained and enjoined from directly or indirectly, including, but not

limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any security, including any crypto asset security; provided that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraphs also bind the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from January 1, 2023, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties,

and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the allegations in the complaint are true and admitted by

Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

VIII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: August 27, 2024

Mark H. Cohen

MARK H. COHEN
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TANNER S. ADAM, JONATHAN L. ADAM, TRITEN FINANCIAL GROUP, LLC, and GCZ GLOBAL LLC,**<br><br>**Defendants.** | **Civil Action File No. 1:24-cv-03774-MHC**<br><br>**JURY DEMAND** |

**CONSENT JUDGMENT AS TO DEFENDANT GCZ GLOBAL LLC**

The Securities and Exchange Commission having filed a Complaint and Defendant GCZ Global LLC having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Judgment:

**I.**

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange

Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(A) any investment strategy or investment in securities,

(B) the prospects for success of any product or company,

(C) the use of investor funds,

(D) compensation to any person,

(E) Defendant's qualifications to advise investors; or

(F) the misappropriation of investor funds or investment proceeds.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

**II.**

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(A) any investment strategy or investment in securities,

(B) the prospects for success of any product or company,

(C) the use of investor funds,

(D) compensation to any person,

(E) Defendant's qualifications to advise investors; or

(F) the misappropriation of investor funds or investment proceeds.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

**III.**

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from January 1, 2023, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

VI.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: August 27, 2024

MARK H. COHEN
UNITED STATES DISTRICT JUDGE

# Ex. D, Declaration of Leslie Katz

**Case No. 138938-CV**

| | | |
|---|---|---|
| **BLISS CREEK FUND 1, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **149th DISTRICT COURT** |
| **GCZ GLOBAL LLC and JONATHAN ADAM** | § | |
| | § | |
| | § | |
| **Defendants.** | § | **BRAZORIA COUNTY, TEXAS** |

**DECLARATION OF LESLIE KATZ**

1. My name is Leslie Katz. I am over eighteen (18) years of age. I am fully competent and not otherwise disqualified from making this declaration.

2. I am a partner at Practus, LLP and counsel for Jonathan Adam. I am licensed to practice law in California.

3. In the course of my representation of Mr. Adam, Robert Rhatigan and I had various conversations with counsel for Bliss Creek Fund 1, LLC ("Bliss Creek"), including Adam Zentner at Zentner Law and Rick Warren at Steptoe Johnson. Those conversations concerned a dispute about Bliss Creek's purchase of a position in Tether from GCZ that was used in a cryptocurrency venture operated by Group Gemini International Capital, S.A. Counsel for Bliss Creek initially represented to me and Mr. Rhatigan that the default judgment obtained by Bliss Creek in a Wyoming court against GCZ and Mr. Adam would not be enforced. I trusted these representations.

4. I declare under penalty of perjury that the facts stated in this document are within my personal knowledge and are true and correct.

Leslie Katz

# Ex. E, Notice of Filing of Foreign Judgment

Filed for Record
2/6/2026 4:19 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
138938-CV
Carly Whistler, Deputy

**CAUSE NO.** 138938-CV

| | |
|---|---|
| **BLISS CREEK FUND 1, LLC**,<br>*Plaintiff / Judgment Creditor,*<br>*v.*<br>**GCZ GLOBAL LLC**<br>*and*<br>**JONATHAN L. ADAM**,<br>*Defendants / Judgment Debtors.* | **DISTRICT COURT**<br>**BRAZORIA COUNTY, TEXAS**<br>***Enforcement of Foreign Judgment*** |

**NOTICE OF FILING OF FOREIGN JUDGMENT**
**Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a)**

**TO THE CLERK OF THE COURT**:

Plaintiff Bliss Creek Fund 1, LLC, hereby requests domestication in Brazoria County, Texas of the attached foreign judgment entered in favor of the Judgement Creditor in *Bliss Creek Fund 1, LLC v. GCZ Global LLC and Jonathan L. Adam*, 2024-CV-0114404 (Seventh Judicial District Court, Natrona County, Wyoming) on April 4, 2025 (the "Wyoming Judgment").

Attached hereto are a certified copy of the Wyoming Judgment, as well as affidavit of counsel.

Respectfully Submitted on February 6, 2026,

Bradley W. Beskin
Tex. Bar No. 24105463

**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office: 405.516.7800
Facsimile: 405.516.7859
bbeskin@whittenburragelaw.com

WY Natrona County District Court
7th JD
Apr 04 2025 04:23PM
2024-CV-0114404
76008191
FILED

DISTRICT COURT OF THE STATE OF WYOMING NATRONA COUNTY
This order has been: Issued
Judge Joshua Eames

IN THE DISTRICT COURT OF THE STATE OF WYOMING
SEVENTH JUDICIAL DISTRICT, COUNTY OF NATRONA

BLISS CREEK FUND 1, LLC,

Plaintiff,

v.

GCZ GLOBAL LLC; and JONATHAN L. ADAM,

Defendants.

Case No. 2024-CV-0114404

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

THIS MATTER having come before the Court on the motion of Plaintiff Bliss Creek Fund I, LLC ("Plaintiff")'s Motion for Default Judgment under Rule 55 of the Wyoming Rules of Civil Procedure, against Defendants GCZ Global LLC ("GCZ") and Jonathan L. Adam ("Adam") (collectively "Defendants"); and the Court having considered the submissions and arguments of counsel; and it appearing that on September 19, 2024, Plaintiff filed a Complaint against Defendants stating causes of action for fraud, negligence, breach of contract, and breach of the implied duty of good faith and fair dealing; and it is further appearing that Defendant Adam was served on December 4, 2024 and Defendant GCZ was served with process on December 5, 2024; and that Defendant Adam's response to the Complaint was due on January 3, 2025 and Defendant GCZ's response to the Complaint was due on January 6, 2025 and; and it further appearing that on January 28, 2025, Plaintiff filed requests to enter Defendants' defaults; and it further appearing that on January 28, 2025, the court entered Defendants' defaults on the docket; and it further

appearing that on March 31, 2025, Plaintiff filed a motion for entry of judgment by default and served a copy of its motion papers on Defendants via U.S. Mail at the same addresses Defendants were served with process at; and it further appearing that Plaintiff's motion seeks default judgment on counts I, III, and IV of the Complaint; and it further appearing that those Counts state viable causes of action and that default judgment is proper; and it further appearing that Plaintiff is entitled to a default judgment against Defendants, jointly and severally, in the total amount of $141,063,243.99, representing $47,021,081.33 in unpaid principal and accrued earnings and $94,042,162.66 in punitive damages; and it further appearing that Defendant is not an infant, incompetent person, nor in the military service of the United States; and it further appearing that there is no just reason for delay of entry of final judgment against Defendants and for good cause shown;

IT IS on this _____ day of __________________, 2025,

1. ORDERED and ADJUDGED that the foregoing motion be, and hereby is, GRANTED; and it is further

2. ORDERED AND ADJUDGED that Final Judgment be, and hereby is, ENTERED in favor of Plaintiffs against Defendants on counts I (fraud), III (breach of contract), and IV (breach of the implied duty of good faith and fair dealing) of the Complaint in the amount of **$141,063,243.99**, representing the combined principal and delinquent earnings of $47,021,081.33, and punitive damages of $94,042,162.66, plus interest at 7% per annum until Plaintiff's judgment is paid.

DISTRICT COURT OF THE STATE OF WYOMING NATRONA COUNTY

COPIES SENT BY
CLERKS OFFICE
04/04/2025
2024-CV-0114404
Carol Korell

______________________
Hon. Joshua Eames

DISTRICT COURT OF THE STATE OF WYOMING NATRONA COUNTY

CERTIFIED
TO BE A FULL TRUE AND CORRECT COPY
12/31/2025
Olivia Daniels
Deputy Clerk
Jill Kiester
Jill Kiester
Clerk of District Court
Natrona County

This document constitutes a ruling of the court and should be treated as such.

**/s/ Judge Joshua Eames**

**CAUSE NO. __________________**

| | |
|---|---|
| **BLISS CREEK FUND 1, LLC**,<br>*Plaintiff / Judgment Creditor,*<br>*v.*<br>**GCZ GLOBAL LLC**<br>*and*<br>**JONATHAN L. ADAM**,<br>*Defendants / Judgment Debtors.* | **DISTRICT COURT**<br>**BRAZORIA COUNTY, TEXAS**<br>***Enforcement of Foreign Judgment*** |

**AFFIDAVIT OF ATTORNEY BRADLEY W. BESKIN**
**Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a)**

1. My name is Bradley Walker Beskin.

2. I am an attorney licensed in the States of Texas (24105463) and Oklahoma, as well as the District of Columbia. I am over the age of eighteen and competent to make this Affidavit.

3. My firm contact information is as follows:

Bradley W. Beskin, Texas Bar No. 24105463
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, Oklahoma 73102
405.516.7800 *office*
405.516.7859 *fax*
bbeskin@whittenburragelaw.com

I maintain my principal office location in Austin, Texas.

4. I am legal counsel for Bliss Creek Fund 1, LLC (the "Judgment Creditor").

5. This Affidavit is made for the purposes of enforcing the foreign judgement entered in favor of the Judgement Creditor in *Bliss Creek Fund 1, LLC v. GCZ Global LLC and Jonathan L. Adam*, 2024-CV-0114404 (Seventh Judicial District Court, Natrona County, Wyoming) on April 4, 2025 (the "Wyoming Judgment"). This Affidavit is made pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a). The Wyoming Judgment is attached hereto.

6. In the Wyoming Judgment, the Hon. Joshua Eames ordered and adjudged that Final Judgment be entered in favor of Plaintiffs against Defendants on counts I (fraud), III (breach of contract), and IV (breach of the implied duty of good faith and fair dealing) of the Complaint in the amount of $141,063,243.99, representing the combined principal and delinquent earnings of $47,021,081.33 and punitive damages of $94,042,162.66, plus interest at 7% per annum until Plaintiff's judgment is paid.

## I. JUDGEMENT CREDITOR BLISS CREEK FUND 1, LLC

7. Judgment Creditor **Bliss Creek Fund 1, LLC** is a Wyoming limited liability company with a principal place of business as follows:

Bliss Creek Fund 1, LLC
c/o William A. Towler
5309 NW 158th Street
Edmond, Oklahoma 73013

Judgement Creditor Bliss Creek Fund 1, LLC is represented by the following counsel:

Brad Beskin
Blake Sonne
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
405.516.7800 *office*
405.516.7859 *fax*
bbeskin@whittenburragelaw.com
bsonne@whittenburragelaw.com

*- and -*

Adam Zentner
ZENTNER LAW
8826 Santa Fe Drive. Suite 190
Overland Park, Kansas 66212
913-800-0529 *office*
adam@zentnerlaw.com

## II. JUDGEMENT DEBTOR GCZ GLOBAL LLC

8. **GCZ Global LLC** (a "Judgment Debtor") is a Wyoming limited liability company with its principal place of business as follows:

GCZ Global LLC
c/o Jonathan L. Adam
518 Bryan Street
Angleton, Brazoria County, Texas 77515-4836

Judgement Debtor GCZ Global LLC maintains its registered agent for service of process as follows:

Republic Registered Agent LLC
5830 E 2nd Street Suite 7000
Casper, Wyoming 82609

Judgement Debtor GCZ Global LLC maintains the following additional mailing address on file with the Wyoming Secretary of State's Office:

5830 E 2nd Street, Suite 7000 #9453
Casper, Wyoming 82609

Judgement Debtor GCZ Global LLC is represented by the following counsel:

Leslie Katz
Robert Rhatigan
PRACTUS LLP
11300 Tomahawk Creek Pkwy Suite 310
Leawood, Kansas 66211
415-722-6547 (Katz Mobile)
240-206-6027 (Rhatigan)
Leslie.Katz@practus.com
robert.rhatigan@practus.com

Additional firm address may be as follows:

555 Long Wharf Drive
New Haven, Connecticut 06511

## III. JUDGEMENT DEBTOR JONATHAN L. ADAM

9. **Jonathan L. Adam** (a "Judgement Debtor") is an individual residing at the following address:

Jonathan L. Adam
518 Bryan Street
Angleton, Brazoria County, Texas 77515-4836

On information and belief, Judgment Debtor Jonathan L. Adam is represented by the following counsel:

Leslie Katz
Robert Rhatigan
PRACTUS LLP
11300 Tomahawk Creek Pkwy Suite 310
Leawood, Kansas 66211
415-722-6547 (Katz Mobile)
240-206-6027 (Rhatigan)
Leslie.Katz@practus.com
robert.rhatigan@practus.com

Additional firm address may be as follows:

555 Long Wharf Drive
New Haven, Connecticut 06511

10. Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a), b) the Judgment Creditor shall (1) promptly mail notice of the filing of the foreign judgment to the Judgment Debtors at the addresses provided for the Judgment Debtors and (2) file proof of mailing of the notice with the Clerk.

11. I declare the forgoing to be true and correct to the best of my knowledge.

Respectfully Submitted,

Sincerely,

Bradley W. Beskin
Tex. Bar No. 24105463

**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office: 405.516.7800
Facsimile: 405.516.7859
bbeskin@whittenburragelaw.com

**NOTARIZATION**

STATE OF OKLAHOMA

COUNTY OF OKLAHOMA

Sworn to and subscribed before me by Bradley W. Beskin [AFFIANT]

on February 6 (six), 2026 [DATE].

(Personalized Seal)

Notary Public's Signature

KAREN STRATTON
Notary Public, State of Oklahoma
Commission # 24012626
My Commission Expires 10-09-2028

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Beskin on behalf of Bradley Beskin
Bar No. 24105463
brad@beskingroup.com
Envelope ID: 110973067
Filing Code Description: Original Petition (1-10 Plaintiffs) (OCA)
Filing Description: Notice of Filing of Foreign Judgment
Status as of 2/9/2026 8:47 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bradley Beskin | | bbeskin@whittenburragelaw.com | 2/6/2026 4:19:18 PM | SENT |
| Blake Sonne | | bsonne@whittenburragelaw.com | 2/6/2026 4:19:18 PM | SENT |
| Karen Stratton | | Kstratton@whittenburragelaw.com | 2/6/2026 4:19:18 PM | SENT |