**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **JONATHAN ADAM** *and*<br>**GCZ GLOBAL, LLC**,<br>*Plaintiffs and Judgment Debtors*,<br>v.<br>**UNITED STATES SECURITIES AND EXCHANGE COMMISSION** *and*<br>**BLISS CREEK FUND 1, LLC**,<br>*Defendants*. | CIVIL ACTION NO. 4:26-cv-05240 |

**DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS THE COMPLAINT IN INTERPLEADER UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

## CONTENTS


**I. SUMMARY OF THE ARGUMENT ..... 1**

**II. BACKGROUND ..... 2**

A. The SEC Action and the Asset Freeze Order. ..... 2

B. The Wyoming Judgment. ..... 3

C. Adam's Resistance to Enforcement in the Texas Courts. ..... 3

D. This Action. ..... 4

**III. LEGAL STANDARD ..... 5**

**IV. ARGUMENT AND AUTHORITIES ..... 6**

A. The Court Lacks Subject-Matter Jurisdiction. ..... 6

1. The Complaint pleads no justiciable controversy. ..... 6

2. The claims against the SEC are barred by sovereign immunity. ..... 8

B. The Complaint Fails to State a Claim in Interpleader. ..... 9

1. Interpleader is not an all-purpose bill of peace for a judgment debtor. ..... 9

2. There is no stake. ..... 10

3. The SEC and Bliss Creek are not adverse claimants to a common fund. ..... 13

4. Plaintiffs have deposited nothing, can surrender nothing, and claim the property for themselves. ..... 15

5. Plaintiffs' best authorities confirm their pleading defect. ..... 16

C. The Anti-Injunction Act Bars the Requested Stay of Execution. ..... 20

D. The Court Should Decline to Entertain the Declaratory-Judgment Count. ..... 23

**V. CONCLUSION AND PRAYER ..... 25**

## AUTHORITIES

**Cases**

*Airborne Freight Corp. v. United States*
195 F.3d 238 (5th Cir. 1999) .......... *passim*

*Am. Fid. Fire Ins. Co. v. Construcciones Werl, Inc.*
407 F. Supp. 164 (D.V.I. 1975) .......... 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 5

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*
398 U.S. 281 (1970) .......... 21, 23

*Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*
782 F.3d 186 (5th Cir. 2015) .......... *passim*

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 5

*Brillhart v. Excess Insurance Co. of America*
316 U.S. 491 (1942) .......... 2, 25

*Chick Kam Choo v. Exxon Corp.*
486 U.S. 140 (1988) .......... 21

*FAA v. Cooper*
566 U.S. 284 (2012) .......... 8

*FDIC v. Meyer*
510 U.S. 471 (1994) .......... 8

*Gentile v. SEC*
974 F.3d 311 (3d Cir. 2020) .......... 8

*Hill v. Martin*
296 U.S. 393 (1935) .......... 21

*In re Baldwin-United Corp.*
770 F.2d 328 (2d Cir. 1985) .......... 23

*In re Corrugated Container Antitrust Litigation*
659 F.2d 1332 (5th Cir. 1981) .......... 23

*In re T.S.C. Seiber Servs.*
771 F.3d 246 (5th Cir. 2014) .......... 15, 19

*Indianapolis Colts v. Mayor & City Council of Baltimore*
733 F.2d 484 (7th Cir. 1984) ....................13, 24

*Kline v. Burke Constr. Co.*
260 U.S. 226 (1922)....................23

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007)....................6

*Murphy v. Travelers Insurance Co.*
534 F.2d 1155 (5th Cir. 1976) ....................12, 15

*Norris v. Hearst Trust*
500 F.3d 454 (5th Cir. 2007) ....................5

*Orix Credit All., Inc. v. Wolfe*
212 F.3d 891 (5th Cir. 2000) ....................7

*Ramming v. United States*
281 F.3d 158 (5th Cir. 2001) ....................5

*Rhoades v. Casey*
196 F.3d 592 (5th Cir. 1999) ....................11

*Salomon Smith Barney, Inc. v. McDonnell*
201 F.R.D. 297 (S.D.N.Y. 2001) .................... *passim*

*SEC v. Blakstad*
No. 20-cv-163, 2020 WL 7398755 (S.D.N.Y. Dec. 17, 2020) .................... *passim*

*Sherwin-Williams Co. v. Holmes County*
343 F.3d 383 (5th Cir. 2003) ....................23, 24

*St. Paul Insurance Co. v. Trejo*
39 F.3d 585 (5th Cir. 1994) ....................6, 23, 24

*State Farm Fire & Cas. Co. v. Tashire*
386 U.S. 523 (1967).................... *passim*

*Texas v. United States*
523 U.S. 296 (1998)....................7

*Wausau Ins. Cos. v. Gifford*
954 F.2d 1098 (5th Cir. 1992) .................... *passim*

*White v. FDIC*
19 F.3d 249 (5th Cir. 1994) ....................13

*Wilton v. Seven Falls Co.*
515 U.S. 277 (1995) .......... 2, 6, 25

**Statutes and Rules**

5 U.S.C. § 551 .......... 8

5 U.S.C. § 702 .......... 8

28 U.S.C. § 1335 .......... 9, 15 ,16, 21

28 U.S.C. § 2201 .......... 4, 25

28 U.S.C. § 2283 .......... 2, 21, 23

28 U.S.C. § 2361 .......... 17, 20, 21, 22

28 U.S.C. § 2410 .......... 9

Fed. R. Civ. P. 22 .......... *passim*

Fed. R. Civ. P. 67 .......... 15

Fed. R. Civ. P. 82 .......... 8

Fed. R. Evid. 201 .......... 5

Tex. R. App. P. 24.2(b) .......... 4

**Secondary Authorities**

Wright & Miller § 1716 .......... 15

Defendant Bliss Creek Fund 1, LLC ("Bliss Creek") moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint in Interpleader and for Declaratory Judgment (Dkt. 1) filed by Plaintiffs Jonathan L. Adam and GCZ Global, LLC, and respectfully shows the Court as follows.

## I. SUMMARY OF THE ARGUMENT

Interpleader protects a stakeholder. It allows a party holding a fund it does not claim, or claims only in part, to bring rival claimants of that fund into one proceeding, surrender the stake to the court, and avoid the risk of paying the same debt twice. Fed. R. Civ. P. 22(a)(1); *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533-34 (1967).

Plaintiffs' Complaint inverts the interpleader device at every point. Plaintiffs are not stakeholders; they are defendants in a pending SEC enforcement action and judgment debtors on a $141,063,243.99 default judgment held by Bliss Creek. The "stake" is not a discrete fund; it is defined to include substantially all of Adam's nonexempt property, frozen and unfrozen alike. The "claimants" are not rivals asserting mutually exclusive rights to one res; they are a regulatory agency holding consent judgments entered by another federal court and a private judgment creditor holding a domesticated money judgment, each entitled to pursue Plaintiffs' assets under its own remedies and priorities. Plaintiffs have deposited nothing, tendered nothing, and expressly reserve their own claims to the property, including exemptions. What the Complaint actually seeks is a federal injunction suspending collection of a state-court judgment that Adam has not superseded, filed fifteen days before Adam asked the Business Court of Texas to fix his appellate security at $10,000 against that $141 million judgment.

This motion presents four independent grounds for dismissal, addressed in Part IV below. First, the Court lacks subject-matter jurisdiction: the asserted conflict between the federal Asset Freeze Order and Bliss Creek's collection efforts is hypothetical, contingent, and, to the extent it

exists at all, of Plaintiffs' own making, because the freeze does not reach Adam's post-freeze income and the issuing court stands ready to modify its own order on motion—a motion Adam has never made. The claims against the SEC are independently barred by sovereign immunity, and once the SEC is dismissed, the Complaint's only pleaded basis for federal jurisdiction goes with it. Second, the Complaint fails to state a claim in interpleader as a matter of law: under *Tashire*, interpleader is not an all-purpose bill of peace for a judgment debtor, and the Complaint identifies no stake, no deposit, and no adverse claims to a common fund. Third, the injunctive relief requested, a stay of execution, levy, garnishment, and turnover in the Texas courts, is squarely barred by the Anti-Injunction Act, 28 U.S.C. § 2283, whose exceptions do not apply to a Rule 22 action in which no *res* has been deposited. Fourth, the declaratory-judgment count should be dismissed under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942): it was filed in anticipation of enforcement, seeks to relitigate matters committed to the Texas, Wyoming, and Georgia courts, and would reward forum shopping by a judgment debtor seeking the practical benefit of a supersedeas he declines to fund.

## II. BACKGROUND

### A. The SEC Action and the Asset Freeze Order.

The SEC sued Adam, GCZ, and their co-defendants in the Northern District of Georgia, alleging the operation of a securities scheme through which investors, including Bliss Creek, provided tens of millions of dollars to GCZ. *SEC v. Tanner S. Adam, et al.*, No. 24-3774-MHC (N.D. Ga.); Compl. ¶¶ 10–12, 35. On August 26, 2024, on Plaintiffs' consent, the Georgia court entered orders freezing their assets. Compl. ¶¶ 14–18. The next day, again on consent, that court entered judgments obligating Adam and GCZ to pay disgorgement, prejudgment interest, and civil penalties in amounts to be determined on the SEC's motion. *Id.* ¶¶ 19–21. The SEC has since moved for $30,512,775 in disgorgement and $6,221,302 in prejudgment interest jointly and

severally, a $3,000,000 penalty against Adam individually, and relinquishment of Angleton, Texas real properties purchased with investor funds and titled in the names of Adam's family members. Ex. 1 at 4; Ex. 2 at 3. The Georgia court has not yet set the amounts. The Asset Freeze Order remains in effect "until further order of the Court," and it contains a "Post Freeze Account" provision that permits Adam to receive and freely transact new income from sources unrelated to the alleged offering. Ex. 1 at 8–9.

**B. The Wyoming Judgment.**

In September 2024, Bliss Creek sued Adam and GCZ in the District Court of Natrona County, Wyoming for fraud, negligence, breach of contract, and breach of the implied duty of good faith and fair dealing. Compl. ¶ 22. Adam and GCZ were served in December 2024. They did not answer, and did not appear. Their defaults were entered on January 28, 2025, and on April 4, 2025 the Wyoming court entered judgment for Bliss Creek, jointly and severally, in the amount of $141,063,243.99, comprising $47,021,081.33 in principal and compensatory damages and $94,042,162.66 in punitive damages, with interest at seven percent. *Id.* ¶¶ 24–26. GCZ's Rule 60(b) motion for relief from that judgment remains pending in Wyoming. *Id.* ¶ 31.

**C. Adam's Resistance to Enforcement in the Texas Courts.**

Bliss Creek domesticated the Wyoming Judgment against Adam in Texas in February 2026. What followed is a pattern that has repeated in every forum: Adam removed the enforcement proceeding to the Business Court of Texas; moved to vacate the domesticated judgment; lost, the court finding he had not overcome the presumption of validity of the Wyoming Judgment; and appealed to the Fifteenth Court of Appeals, where the matter is pending. Compl. ¶¶ 27–30. Meanwhile, beginning in April 2026, Bliss Creek sought dates for Adam's post-judgment deposition. Adam has never provided one. Ex. 2 at 3–4 & n.2. On June 5, 2026, Bliss Creek applied for a writ of execution; the writ has issued. Ex. 2 at 3.

Adam has not superseded the judgment. Instead, on July 16, 2026, he moved the Business Court under Texas Rule of Appellate Procedure 24.2(b) to set his security at $10,000, contending that the federal freeze makes any greater security impossible. Ex. 1. His supporting affidavit disclosed a single unfrozen checking account holding $6,750.55, attached a bank statement with every deposit and withdrawal redacted, and omitted his income. Ex. 2 at 1, 6–8. Only in reply, after Bliss Creek objected, did Adam disclose that he is employed at a gross salary of $20,000 per month, none of it frozen, all of it flowing into the very account he had offered as proof of hardship, and that the redactions had concealed the payroll deposits showing it. Ex. 3, Reply Ex. M ¶ 3; Ex. 4 at 1–2. The Business Court is effectively holding the bond motion in abeyance and has granted Bliss Creek discovery, with the parties ordered to confer on its scope. The day after filing the bond motion, Adam opposed his deposition on the ground that the bond motion, "if granted," would eliminate Bliss Creek's discovery rights. Ex. 2 at 2, 4.

**D. This Action.**

Plaintiffs filed this suit on July 1, 2026, fifteen days before the bond motion. The Complaint pleads a single interpleader count under Rule 22 and a declaratory-judgment count under 28 U.S.C. § 2201. It defines the "Disputed Assets" to include four parcels of Angleton real property, accounts at five financial institutions, cryptocurrency holdings at two exchanges, "non-frozen funds," and "any other non-exempt personal or real property of Adam located within the State of Texas that is subject to both the Asset Freeze Order and Bliss Creek's Application for Writ of Execution." Compl. ¶ 34. The prayer asks this Court to order the SEC and Bliss Creek to "interplead and settle among themselves," to declare the relative priority of their claims, to order dollar-for-dollar crediting between any Bliss Creek recovery and Plaintiffs' SEC obligations, and to "[e]nter a preliminary order staying all enforcement and collection efforts against Plaintiffs' assets, including but not limited to execution, levy, garnishment, or turnover proceedings." Compl., Prayer ¶¶ 2–5.

Plaintiffs have not deposited any property into the registry of the Court, have not moved for leave to do so, and expressly reserve their rights to claim exemptions in the property at issue, including Adam's homestead. *Id.* ¶ 34 & n.2, Prayer ¶ 7. The SEC has not appeared.

## III. LEGAL STANDARD

The party invoking jurisdiction bears the burden of establishing it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In resolving a Rule 12(b)(1) motion, the court may consider the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id.* Where, as here, a motion presents both jurisdictional and merits grounds, the court addresses jurisdiction first. *Id.*

To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions couched as factual allegations are not accepted as true. *Iqbal*, 556 U.S. at 678–79. The Court may take judicial notice of matters of public record, including the filings and orders of other courts. Fed. R. Evid. 201; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The Business Court filings cited in this motion are attached as Exhibits 1 through 4, and Bliss Creek requests judicial notice of them.

Rule 22 permits joinder of persons "with claims that may expose a plaintiff to double or multiple liability." Fed. R. Civ. P. 22(a)(1). The rule supplies no jurisdiction of its own; a Rule 22 plaintiff must establish an independent basis for subject-matter jurisdiction. *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015). An interpleader proceeds in two stages:

> In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court

> finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.

*Id.* at 193.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant," and "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 289 (1995). That discretion is guided in this circuit by the factors set out in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

## IV. ARGUMENT AND AUTHORITIES

### A. The Court Lacks Subject-Matter Jurisdiction.

#### 1. The Complaint pleads no justiciable controversy.

Both Complaint counts rest on a single factual premise: that Adam faces "irreconcilable" commands because the Asset Freeze Order forbids him to transfer assets while Bliss Creek's writ compels their seizure, such that he "cannot satisfy one without potentially violating the other." Compl. ¶¶ 38, 45. Article III requires more than that abstraction. A declaratory plaintiff must present a controversy "of sufficient immediacy and reality," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and a claim is not ripe where it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); see *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896–97 (5th Cir. 2000).

The pleaded conflict is contingent three times over. First, the SEC's monetary claims are unliquidated: the consent judgments defer disgorgement, interest, and penalties to amounts "to be determined by the Court upon motion of the Commission," and the Georgia court has not ruled. Compl. ¶¶ 20–21. There is today no fixed SEC obligation with which any payment to Bliss Creek

could conflict. Second, no inconsistent command exists or is imminent. The Asset Freeze Order binds Adam and those in concert with him with respect to identified frozen assets; it does not purport to bind the Texas courts, and nothing in the Complaint alleges that any officer has levied, or is about to levy, on frozen property. Third, and decisively, any tension between the two regimes is resolvable, and only resolvable, by the court that entered the freeze. The order is effective "until further order of the Court," and the Northern District of Georgia retains jurisdiction to modify it. *See* Compl. Ex. A; Ex. 2 at 9–10. Adam has never asked. Plaintiffs attempt to manufacture a justiciable dilemma by declining to request the relief that would dissolve it, and then to present it to a different court as a *fait accompli*.

The Business Court record confirms how little reality underlies the pleaded conflict. The freeze order's Post Freeze Account provision leaves Adam's post-freeze earnings entirely outside the freeze, and Adam now concedes those earnings run $20,000 per month gross. Ex. 3, Reply Ex. M ¶ 3. Bliss Creek can lawfully pursue nonexempt, non-frozen property without implicating the Asset Freeze Order at all, and the writ of execution reaches only non-exempt property in any event. The image of a debtor caught between two sovereigns, each demanding the same dollar, is a construct of the pleading, not a description of anything that has happened or is about to happen.

Plaintiffs may invoke the observation in *Blakstad* that the failure of competing claims to have "ripened is of no consequence" because "Rule 22 requires only the potential existence of adverse claims." 2020 WL 7398755, at *3. That statement addresses an element of Rule 22, whether the claims asserted against a stakeholder are sufficiently adverse to support the device. It does not address the Article III question presented here, and it could not: "These rules do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. The stakeholder held $750,000 and had to decide whether to return it under his contract or hold it against the

Commission's anticipated disgorgement claim; what to do with the money was a present question even though the claims to it were not yet fixed. Adam confronts no comparable decision. He holds property no one has taken, that no officer has attempted to levy upon, under a freeze order the issuing court can modify on his motion, against an SEC obligation that has no amount.

**2. The claims against the SEC are barred by sovereign immunity.**

Absent an unequivocal waiver, sovereign immunity shields federal agencies from suit, and the bar is jurisdictional. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Waivers of sovereign immunity "are to be read narrowly in favor of the sovereign." *Id.* at 480–81. A waiver must be "unequivocally expressed" in statutory text. *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

Statutory standing under § 702 "depends on agency action," and the waiver "extends only to challenges to agency action." *Gentile v. SEC*, 974 F.3d 311, 316, 318 (3d Cir. 2020). The Complaint challenges none. It identifies no rule, order, license, sanction, or denial of the Commission, *see* 5 U.S.C. § 551(13), and asks instead for a declaration of priority between two creditors and an injunction against a private judgment creditor. Nor does § 702 "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." What Plaintiffs seek from the Commission is an order restraining enforcement of consent judgments entered by another United States district court, and a declaration reordering remedies that court has yet to fix. Those requests belong to the Northern District of Georgia, which retained jurisdiction over its own orders.

Section 2410(a)(5) reaches an action "of interpleader or in the nature of interpleader with respect to ... real or personal property on which the United States has or claims a mortgage or other lien." The category is not the condition. A preliminary asset freeze is not a lien; it is a restraint on the defendant, and the SEC's requested constructive trust is precisely that, a request, not an adjudicated property interest. The Complaint's own description of the SEC's position is an

"equitable interest" said to arise from the freeze and an unadjudicated remedies motion. Compl. ¶ 7. That is not a "mortgage or other lien" within any reading of § 2410. Nor does the Complaint do what the statute requires of a pleading invoking it: "[t]he complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States." 28 U.S.C. § 2410(b).

The consequence is jurisdictional. Rule 22 requires an independent basis for subject-matter jurisdiction, *Auto Parts Mfg.*, 782 F.3d at 192, and the Complaint pleads only federal-question jurisdiction, on the theory that the SEC "could" bring a coercive enforcement action against Plaintiffs. Compl. ¶¶ 5–6. With the SEC dismissed, that theory has no object: the remaining dispute is between Texas and Wyoming citizens over the enforcement of a state-court judgment, a matter arising, if anywhere, under state law. No diversity jurisdiction is pleaded, and statutory interpleader under 28 U.S.C. § 1335 is unavailable both because Plaintiffs invoked only Rule 22 and because they have deposited neither the stake nor a bond, a statutory precondition. 28 U.S.C. § 1335(a)(2). Dismissal of the SEC therefore requires dismissal of the action.[1]

**B. The Complaint Fails to State a Claim in Interpleader.**

**1. Interpleader is not an all-purpose bill of peace for a judgment debtor.**

*Tashire* marks the outer limit of the device. An insurer whose insured had collided with a Greyhound bus deposited its $20,000 policy limit into court and obtained an injunction confining all litigation arising from the accident to the interpleader proceeding. 386 U.S. at 525–28. The Supreme Court held that the insurer had properly invoked interpleader jurisdiction, but that the injunction swept far past what the device permits. "[T]he scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund,' the deposited proceeds of

[1] The authority on which the Complaint builds its coercive-action theory, *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297 (S.D.N.Y. 2001), as well as *SEC v. Blakstad*, 2020 WL 7398755 (S.D.N.Y. Dec. 17, 2020), each presupposed a claimant subject to suit and a depositable *res*, and are addressed on the merits in Part IV.B.5 below.

the insurance policy," and "the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.* at 533–34. Interpleader "cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort," because it "was never intended to perform such a function, to be an all-purpose 'bill of peace.'" *Id.* at 535.

Plaintiffs ask for considerably more than *Tashire* refused. The insurer there had a fund, deposited it, and asked only that claims to that fund be resolved in one place. Plaintiffs have no fund, have deposited nothing, and ask this Court to halt a judgment creditor's execution. Plaintiffs are not third parties caught holding someone else's money. They are the defendants in the SEC Action and the judgment debtors on the Wyoming Judgment, and the "competing claims" they invoke are simply their own liabilities, twice adjudicated on their own consent or default. A debtor facing more claims than assets does not thereby acquire an interpleader claim against his creditors. The forum for a genuinely overtaxed estate is title 11, not Rule 22.

**2. There is no stake.**

A single, identifiable fund is a prerequisite to interpleader, and this matter does not have one. The Fifth Circuit has held that "[t]he courts and authorities have uniformly held that a single, identifiable fund is a prerequisite to an interpleader action," *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992), and that "[a] specific, identifiable property or fund must be involved," *id.* at 1101 (citation omitted). The requirement governs rule and statutory interpleader alike: "[A]n interpleader action, whether rule or statutory, will not lie where there are independent funds each with its own claimants." *Id.* (quoting *Am. Fid. Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164, 174 (D.V.I. 1975)). Plaintiffs' own lead authority confirms the element, treating the existence of "a 'single, identifiable fund'" as a distinct requirement and tracing it to *Wausau*. *Auto Parts Mfg.*, 782 F.3d at 195 (quoting *Rhoades v. Casey*, 196 F.3d 592, 600 n.8 (5th Cir. 1999)).

*Wausau* identifies what disqualifies a purported stake. Six insurers, facing roughly thirty state-court suits arising from a developer's defective houses, filed an interpleader after the state court declined to consolidate those suits. 954 F.2d at 1099–1100. The Fifth Circuit affirmed dismissal for want of jurisdiction on two grounds. First, liability was inchoate: because the six policies covered different periods, "it is unclear whether there are legitimate claims against each fund," and four of the insurers might prove to "have funds which are not subject to liability." *Id.* at 1101. Second, the amount could not be fixed: "There is no way that the exact amount of the fund in question can be formulated." *Id.* Both defects are present here.

Plaintiffs' liability to each claimant is unliquidated or disputed. The SEC's consent judgments fix no sum. Disgorgement, prejudgment interest, and civil penalties all await determination "by the Court upon motion of the Commission," and the Georgia court has not ruled. Compl. ¶¶ 20–21. Adam is simultaneously prosecuting an appeal contesting the validity of the Wyoming Judgment, *id.* ¶ 30, and GCZ's Rule 60(b) motion for relief from that judgment remains pending in Wyoming, *id.* ¶ 31. On Plaintiffs' own pleading, neither obligation is fixed, and Plaintiffs ask this Court to allocate priority between two claims whose existence and amount are still being litigated in other forums. That is the "inchoate, uncertain claim ... asserted against the general assets of a party rather than specific, identifiable 'property'" that "is not a proper subject for interpleader relief." *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976) (addressing attorney fee claim). Entertaining it would "unduly broaden federal interpleader jurisdiction to include virtually any contingent or inchoate claim which might ultimately be the subject of litigation." *Id.*

Nor can the amount of the supposed fund be formulated. The Complaint assigns no value to anything. It does not state the worth of any of the four Angleton parcels, the balance of any

account at the five named institutions, or the quantity or value of the cryptocurrency held at Kraken and Coinbase, and as to the last it could not, because those holdings fluctuate daily. Compl. ¶ 34. The omission is not a pleading oversight. Interpleader reaches instruments "of definite, ascertainable value," and federal interpleader jurisdiction "depends on identifiable property or a limited fund or pecuniary obligation." *Murphy*, 534 F.2d at 1159 & n.2. The Court cannot determine the respective rights of claimants to a *res* of unstated size.

The manner in which the Complaint assembles the Disputed Assets confirms the defect rather than curing it. The definition sweeps together four parcels of real property, every account at five financial institutions, cryptocurrency at two exchanges, "non-frozen funds," and a residual category capturing "any other non-exempt personal or real property of Adam located within the State of Texas." Compl. ¶ 34. Nothing connects these items except that Adam owns them. They share no custodian, no governing instrument, and no common source of liability. The definition reaches in to include non-frozen funds, which on the Complaint's own theory no SEC restraint touches, while excluding the homestead and all other exempt property Plaintiffs intend to keep. *Id.* ¶ 34 & n.2; Prayer ¶ 7. A perimeter that expands to whatever Bliss Creek might levy upon, and contracts to exclude whatever Adam wishes to retain, is not a fund committed to the Court's control. It is a description of a debtor's balance sheet, drawn for litigation advantage. Where courts have found an identifiable *res* across more than one account, they have done so where the accounts shared a custodian and a common source of liability, and where the stakeholder set out the discrete amounts held in each. This Complaint offers none of those features.

*Wausau* resolves the element: "Interpleader actions require a single, identifiable fund. We do not have such a fund in this case. Interpleader cannot be used to consolidate cases involving diverse claims against diverse funds." 954 F.2d at 1101.

**3. The SEC and Bliss Creek are not adverse claimants to a common fund.**

The SEC and Bliss Creek hold independent claims against the Plaintiffs, not rival claims to a stake. Rule 22 requires claims "that may expose a plaintiff to double or multiple liability," Fed. R. Civ. P. 22(a)(1), and the Fifth Circuit has defined the office of interpleader accordingly: it entitles "a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund." *Airborne Freight Corp. v. United States*, 195 F.3d 238, 240 n.4 (5th Cir. 1999) (quoting *White v. FDIC*, 19 F.3d 249, 251 (5th Cir. 1994)); *see also Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 488 (7th Cir. 1984) (no stake where one claimant asserted a right to the property itself and the other held only a claim for contract damages). No such claims exist here. The SEC holds consent judgments entitling it to disgorgement and penalties from Plaintiffs. Bliss Creek holds a general money judgment entitling it to execute on Plaintiffs' nonexempt property, wherever found. Neither claims through or against the other; neither asserts title to a fund the other also claims; and both can lawfully recover, in whole or in part, under the priority rules that ordinarily govern competing creditors. If Bliss Creek levies on unfrozen property, no SEC right is violated. If the Georgia court later liquidates the SEC's remedies and reaches frozen assets, no Bliss Creek right is violated.

*Airborne Freight* decides the point. There, the interpleader plaintiff was itself a judgment debtor: it owed a $106,826.36 fund to an insolvent counterparty, deposited that fund into the registry, and interpleaded the IRS, which claimed the fund under a tax lien, together with Morrison, a creditor holding a general money judgment against the plaintiff itself; the district court then enjoined Morrison from executing on its judgment. 195 F.3d at 239–40. The Fifth Circuit vacated the injunction and ordered the action dismissed for lack of jurisdiction, because Morrison's "claim is against Airborne, not the stake," and a court cannot "force a judgment creditor who holds a

general judgment against a judgment debtor to contest with claimants who hold an interest only in a stake held by the judgment debtor if that judgment creditor elects to satisfy its judgment out of other assets held by the fully solvent judgment debtor." *Id.* at 241–42. Bliss Creek stands where Morrison stood. Its domesticated Wyoming Judgment is a general money judgment against Adam and GCZ, satisfiable from any nonexempt asset, including the post-freeze income the Asset Freeze Order does not reach; it is not a claim of entitlement to any particular res. And the dismissal in *Airborne Freight* followed even though the fund had actually been deposited and the stakeholder had disclaimed any interest in it. Plaintiffs have done neither.

The Complaint's "finite pool" theme does not escape *Airborne Freight*. The court there reserved the scenario of a debtor "bankrupt or otherwise bereft of funds other than those in the stake," observing that it would not thwart a creditor's effort to pursue the stake "as a participant in the interpleader action." *Id.* at 241–42. That passage describes a creditor's election to participate, not a debtor's power to compel participation, and the creditor here has made the opposite election: Bliss Creek's writ has issued, and it is entitled to pursue assets, such as Adam's undisclosed-then-disclosed salary, that no freeze touches. The reserved scenario also presupposes a stake actually before the court; Plaintiffs have deposited nothing. What remains of the argument is a plea of insolvency, and the Complaint says so: Plaintiffs' assets "are vastly insufficient to satisfy either competing claim, let alone both." Compl. ¶ 36. Insufficiency of assets is the ordinary condition of an insolvent judgment debtor, and its proper forum is bankruptcy,

The crediting theory fails for the same reason. Plaintiffs fear paying "twice for the same alleged loss" absent a dollar-for-dollar offset. Compl. ¶ 39. Whether payments to investors should be credited against disgorgement is a question for the Northern District of Georgia when it fixes the SEC's remedies. It does not convert two independent liabilities into rival claims to a stake.

**4. Plaintiffs have deposited nothing, can surrender nothing, and claim the property for themselves.**

The first stage of any interpleader turns on the stakeholder's surrender of the stake. *See In re T.S.C. Seiber Servs., L.C.*, 771 F.3d 246, 252 (5th Cir. 2014) (distinguishing "the act of depositing funds into the district court registry" from "the judicial act of discharging the depositor of any further liability"). Plaintiffs have deposited nothing and have not sought leave to deposit anything, under Rule 67 or otherwise.

Bliss Creek acknowledges that Rule 22, unlike 28 U.S.C. § 1335(a)(2), imposes no deposit as a statutory precondition to suit. *Murphy*, 534 F.2d at 1159. That distinction does not help Plaintiffs, for three reasons. First, it governs the form and timing of surrender, not the existence of something to surrender. The central prerequisite of interpleader "arises without regard to whether the plaintiff-stakeholder attempts to invoke 'rule' interpleader or 'statutory' interpleader," *Airborne Freight*, 195 F.3d at 240, and the single-fund requirement applies "whether rule or statutory," *Wausau*, 954 F.2d at 1101. Second, the Fifth Circuit's practice even under § 1335 asks little: "[t]he preferred practice is to require only that the stakeholder deposit all of the disputed property he has in his possession, even though it might be less than is claimed by one or more of the defendants." *Murphy*, 534 F.2d at 1159 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1716, at 459 (1972)). Plaintiffs possess the Disputed Assets and have offered none of them. Third, Plaintiffs do not plead that deposit is premature. They plead that it is impossible: the Asset Freeze Order forbids them to transfer the very assets they purport to interplead. Compl. ¶¶ 16, 38. A Rule 22 plaintiff may be excused from depositing on the day he files. He cannot be excused from ever placing a *res* within the Court's control, because the second stage of an interpleader is "a determination of the respective rights of the claimants" to a fund, *Auto Parts Mfg.*, 782 F.3d at 193, and here there would be no fund to which any right could be determined. The Court would

acquire control of nothing, the claimants would have nothing to litigate over, and the Court would be left administering an injunction for the benefit of a party that has parted with nothing.[2] And on Plaintiffs' own pleading, no forum will see a stake surrendered: the Asset Freeze Order is said to forbid a deposit here, and the same order is said to forbid meaningful security in the court where the judgment is being enforced. Ex. 1 at 5–6. Bliss Creek disputes that account and is litigating it in the Business Court; for present purposes the pleading is taken as it comes.

Plaintiffs are not disinterested. The Complaint reserves their exemption claims, excludes homestead, disputes Bliss Creek's characterization of underlying transactions, and reserves Adam's challenges to the judgment itself. Compl. ¶ 34 nn.1–2; Prayer ¶ 7. Rule 22 does not permit a claimant to his own stake to cast his creditors as the interpleaded parties while he retains possession, use, and title. Equity will not lend its remedial device to that arrangement, least of all for a movant whose sworn financial presentation to the state court omitted a $240,000 annual salary until his creditor's objections forced its disclosure. Ex. 4 at 1–2.

**5. Plaintiffs' best authorities confirm their pleading defect.**

Plaintiffs rely on *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186 (5th Cir. 2015) and *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297 (S.D.N.Y.

[2] Plaintiffs anticipate this in the Complaint, but the authorities they cite state the requirement they lack. *See* Compl. ¶ 47 (Plaintiffs may proceed "regardless of whether their own claim to the assets is adverse to, or independent of, the claims of the other parties,") (citing *Tashire*, 386 U.S. at 532 n.9, for the proposition that federal interpleader encompasses actions "in the nature of interpleader," meaning "those in which the plaintiff is not wholly disinterested with respect to the fund."). The full footnote defines those actions as ones in which the plaintiff is not wholly disinterested "with respect to the fund ***he has deposited in court***." 386 U.S. at 532 n.9 (emphasis added). The category Plaintiffs claim to occupy is defined by reference to a deposit they have not made.

The same paragraph cites *Airborne Freight* for the proposition that "an action in the nature of interpleader, in which the plaintiff-stakeholder also makes a claim to the stake," may be maintained under either Rule 22 or § 1335. Compl. ¶ 47 (quoting 195 F.3d at 240). The quoted words are a subordinate clause. The sentence they are drawn from states the governing rule: "The central prerequisite for a 'true' interpleader action ... or for an action in the nature of interpleader, in which the plaintiff-stakeholder also makes a claim to the stake, is that the plaintiff-stakeholder runs the risk ... of multiple liability when several claimants assert rights to a single stake." 195 F.3d at 240. Both authorities accommodate a stakeholder who claims part of the stake. Neither dispenses with the stake, or with its surrender.

2001). They may be expected to rely on *SEC v. Blakstad*, 2020 WL 7398755 (S.D.N.Y. Dec. 17, 2020). Each shows why this action fails.

*Auto Parts*, the Complaint's lead Fifth Circuit authority, was a project owner's interpleader over a single construction receivable. A subcontractor's statutory stop notice and the general contractor's contract claim both targeted the same $260,410.15 the owner owed for the same work; the owner disclaimed any right to the funds, deposited them into the registry, and was discharged as a disinterested stakeholder. 782 F.3d at 188–89. The Fifth Circuit affirmed because there was "a 'single, identifiable fund'" with adverse claimants to it. *Id.* at 194–95. Two features of the opinion matter here. First, the § 2361 injunction the court affirmed protected a discharged, disinterested stakeholder from further suits relating to the fund it had surrendered; the injunction was the consequence of deposit and discharge, not a substitute for them. *Id.* at 191–92, 195–96. Second, the court distinguished *Airborne Freight* on the express ground that "[n]either Noatex nor King is a general creditor of APMM." *Id.* at 195. That is the line that decides this case, and Plaintiffs are on the wrong side of it: the only private claimant they have interpleaded is a general judgment creditor of the Plaintiffs themselves. The Complaint quotes the following: "even the mere 'threat of multiple vexation by future litigation provides sufficient basis for interpleader,'" (Compl. ¶ 45), which states the first-stage liberality that applies once a single identifiable fund and adverse claims to it exist. It does not dispense with *Airborne Freight's* jurisdictional prerequisites.

*McDonnell* was a custodian's interpleader, filed by a brokerage caught between rival claimants to a single account. Judge Owen had found Robert E. Brennan liable in 1995 for a "massive and continuing fraud" on thousands of brokerage customers, had ordered him to disgorge approximately $75 million, and in April 2000 had frozen Brennan's non-estate assets in aid of that judgment. 201 F.R.D. at 299. In February 2001, a newly formed trust opened a Salomon Smith

Barney account holding roughly $1.18 million traceable to a Brennan family trust; the first checks written on the account paid $200,000 to Brennan's criminal defense counsel. *Id.* at 300–01. The SEC notified the brokerage that the account fell within the freeze order, the trust demanded its funds, and the brokerage, "caught between competing claims to the brokerage account and wishing to avoid any violation of this Court's order," interpleaded the SEC and the trustee; the State and a family claimant asserted claims as well. *Id.* at 301. The court sustained the interpleader because every element was present: a neutral custodian with no interest of its own; a discrete, identified *res* already in the custodian's possession; and four claimants "all claiming entitlement in some form to the same funds in the SSB brokerage account." *Id.* at 302. Federal question jurisdiction followed because the SEC's claim of entitlement to the account arose from the disgorgement judgment and freeze order entered by the same judge. *Id.* at 302–03. Plaintiffs occupy the position of Brennan, not of the brokerage: they are the parties whose adjudicated obligations created the competing demands. Brennan faced the SEC's judgment, New Jersey levies, and a bankruptcy estate at once, the very multi-creditor predicament Plaintiffs describe, and nothing in *McDonnell* suggests he could have interpleaded his own creditors, kept his assets, and enjoined collection.

*Blakstad* was a contract counterparty's interpleader, and a deliberately narrow one. Eric Amos had sold a 15% interest in his company to an entity owned by Donald *Blakstad* for an initial payment of $750,000, with an option structure that, upon lapse, gave Amos the right to return the $750,000 and reclaim his shares. 2020 WL 7398755, at *1. After the SEC sued *Blakstad* for securities fraud and informed Amos that the $750,000 consisted of proceeds of that fraud, Amos could not tell whether the money should go back to *Blakstad* under the contract or be held for the SEC's anticipated disgorgement. *Id.*, at *1–2. He did what a stakeholder does: he moved to intervene *in the SEC's own enforcement action*; he identified a single liquid fund; and he asked for

one thing, leave to deposit the $750,000 into the registry of the court. The SEC did not oppose intervention and supported the deposit. *Id.*, at *2. The court granted the motion on expressly limited terms. It emphasized that "[a]ll that is being decided is whether the Funds may be deposited into the court's registry," took "no position" on whether Amos had complied with the repurchase provision or regained ownership of his company, and denied his request for attorney's fees precisely because he no longer sought a discharge from liability. *Id.*, at *4 & n.2. The opinion is built on the distinction this Complaint ignores: the line between "the act of depositing funds into the district court registry and the judicial act of discharging the depositor of any further liability." *Id.*, at *3 (quoting *In re T.S.C. Seiber Servs.*, 771 F.3d at 252).

The differences are structural. The stakeholders in *Auto Parts*, *McDonnell*, and *Blakstad* were strangers to the disputes they brought, and their stakes were a single construction receivable, one identified brokerage account, and a single $750,000 payment, each already in the stakeholder's hands, each of stated amount, and each capable of surrender. Plaintiffs are the alleged architects of the conduct at issue, the defendants in the enforcement action, and the judgment debtors on the judgment they ask this Court to neutralize, and their "stake" is the debtors' estate at large, including non-frozen funds and any nonexempt property Adam owns in Texas, with no amount stated for any of it. The claims there were mutually exclusive assertions of entitlement to one res. The claims here are independent liabilities that can both be valid at once. And each stakeholder there gave up control: the plaintiffs in *Auto Parts* and *Blakstad* deposited into the registry, and the brokerage in *McDonnell* froze the account and held it subject to the court's disposition. Plaintiffs tender nothing, have sought leave to tender nothing, and plead that they lawfully cannot.

Two further differences bear on the relief sought. Where an enforcement action was involved, the interpleader went to the court conducting it: Amos intervened in the SEC's own

action before the judge presiding over it, with the SEC's support, and the brokerage in *McDonnell* filed before the judge who had entered the disgorgement judgment and freeze order against Brennan. This action was filed in a different district, and the SEC has not appeared. And relief in each case followed surrender rather than substituting for it. The § 2361 injunction in *Auto Parts* issued only after deposit and discharge; the *Blakstad* court granted leave to deposit and nothing more, denying fees because the stakeholder no longer sought a discharge, 2020 WL 7398755, at *4 n.2; and the *McDonnell* court invited a fee application from a custodian that had already surrendered control, 201 F.R.D. at 305–06. Plaintiffs ask this Court to invert that sequence: an injunction halting execution on a writ that has already issued, plus their own attorney's fees, Compl., Prayer ¶ 6, without deposit, discharge, or res. The first stage of interpleader is about placing a *res* in the court's custody. There is none here, so there is no first stage and nothing for the second stage to adjudicate.

### C. The Anti-Injunction Act Bars the Requested Stay of Execution.

The Complaint asks this Court to "stay[] all enforcement and collection efforts against Plaintiffs' assets, including but not limited to execution, levy, garnishment, or turnover proceedings." Compl., Prayer ¶ 3. As to Bliss Creek, whose judgment is being enforced through the Business Court of Texas and whose writ of execution has issued from that court, that request is barred by the Anti-Injunction Act: a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The exceptions are narrow, and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970); *see Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).

The Complaint attempts to plead around the statute by asserting that Plaintiffs "do not seek to enjoin any state court proceeding," only "collection efforts." Compl. ¶ 4. The distinction does not exist. "Proceedings in a State court" is a "comprehensive" term. It "includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process," "applies to appellate as well as to original proceedings," "applies alike to action by the court and by its ministerial officers," and "applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective." *Hill v. Martin*, 296 U.S. 393, 403 (1935). An injunction against those steps is against the state proceeding by definition. A contrary rule would reduce § 2283 to a pleading exercise.

No exception applies. The "expressly authorized" exception fails at the threshold, because 28 U.S.C. § 2361 authorizes an interpleader injunction only "[i]n any civil action of interpleader or in the nature of interpleader under section 1335 of this title." Plaintiffs invoked Rule 22, not § 1335, and they could not satisfy § 1335 in any event, having deposited neither the stake nor a bond. Rule 22 carries no comparable authority, and a Rule 22 plaintiff seeking to restrain state proceedings must satisfy § 2283 like any other litigant.

The exception would fail even if the statutory limitation could be set aside, because the Supreme Court has described the circumstances in which a § 2361 injunction is appropriate, and none of them is present. Interpleader confines litigation to a single proceeding, *Tashire* explains, "where a stakeholder, faced with rival claims to the fund itself," must determine his liability to one claimant or the other. 386 U.S. at 534. "In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy," and for that reason "the suits sought to be enjoined are squarely within the language of 28 U.S.C. [§] 2361." *Id.* Neither claimant here targets a fund. The SEC holds unliquidated consent judgments against Plaintiffs personally, and Bliss Creek holds

a general money judgment satisfiable from any nonexempt asset Adam owns, including the post-freeze earnings the Asset Freeze Order does not reach. Neither claim has an 'outer limit" fixed by any res, which is precisely why the injunction Plaintiffs request has no stopping point either: it would reach "all enforcement and collection efforts," everywhere, indefinitely.

*Tashire* forecloses the request a second way. The stakeholder there deposited its fund, and the Court still held 'the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund," because "the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund,' the deposited proceeds of the insurance policy." *Id.* at 533–34. If a deposited fund could not support an injunction reaching beyond it, an undeposited and unquantified collection of a debtor's assets cannot support one either. The Fifth Circuit marks the same boundary. In *Auto Parts* the § 2361 injunction followed deposit and discharge. And in *Airborne Freight*, where the central prerequisite of interpleader was absent, "interpleader cannot lie, and the injunction issued pursuant to the grant of interpleader cannot stand." 195 F.3d at 242.

The remaining exceptions require little discussion. A federal court "does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast Line*, 398 U.S. at 294. That answers the Complaint's central premise. It also is not "enough that the requested injunction is related to that jurisdiction"; the state court must be "so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295. Here the Court has custody of nothing, because Plaintiffs have deposited nothing, and where courts exercise concurrent in personam jurisdiction "neither

court [is] free to prevent either party from simultaneously pursuing claims in both courts." *Id.* at 295–96 (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922)). The relitigation exception has no application because this Court has entered no judgment. And the cases the Complaint invokes do not help Plaintiffs. *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334–35 (5th Cir. 1981), and *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985), involved federal courts protecting complex consolidated proceedings and settlements already within their jurisdiction. Neither licenses an injunction issued at the outset of a case, before any *res* has been deposited, to shield a judgment debtor from a writ that has already issued.

**D. The Court Should Decline to Entertain the Declaratory-Judgment Count.**

District courts in this circuit look to *Trejo* in deciding whether to entertain a declaratory action, including the pendency of state proceedings in which the controversy may be fully litigated, whether the plaintiff filed in anticipation of suit or to secure a more favorable forum, and possible inequities in permitting the declaratory plaintiff to choose the time and forum. *See Trejo*, 39 F.3d at 590–91; see *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388–92 (5th Cir. 2003). Critically, *Trejo* looks to "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." Trejo, 39 F.3d at 590-91. Every factor points to dismissal.

The declaration Plaintiffs seek, whether Bliss Creek "may lawfully execute upon assets that are subject to the federal Asset Freeze Order" and in what order the claimants may collect, Compl. ¶ 51, is the mirror image of questions already committed to other courts: the Texas Business Court controls its own writ and the pending bond motion in which Adam seeks the identical practical relief, a suspension of enforcement; the Fifteenth Court of Appeals has Adam's challenge to the domesticated judgment; the Wyoming court has GCZ's Rule 60(b) motion; and the Northern District of Georgia controls the scope, modification, and eventual liquidation of its

own freeze and consent judgments. The timing speaks for itself: Plaintiffs filed this action fifteen days before Adam asked the Business Court to set security at $10,000, and Adam then cited the pendency of this action to that court as a reason to defer any determination that assumes Bliss Creek may collect. Those are the inequities *Trejo* and *Sherwin-Williams* direct courts to weigh.

The Fifth Circuit has condemned the same maneuver in the interpleader setting. *Wausau*, 954 F.2d at 1101. (Interpleader "is not designed to solve all problems associated with multiparty litigation," and "[i]t does not provide a method of forum shopping for parties disappointed with the outcome of their consolidation motions in state court.") Plaintiffs seek here the suspension of enforcement the Business Court has not given them: the Business Court denied Adam's motion to vacate, his appeal did not suspend enforcement, Bliss Creek's writ issued, and Adam filed this action fifteen days before asking that court to set his security at $10,000.

The Seventh Circuit reached the same conclusion on facts closer to these. See *Indianapolis Colts*, 733 F.2d 484, 486–87 (7th Cir. 1984) (staying the injunction; "[i]t was not a purpose of the statute that interpleader be used for forum shopping, which is the use to which it seems to have been put here; and when an interpleader action is brought in bad faith it must be dismissed."); *see Wausau*, 954 F.2d at 1101 (citing same). The court identified the consequence of permitting the device to be used this way: "A company is sued for violating the antitrust laws, and treble damages are sought. If the company loses the suit, its assets may not be sufficient to enable it to pay off a bond indenture. It would rather litigate the antitrust suit in its own home court, and it therefore interpleads its bondholders and the antitrust plaintiff. This would not be a proper invocation of the interpleader jurisdiction and no more is the present case." *Id.* at 488.

The Complaint is also the second of two parallel requests. In the Business Court, Adam asks that enforcement be suspended without meaningful security, on the ground that the Asset

Freeze Order makes security impossible. Ex. 1 at 5–6. In this Court, Plaintiffs ask that enforcement be suspended without any deposit, on the ground that the Asset Freeze Order makes a deposit impossible. Compl. ¶¶ 16, 38; Prayer ¶ 3. The order relied upon is the same, the asserted impossibility is the same, and the practical relief sought is the same. Adam has further told the Business Court that it should not fix security on any assumption about priority "while the interpleader is asking a federal court to resolve exactly that question," and should instead await “redetermination once priority is resolved.” Ex. 3 at 5. Each court is thus asked to defer to the other, and neither is asked to require Plaintiffs to surrender anything in the meantime.

Federalism concerns are at their height where, as here, the declaration would operate on state execution process. And GCZ’s position is weaker still: Bliss Creek has initiated no execution against GCZ in Texas, so GCZ’s claimed exposure rests entirely on events that have not occurred. Whatever discretion § 2201 confers, it is not discretion to referee a race the state and federal enforcement courts are already running.

## V. CONCLUSION AND PRAYER

The Complaint asks a federal court to give a judgment debtor what Texas law gives only to a debtor who posts security: suspension of enforcement pending appeal. It does so through a device built for innocent stakeholders, on behalf of enforcement defendants; without a res, without a deposit, and without the SEC; and in the teeth of the Anti-Injunction Act. Bliss Creek respectfully requests that the Court: (1) dismiss the Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction; (2) alternatively, dismiss the interpleader count under Rule 12(b)(6) with prejudice and dismiss the declaratory-judgment count in the exercise of the Court’s *Wilton*/*Brillhart* discretion; (3) deny the requested stay of enforcement and collection; (4) tax costs against Plaintiffs; and (5) grant Bliss Creek all other relief to which it is entitled.

Respectfully submitted,

/s/ Bradley W. Beskin
Bradley W. Beskin
Texas Bar No. 24105463
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: 405.516.7800
Facsimile: 405.516.7859
bbeskin@whittenburragelaw.com

**COUNSEL FOR DEFENDANT**
**BLISS CREEK FUND 1, LLC**

**CERTIFICATE OF SERVICE**

I certify that on August 13, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Bradley W. Beskin
Bradley W. Beskin