***Adam v. SEC*, 4:26-cv-05240 (S.D. Tex.)**

**DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS THE COMPLAINT IN INTERPLEADER UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# EXHIBIT 1

***Bliss Creek v. Adam*, 23-BC11A-0019 (Business Court of Texas, 11th Division)**

**DEFENDANT JONATHAN ADAM'S MOTION<br>TO SET SECURITY AT $10,000<br>UNDER RULE 24.2(b)<br>IN LIGHT OF EXISTING FEDERAL ASSET FREEZE ORDER**

E-filed in the Office of the Clerk
for the Business Court of Texas
7/16/2026 9:40 AM
Accepted by: Alexis Jennings
Case Number: 26-BC11A-0019

**THE BUSINESS COURT OF TEXAS,**
**11th DIVISION**

| | | |
|---|---|---|
| **BLISS CREEK FUND 1, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 26-BC11A-0019** |
| | § | |
| **JONATHAN ADAM,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT JONATHAN ADAM'S MOTION TO SET SECURITY AT $10,000 UNDER RULE 24.2(b) IN LIGHT OF EXISTING FEDERAL ASSET FREEZE ORDER**

Defendant Jonathan Adam ("Adam") files this Motion to Set Security at $10,000 Under Tex. R. App. P. 24.2(b) in Light of Existing Federal Asset Freeze ("Motion") and would show:

## INTRODUCTION

The Texas Supreme Court has recognized that the rules governing supersedeas matters are "**protective of debtors**, consistent with deep, populist Texas traditions" and "respect[] the importance of the right to a meaningful appeal." *In re Longview Energy Co.*, 464 S.W.3d 353, 359 (Tex. 2015) (emphasis added). This case presents the rare circumstance in which a judgment debtor's ability to post security is not merely constrained—it is legally prohibited by a federal court order that already accomplishes everything a supersedeas bond is designed to do. Adam is appealing the denial of his Motion to Vacate a domesticated foreign judgment (a $141,063,243.99 default judgment entered against him in Wyoming without any adjudication on the merits).

The vast majority of his nonexempt assets have been frozen since August 2024 by a federal court order entered in an SEC enforcement action, eight months *before* the Wyoming Judgment was entered. Those frozen assets cannot be pledged, transferred, or applied to a bond, and any attempt to access them would violate a federal court order enforceable by contempt. **But the same**

**freeze that prevents Adam from posting a bond also eliminates the need for one: it prohibits the dissipation of assets more completely than any surety bond could.**

Meanwhile, Bliss Creek has filed an Application for Writ of Execution seeking to seize the very assets immobilized by the federal freeze, which underscores both the urgency of this Motion and the paradox at its core: Bliss Creek seeks to execute on property that no one, including Adam, is permitted to touch. Because the judgment creditor is already protected by a judicially imposed restraint that is functionally superior to a bond, the Court should exercise its mandatory authority under Texas Rule of Appellate Procedure 24.2(b) to set required security at the nominal amount of $10,000.

## BACKGROUND

### A. Bliss Creek secures a default judgment.

On April 4, 2025, Bliss Creek obtained a default judgment in the amount of $141,063,243.99 plus interest against GCZ Global, LLC ("GCZ") and Adam (the "Wyoming Judgment," attached as Exhibit A). According to the Wyoming Judgment, the $141,063,243.99 award against Defendants represents principal and delinquent earnings of $47,021,081.33 and punitive damages of $94,042,162.66. Wyoming Judgment ¶ 2.

On February 6, 2026, Bliss Creek sought to domesticate the Wyoming Judgment against Adam in Texas by filing a Notice of Filing of Foreign Judgment pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a) in the 149th District Court of Brazoria County, Texas. On March 6, 2026, Adam filed a Motion to Vacate the Domesticated Foreign Judgment ("Motion to Vacate") due to the Wyoming court's lack of personal jurisdiction over him. Adam then filed a Notice of Removal from the 149th District Court of Brazoria County, Texas to this Court on March 9, 2026. This Court entered an Order Denying Plaintiff's Motion to Vacate Domesticated Foreign Judgment on April 21, 2026. *See* Exhibit B. Adam timely provided notice of appeal on May 7, 2026. *See*

Exhibit C.

**B. A federal asset freeze has immobilized virtually all of Adam's property since August 2024.**

Eight months before Bliss Creek obtained the Wyoming Judgment by default, a federal district court entered a Consent Order Freezing Assets belonging to Adam and GCZ (the "Asset Freeze Order"). *See* Exhibit D. The assets subject to the Asset Freeze Order "include but [are not] limited to those funds located in any bank, brokerage, firm, financial institution, third-party payment processor, cryptocurrency exchange, or any other holder or custodian of any digital assets, digital currencies, virtual currencies, or cryptocurrencies accounts of the [same Defendants later named in both the Wyoming Judgment and this action] . . . . proceeds derived from the securities offering alleged in the [Securities and Exchange] Commission's complaint remaining in the custody or control of any of the [Defendants] . . . regardless of where such proceeds are located. . . . [and] real property owned by any of the [Defendants] or purchased with proceeds derived from the securities offerings alleged in the Commission's complaint (assets . . . collectively referred to as the 'Frozen Assets')." *Id.* at 1-2. The Asset Freeze Order specifically identifies numerous accounts and real property assets. *See id.* at p. 3-11. The Asset Freeze Order remains in effect until entry of a further order of the Georgia court. *Id.* at p. 1.

Critically, the Asset Freeze Order froze the above-listed assets for the express purpose of protecting the alleged victims of GCZ's securities offering—a class that explicitly includes Bliss Creek. The Asset Freeze Order thus does not merely incidentally benefit Bliss Creek; it was designed to safeguard precisely the interests Bliss Creek now seeks to protect through execution. Because GCZ and Adam face overlapping liability to both the SEC and Bliss Creek arising from the same alleged conduct and the same alleged harm, they have filed a Complaint in Interpleader in the United States District Court for the Southern District of Texas to resolve these competing

claims. *See* Exhibit E.

Adam is also subject to an order requiring him to pay disgorgement of any ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to 15 U.S.C. Sections 77t(d) and 78u(d)(3) (the "Adam Consent Judgment"). *See* Exhibit F. The Adam Consent Judgment deferred determination of these amounts pending a related motion by the SEC. *Id.* at p. 5. The SEC later filed a Motion for Remedies and Default Judgment seeking to set a civil penalty of $3,000,000 for Adam individually and requesting that Adam, GCZ, and other defendants named in that proceeding be found jointly and severally liable for disgorgement of $30,512,775 and prejudgment interest of $6,221,302 (the "SEC Remedies Motion"). *See* Exhibit G at p. 3. The SEC Remedies Motion also requests an order requiring Adam to relinquish his homestead at 518 Bryan Street, Angleton, Texas 77515. *Id.* at p. 4. The SEC has also placed a lien on that property. *See* Exhibit H at ¶ 2. Other properties identified in the Asset Freeze Order are the homesteaded properties of various relatives of Adam. The Georgia court has not entered an order determining the amount of any disgorgement, prejudgment interest, and civil penalty owed by GCZ, Adam, and other defendants.

## LEGAL STANDARD

Absent an agreement with a judgment creditor, a judgment debtor seeking to supersede a judgment pending appeal generally must file a bond or make a deposit in the amount required by Rule 24.2 or provide certain alternative security. TEX. R. APP. P. 24.1(a), (b)(1)(A), (c)(2); TEX. CIV. PRAC. & REM. CODE § 52.006(a). The amount of the bond, deposit, or security required to supersede a money judgment under Rule 24.2 is the lowest of three figures: (1) the sum of **compensatory damages** and costs awarded in the judgment plus interest for the estimated length of the appeal; (2) half of the judgment debtor's current net worth; or (3) $25 million. TEX. R. APP. P. 24.2(a)(1); TEX. CIV. PRAC. & REM. CODE § 52.006(b) (emphasis added).

But "[t]he trial court ***must*** lower the amount of security required by [Rule 24.2(a)] to an amount that will not cause the judgment debtor substantial economic harm" if, after notice and a hearing, the court finds that posting security in the amount required by subsection (a) is likely to cause the judgment debtor substantial economic harm. Tex. R. App. P. 24.2(b) (emphasis added); *see also* Tex. Civ. Prac. & Rem. Code § 52.006(c) (similar). A judgment debtor need not establish irreparable harm to make the requisite showing. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 916 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

**A. The ordinary supersedeas framework cannot accommodate a federally frozen estate.**

The Wyoming Judgment awards $47,021,081.33 in **compensatory damages** to Bliss Creek. *See* Exhibit A at ¶ 2. Absent a reduction, the required bond, deposit, or security to supersede enforcement of the Wyoming Judgment in Texas would be $25,000,000—the statutory cap. TEX. R. APP. P. 24.2(a)(1)(B). The Asset Freeze Order forecloses every alternative mechanism for reducing that figure.

Ordinarily, a judgment debtor may supersede a judgment by posting a bond equal to half of his current net worth or, if his net worth is less than $10,000,000, security in an amount determined by the trial court. TEX. R. APP. P. 24.2(a)(1)(A), 24.2(e). Neither pathway is available to Adam. He must therefore seek relief under Rule 24.2(b) based on substantial economic harm.

The Asset Freeze Order prevents Adam from using any frozen assets to post a bond. *See* Exhibit D at p. 1-2. Its reach extends to broad categories of property constituting virtually everything Adam owns—bank accounts, brokerage accounts, cryptocurrency holdings, and real estate. *See id.* at p. 3-11. Unlike judgment debtors whose estates are substantially unencumbered, Adam cannot reduce the bond amount by reference to net worth because the very assets that comprise his net worth are immobilized by federal order, again, for the protection of alleged wronged investors that specifically includes Bliss Creek.

Nor can Adam obtain relief under Rule 24.2(e), which permits alternative security when compliance would require liquidation of substantial interests in real or personal property. Tex. R. App. P. 24.2(e)(2). The premise of that provision—that the judgment debtor *could* liquidate but doing so would be harmful—does not apply here. Adam cannot liquidate frozen assets at all. *See* Exhibit D at p. 1-2.

As further evidence of Adam's predicament, on July 8, 2026, counsel contacted two separate surety bond agencies to attempt to secure a supersedeas bond on Adam's behalf. Both attempts were rejected. *See* Exhibit I, Kara Declaration. Court Surety Bond Agency, through its Vice President Arturo Ayala, confirmed that "the majority of supersedeas bonds require 100% collateral to be posted with a surety company" and that exceptions are available only for "publicly traded companies, insurers, banks or very large private entities with substantial liquidity relative to the bond amount," none of which describes Adam's circumstances. *Id*. at Ex. I-1. No rational surety would underwrite a supersedeas bond for a principal whose entire nonexempt estate is frozen by federal order, who faces competing claims exceeding $180 million, and who cannot pledge collateral without violating that order. These rejections confirm what the court record already demonstrates. A surety's willingness to issue a bond at less than 100% collateral depends on the principal's creditworthiness and available security. The demand for full cash collateral reflects both bond companies' independent determination that Adam presents no creditworthy basis to underwrite the risk—a conclusion compelled by the same Asset Freeze Order that independently forecloses compliance with such a requirement. Even if Adam were willing to post 100% collateral, he is legally prohibited from doing so. Surety Bonds Direct, LLC, through Senior Bond Specialist Taylor Branum, was even more categorical: "We are unable to issue appeal bonds without 100% cash collateral." *See* Ex. I-2.

In short, the Asset Freeze Order presents a circumstance the ordinary supersedeas framework was not designed to address: a judgment debtor whose entire near non-exempt estate is immobilized by an independent federal court. Without relief under Rule 24.2(b), Adam will be unable to supersede enforcement of the Wyoming Judgment in Texas.

### B. The *Ramco Oil* factors are satisfied by the court record alone.

Texas law recognizes that the right to appeal is meaningless if financial inability makes it impossible to preserve the status quo pending appellate review. The current rules and statutory provisions related to supersedeas are "protective of debtors, consistent with deep, populist Texas traditions" and "respect[] the importance of the right to a meaningful appeal." *In re Longview Energy Co.*, 464 S.W.3d at 359.

To safeguard that right, the legislature and Texas Supreme Court established procedures requiring courts to reduce or modify security when the circumstances demand it. *Ramco Oil*, 171 S.W.3d at 917; Tex. Civ. Prac. & Rem. Code § 52.006; Tex. R. App. P. 24.2(b). "The thrust of the inquiry under section 52.006(c) is whether the judgment debtor has the ability to meet the supersedeas requirement . . . and whether doing so is likely to result in **substantial economic harm**." *Ramco Oil*, 171 S.W.3d at 917 (emphasis added). Courts may consider multiple factors in determining whether the judgment debtor can show a likelihood of substantial economic harm, including but not limited to (1) the cost of obtaining a bond; (2) cash or other assets on hand; (3) whether the judgment debtor has unencumbered assets to sell or pledge; (4) the judgment debtor's ability to borrow funds; (5) whether the judgment debtor has any other source of funds available; (6) the economic impact on the judgment debtor if a bond is required; and (7) whether a bond will trigger bankruptcy or other harmful consequences for the judgment debtor. *Id.*

#### 1. <u>The freeze is dispositive as to every factor</u>.

The Asset Freeze Order is dispositive as to each of these factors. A federal court order—

entered **before** the Wyoming Judgment existed—prohibits Adam from accessing, transferring, pledging, or otherwise using virtually all of his assets. *See* Exhibit D at p. 1-2. This is not a case of improvidence or strategic encumbrance. The restriction is externally imposed by a sovereign court exercising regulatory authority over Adam's property, and its scope is extraordinary: it reaches "any bank, brokerage, firm, financial institution, third-party payment processor, cryptocurrency exchange, or any other holder or custodian of any digital assets" as well as all "real property owned by any of the [Defendants] or purchased with proceeds derived from the securities offerings alleged in the Commission's complaint." *Id.* The breadth of the freeze leaves Adam with limited (and exempt) cash on hand, without unencumbered assets to sell or pledge, and without the ability to borrow against frozen collateral. *See id.* at p. 4-11 (identifying specific frozen accounts and properties across eight pages).

**2. <u>No lender would extend credit, and bankruptcy is the only alternative</u>.**

No rational lender would extend credit to a borrower whose collateral is frozen by federal court order, whose assets are subject to competing claims exceeding $180 million, and who faces undetermined additional monetary liability for disgorgement, prejudgment interest, and civil penalties. *See* Exhibit F at p. 5-6; SEC Remedies Mot. at p. 3-4. The Asset Freeze Order compounds the problem: it prohibits Adam from pledging any frozen assets as security for a loan, and any loan proceeds received could themselves constitute "proceeds derived from the securities offering" subject to the freeze. *See* Exhibit D at p. 1-2. The only realistic alternative to this Motion would be bankruptcy—precisely the harmful consequence that the seventh *Ramco Oil* factor is designed to prevent.

**3. "<u>Post Freeze Account" funds are income and exempt</u>.**

Bliss Creek may point to the Asset Freeze Order's "Post Freeze Account" provision, which

permits Adam to open new accounts for funds "obtained or received from a source unrelated to the securities offering" and "unrelated to the Frozen Assets." *See* Exhibit D at p. 2. But this narrow carve-out does not meaningfully alter the analysis. The Post Freeze Account provision permits Adam to receive and transact *new* income from sources unrelated to the frozen assets such as ordinary wages. It does not unlock any frozen assets, does not permit Adam to pledge or encumber any existing property, and does not provide access to the kind of capital necessary to post a supersedeas bond of any material size. For the first sixty days after entry of the Asset Freeze Order, any deposits into a Post Freeze Account exceeding $10,000 must be reported to the SEC within two business days; thereafter, for as long as the Order remains in effect, Adam must continue providing the SEC with sworn monthly statements. *Id.* at p. 2-3. Adam's current personal earnings are exempt from execution under Texas Property Code Section 42.001(b)(1) and therefore could not serve the protective purpose of a bond in any event.

**4. The only question is asset availability, and the court record answers it.**

Neither further discovery nor an evidentiary hearing is necessary to resolve this Motion, because the only question before the Court is a narrow one: does Adam have assets available to post a bond? The answer is established by the court record. The Asset Freeze Order identifies Adam's assets by name and account number across twenty pages—specifying each financial institution (Wells Fargo, JP Morgan Chase, Frontier Bank of Texas), each cryptocurrency exchange and wallet address (Coinbase, Kraken), and each parcel of real property (four properties in Angleton, Texas). *See* Exhibit D at p. 3-11. Those identified assets are frozen. The Order further required all banks, brokerages, and custodians to file certified statements of account balances with the federal court within five business days. *Id.* at p. 13-14. And the Order required Adam himself to submit a sworn *accounting* identifying all assets exceeding $1,000 in value and all accounts

from January 1, 2023 forward—under penalty of contempt. *Id.* at p. 15-16. That sworn accounting is itself evidence of Adam's financial condition. It is the functional equivalent of the financial-condition affidavit that a judgment debtor would ordinarily submit in support of a motion under Rule 24.2(b), except that it was prepared under even more rigorous conditions: compelled by judicial order, subject to SEC review, and enforceable by contempt rather than merely by the penalties for perjury. This Court may take judicial notice of the Asset Freeze Order and its associated filings pursuant to Texas Rule of Evidence 201(b)(2). A comprehensive, judicially supervised inventory of Adam's assets already exists in the federal court record. No purpose would be served by requiring Adam to reproduce for this Court what a federal court has already compelled him to disclose under oath.[1]

### C. Adam's unfrozen assets are exempt, and exempt assets cannot serve the purpose of a bond.

To the extent Adam possesses any assets not subject to the Asset Freeze Order, those assets are primarily exempt from execution under Texas law and therefore could not serve the protective purpose of a supersedeas bond. Adam's homestead at 518 Bryan Street, Angleton, Texas 77515 (*see* Exhibit H at ¶ 2) is exempt from forced sale under Article XVI, Section 50 of the Texas Constitution and Texas Property Code Sections 41.001–41.003. While the SEC has requested that Adam relinquish his homestead in the pending federal remedies proceeding, that request is immaterial to this Motion. The SEC's potential ability to reach the homestead through federal

[1] To be clear, Adam's reliance on the Asset Freeze Order for purposes of this Motion is not inconsistent with his appellate argument that the Texas Business Court erred in relying on the SEC's unadjudicated *allegations* to establish fraud for veil-piercing purposes. The distinction is fundamental. On appeal, Adam challenges the use of the SEC complaint's contested allegations about *conduct*—whether a Ponzi scheme existed, whether statements were knowingly false—as a substitute for adjudicated facts in a jurisdictional analysis. Here, Adam relies on the Asset Freeze Order as an operative *judicial act*: a court order that identifies specific assets, immobilizes them, and compels sworn disclosure of their existence. The Order's asset inventory is not an allegation about anyone's conduct; it is a judicially supervised catalogue of what exists and where it is held. This Court need not credit a single allegation in the SEC's complaint to conclude that the assets identified in the Order are frozen and unavailable for a bond.

enforcement mechanisms has no bearing on Bliss Creek's rights as a private judgment creditor. **Under the Texas Constitution, Bliss Creek cannot execute on Adam's homestead—full stop.** A supersedeas bond protects *this* judgment creditor's ability to collect on *this* judgment, and the homestead was never available to satisfy that judgment regardless of what security Adam posts.

Adam's current personal earnings are also protected under Texas Property Code Section 42.001(b)(1), which exempts current wages for personal services from garnishment, attachment, execution, or other seizure. *See* Exhibit H at ¶ 10. And Adam's remaining personal property, to the extent not frozen, falls within the personal property exemptions of Texas Property Code Section 42.001(a), which protects up to $100,000 in aggregate value of enumerated personal property for a family. *See* Exhibit H at ¶ 4.

This distinction matters. A supersedeas bond protects the judgment creditor by ensuring that assets remain available to satisfy the judgment if the appeal fails. But exempt assets were never available to satisfy the judgment in the first place. Bliss Creek could not execute upon them regardless of whether a bond is posted. Requiring Adam to pledge exempt property as security would compel him to waive constitutional and statutory protections that Texas law affirmatively preserves, producing no incremental benefit to Bliss Creek while inflicting substantial harm on Adam.

The upshot is that Adam's property falls into two categories, neither of which can serve the purpose of a bond: (1) frozen assets, immobilized by federal court order and beyond anyone's reach; and (2) unfrozen assets, exempt from execution and therefore meaningless as protection for the judgment creditor. There is no category of property available to Adam that could both be applied to a bond and serve the bond's intended function. This is not financial hardship—it is total impossibility. Any required security in excess of $10,000 would cause Adam substantial economic

harm without any corresponding benefit to Bliss Creek. *See* Exhibit H.

Bliss Creek may argue that Adam has not demonstrated efforts to obtain a supersedeas bond from a surety. Adam has now done so—and the result confirms what the Asset Freeze Order made inevitable. Two independent surety bond agencies refused to issue a bond without 100% cash collateral, a requirement Adam cannot satisfy because his only nonexempt assets of meaningful value are frozen by federal court order. *See* Exhibit I. Adam did not merely predict futility—he experienced it. Pledging frozen assets as collateral would violate the Asset Freeze Order, and no surety will issue a bond to a principal who cannot post collateral, whose existing assets are frozen by federal court order, and who faces undetermined additional monetary liabilities exceeding $39 million from the SEC alone. These real-world market rejections independently satisfy the first *Ramco Oil* factor—the cost and availability of obtaining a bond—because no bond is obtainable at any cost. *See Ramco Oil*, 171 S.W.3d at 917 (considering the cost and availability of obtaining a bond as factors in the substantial-economic-harm analysis).

The $10,000 figure Adam requests is not arbitrary. It represents a nominal security amount that Adam can post from current exempt earnings without violating the Asset Freeze Order, depleting assets needed for basic living expenses, or triggering bankruptcy. *See* Exhibit H. It signals good faith while acknowledging the practical reality that no larger amount is necessary given the existing federal protections. This Court retains continuing jurisdiction to modify the required security if circumstances change, including if the Asset Freeze Order is modified, dissolved, or lifted. Tex. R. App. P. 24.3(a).

**D. Denying relief would extinguish Adam's right to appeal.**

The Texas Constitution's open courts provision, Tex. Const. art. I, § 13, and the legislature's express policy choice in enacting Section 52.006(c) both embody the same principle: financial inability should not extinguish substantive appellate rights. Where a federal court order—

imposed for purposes entirely unrelated to this litigation—has rendered compliance with any meaningful bond requirement impossible, the Court must exercise its authority under Rule 24.2(b) to ensure Adam's appellate rights are preserved.

**E. Adam's consent was not a choice, and it predates any obligation to Bliss Creek.**

Bliss Creek might argue that Adam's request to supersede the Wyoming judgment is a delay tactic or gamesmanship designed to postpone collection because Adam consented to the SEC freeze order. Not so. Rule 24.2(b) and Section 52.006(c) do not condition relief on the *cause* of the judgment debtor's inability to post security. The statute asks a single question: whether requiring the bond "is likely to cause the judgment debtor substantial economic harm." Tex. Civ. Prac. & Rem. Code § 52.006(c). The text draws no distinction between judgment debtors whose inability arises from market conditions, overleveraging, or court-ordered restrictions. The inquiry is prospective and practical: *will* requiring security cause harm, not *why* the debtor is unable to pay. To read a fault-based limitation into the statute would be to graft a condition onto the text that the legislature deliberately omitted.

In any event, the chronology forecloses any inference of gamesmanship. The Asset Freeze Order was entered on August 26, 2024, eight months before Bliss Creek obtained the Wyoming Judgment by default on April 4, 2025, and nearly eighteen months before Bliss Creek sought to domesticate that judgment in Texas. *See* Exhibit D at p. 1. Adam could not have consented to the freeze to evade obligations to Bliss Creek because no such obligations existed at the time. The Wyoming Judgment had not been entered. Bliss Creek had not yet filed suit in Wyoming. No claim by Bliss Creek had been reduced to judgment.

The freeze was entered in the context of an SEC enforcement action in which refusal to consent would have resulted in the appointment of a receiver, contested emergency asset seizure, or contempt proceedings—outcomes far more restrictive than the freeze itself. The consent was

not a voluntary financial planning decision; it was a Hobson's choice imposed by a federal regulatory authority exercising sovereign enforcement power wholly unrelated to this litigation. Adam chose the least restrictive option available to him and that choice cannot fairly be characterized as a strategic maneuver against a creditor whose claim would not exist for another eight months.

**F. The Asset Freeze Order already does what a supersedeas bond would do but better.**

A supersedeas bond exists to protect the judgment creditor against one specific risk: that the judgment debtor will dissipate assets during the pendency of an appeal. *See* Tex. R. App. P. 24.2(a)(3); *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979) ("[t]he purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal"). The Asset Freeze Order eliminates that risk more effectively than any bond could. It prohibits Adam from the "withdrawal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value" of frozen assets. *See* Exhibit D at p. 1-2. A traditional supersedeas bond permits the judgment debtor to continue operating and using assets during the appeal—the freeze does not. Bliss Creek is therefore *better* protected by the existing Asset Freeze Order than it would be by a bond. *See Securities & Exchange Commission v. Chappell*, 107 F.4th 114, 129 (3d Cir. 2024) ("An asset freeze is a type of preliminary injunction . .  designed to preserve the status quo by preventing the dissipation and diversion of assets.").

Bliss Creek would suffer no prejudice from the reduction of security to $10,000. The Wyoming Judgment postdates the Asset Freeze Order by eight months. Bliss Creek never had access to Adam's frozen assets. It could not have executed upon them even if this appeal did not exist. The freeze merely preserves the status quo that predated the judgment. Bliss Creek's own

Application for Writ of Execution, filed June 5, 2026, inadvertently proves the point: it seeks to seize the same assets already immobilized by federal court order and thus beyond the reach of any state-court process. *See* Exhibit J. Requiring Adam to post a bond to protect assets that Bliss Creek cannot reach in any event would serve no legitimate purpose under Rule 24.2.

### G. Federal courts recognize similar principles.

In *United States v. Loftis*, a Northern District of Texas court granted a motion to stay without requiring a supersedeas bond because the defendant's assets had already been identified and frozen by writs of garnishment, reasoning that the collection process would be the same regardless and that the writs effectively held the assets as a substitute form of security that assured the government it would not be "unduly endangered" by staying execution without bond. *United States v. Loftis*, No. 3-06-CV-1633-P, 2009 WL 10678613 (N.D. Tex. Aug. 3, 2009).

The Fifth Circuit has recognized that where posting a full bond would "impose an undue financial burden," the court is "free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor." *See Poplar Grove Planting & Refining Co.*, 600 F.2d at 1191.

Here, the Asset Freeze Order is that restraint—imposed not by this Court but by a coordinate federal sovereign—and it furnishes protection superior to what any surety bond could provide.

### H. Requiring a traditional bond in addition to the existing Asset Freeze Order would impose a redundant layer of security that Texas law does not contemplate.

Rule 24.2 balances appeal rights against judgment creditor protection but it does not demand duplicative protections when a federal court has already immobilized the judgment debtor's entire estate. As the Seventh Circuit observed in *Olympia Equipment Leasing Co. v.*

*Western Union Telegraph Co.*, 786 F.2d 794, 796 (7th Cir. 1986), posting a supersedeas bond is not an inflexible requirement, and "where the requirement would put the defendant's other creditors in undue jeopardy," the case "is a candidate for alternative security." Here, requiring Adam to post a bond on top of the freeze would not preserve the status quo—it would improve Bliss Creek's position relative to other creditors, including the SEC, at a time when Adam's assets are already vastly insufficient to satisfy either competing claim, let alone both. *See id.* at 800-801 (concurrence) ("[t]he supersedeas bond is not supposed to elevate the judgment creditor over other creditors at the expense of these costs"). The Asset Freeze Order is court-ordered security supervised by a federal district court, enforceable by contempt, and indefinite in duration. *See* Exhibit D at p. 1 ("until further order of the Court"). It is, in substance, a judicially imposed restraint that is functionally superior to a surety bond obtained in the private market.

**I. This appeal is not frivolous because it raises substantial questions of first impression.**

The Court need not reach the merits of Adam's appeal to resolve this Motion. But the nature of the appellate issues underscores why Texas policy disfavors extinguishing appellate rights through unattainable bond requirements. Adam is not seeking to delay enforcement of a judgment entered after full litigation on the merits. He is appealing the denial of his Motion to Vacate a domesticated foreign judgment—a default judgment entered without any adjudication on the merits, without Adam's participation, and under circumstances raising serious questions about the Wyoming court's jurisdiction and the manner in which the judgment was procured. *See* Motion for Relief from Wyoming Judgment, attached as Exhibit K.

Adam's appeal raises at least three substantial issues. First, Adam contends that the Wyoming court lacked personal jurisdiction over him individually. He is a Texas resident with no individual minimum contacts with Wyoming. The sole basis asserted for personal jurisdiction was

an alter ego theory requiring the court to pierce the corporate veil of GCZ, a Wyoming LLC—a remedy that Wyoming law reserves for "exceptional circumstances" and that "[n]o single category, except fraud, alone justifies." *GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 462, 464 (Wyo. 2014); *see also* Wyo. Stat. § 17-29-304(c). The record before the Wyoming court did not establish the jurisdictional fraud necessary to pierce GCZ's veil and impute its contacts to Adam.

Second, Adam presented clear, convincing, and uncontroverted evidence of extrinsic fraud in the procurement of the Wyoming Judgment. A principal and member of Bliss Creek, Dale Toney, a longtime friend of Adam, sent text messages assuring him that the Wyoming proceedings were "unauthorized," that "nobody authorized this," and that Bliss Creek was working to "unring the bell." These assurances induced Adam not to retain Wyoming counsel or defend against the complaint that ultimately produced the $141 million default judgment. That is not passive non-participation; it is non-participation caused by the very fraud at issue.

Third, the Texas Business Court's denial of the Motion to Vacate relied in significant part on unadjudicated allegations from the SEC's complaint, allegations that Adam did not admit and that have not been adjudicated in any proceeding, to supply the fraud, including intent, necessary for veil-piercing. Whether unadjudicated allegations from a parallel regulatory proceeding may substitute for adjudicated facts in a full faith and credit analysis presents a substantial, and novel, legal question warranting appellate review.

These are not frivolous contentions. They present questions of first impression for the Fifteenth Court of Appeals—questions that go to whether a $141 million default judgment may stand against an individual who never participated in the proceedings, who may lack minimum contacts with the rendering forum, and whose non-participation was allegedly induced by the

judgment creditor itself. If Adam cannot supersede enforcement of the Wyoming Judgment, Bliss Creek will execute on assets simultaneously frozen by federal court order.

## PRAYER

For the foregoing reasons, Adam has demonstrated that posting security in excess of $10,000 is likely to cause him substantial economic harm and that no such security is necessary to protect Bliss Creek, whose interests are already safeguarded by the Asset Freeze Order—a judicially imposed restraint that is functionally superior to a supersedeas bond. He respectfully requests that the Court:

1. Set the amount of required security at $10,000 pursuant to Texas Rule of Appellate Procedure 24.2(b) and Texas Civil Practice and Remedies Code Section 52.006(c), the Court having found that any security in excess of that amount is likely to cause Adam substantial economic harm;

2. In the alternative, if the Court determines that some security in excess of $10,000 is required, exercise its authority under Rule 24.1(e) to condition any such requirement on the continued existence of the Asset Freeze Order, which provides adequate protection to the judgment creditor, such that: (a) the required security is set at $10,000 so long as the Asset Freeze Order remains in full force and effect; (b) Adam shall notify the Court and Bliss Creek within five (5) business days of any modification, dissolution, or expiration of the Asset Freeze Order; and (c) upon any such modification or dissolution, the Court may redetermine the amount of required bond, deposit, or security pursuant to Rules 24.1(e) and 24.3(a);

3. Enter an order pursuant to Rule 24.2(d) enjoining Adam from dissipating or transferring any assets not subject to the Asset Freeze Order during the pendency of the appeal, to the extent the Court deems additional protection necessary; and

4. Grant all other relief at law or in equity to which Adam may be entitled.

Respectfully submitted,

*/s/ Victor Vital*

Victor Vital
State Bar No. 00794798
victor.vital@haynesboone.com
Elizabeth Wirmani
State Bar No. 24052268
elizabeth.wirmani@haynesboone.com
Haynes and Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

Natasha Breaux
State Bar No. 24073688
Natasha.breaux@haynesboone.com
Haynes and Boone, LLP
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2154
Telecopier: (713) 236-5680

**ATTORNEYS FOR DEFENDANT JONATHAN ADAM**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record and the court reporter responsible for preparing the reporter's record in accordance with the Texas Rules of Civil Procedure on July 16, 2026.

*/s/ Elizabeth Wirmani*

Elizabeth Wirmani

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jessica Sanchez on behalf of Victor Vital
Bar No. 794798
jessica.sanchez@haynesboone.com
Envelope ID: 117416756
Filing Code Description: Motions - All Other
Filing Description: Final Bond Motion
Status as of 7/16/2026 10:07 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Natasha Breaux | | natasha.breaux@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |
| Victor Vital | | victor.vital@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |
| Elizabeth Wirmani | | elizabeth.wirmani@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |
| Adam Zentner | | adam@zentnerlaw.com | 7/16/2026 9:40:23 AM | SENT |
| Bradley Beskin | | bbeskin@whittenburragelaw.com | 7/16/2026 9:40:23 AM | SENT |
| Business Court Division 3B | | BCDivision3B@txcourts.gov | 7/16/2026 9:40:23 AM | SENT |

Associated Case Party: Jonathan  Adam

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rachel HBartenfeld | | rachel.bartenfeld@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |
| Mishan Kara | | mishan.kara@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |
| Jessica Sanchez | | jessica.sanchez@haynesboone.com | 7/16/2026 9:40:23 AM | SENT |

Associated Case Party: GCZ GLOBAL LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Leslie Katz | | Leslie.Katz@practus.com | 7/16/2026 9:40:23 AM | SENT |
| Leslie Katz | | Katz@practus.com | 7/16/2026 9:40:23 AM | ERROR |