***Adam v. SEC*, 4:26-cv-05240 (S.D. Tex.)**

**DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS THE COMPLAINT IN INTERPLEADER UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# EXHIBIT 2

***Bliss Creek v. Adam*, 23-BC11A-0019 (Business Court of Texas, 11th Division)**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SET SECURITY AT $10,000 UNDER RULE 24.2(b)**

**CAUSE NO. 26-BC11A-0019**

| | |
|---|---|
| **BLISS CREEK FUND 1, LLC**,<br><br>*Plaintiff and Judgment Creditor*,<br><br>v.<br><br>**GCZ GLOBAL, LLC**, *and*<br>**JONATHAN ADAM**,<br><br>*Defendants and Judgment Debtors*. | **TEXAS BUSINESS COURT**<br>**ELEVENTH DIVISION A**<br>*Equalized to Third Division*<br>*Hon. Patrick K. Sweeten* |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SET SECURITY AT $10,000 UNDER RULE 24.2(b)**

## CONTENTS

**I. INTRODUCTION** ........ **1**

**II. BACKGROUND** ........ **3**

**III. LEGAL STANDARD** ........ **4**

**IV. ARGUMENT AND AUTHORITIES** ........ **6**

A. Adam Bears the Burden of Proof, and His Evidence Proves Almost Nothing. ........ 6

B. The Freeze Order Does Not Make Security Impossible; Adam Has Simply Declined to Pursue Every Available Path. ........ 9

1. Adam has never asked the Georgia court to modify the freeze — an order he consented to, and which is effective only "until further order of the Court." ........ 9

2. The freeze does not reach Adam's post-freeze income or after-acquired assets; Adam will not say what those are. ........ 9

3. The surety emails reject nothing; one of them affirmatively identifies the path Adam ignored. ........ 10

C. The Freeze Order Does Not Protect Bliss Creek — as Adam Has Admitted in Two Courts in the Same Month. ........ 11

1. The frozen assets secure the SEC's claims, not Bliss Creek's judgment. ........ 11

2. Adam's own filings judicially admit the point. ........ 11

3. The freeze is contingent and revocable — Adam's own alternative prayer concedes it. ........ 12

4. Adam's authorities involve protection that actually ran to the judgment creditor. ........ 12

D. The Exempt-Assets Argument Inverts the Law. ........ 13

E. On This Record the Court Cannot Perform the Calculation the Statute Requires. ........ 13

F. If the Court Nonetheless Reduces the Security, any Reduction Should Carry Conditions with Teeth. ........ 15

**V. REQUEST FOR EVIDENTIARY HEARING** ........ **16**

**VI. PRAYER** ........ **16**

## AUTHORITIES

*City of Keller v. Wilson*
168 S.W.3d 802 (Tex. 2005)........................................5

*Crowder v. Sanger*
2022 WL 2291213 (Tex.App.-Austin June 24, 2022)(not reported) ........................................5

*Dow Chemical Co. v. Francis*
46 S.W.3d 237 (Tex. 2001)........................................5

*In re Longview Energy Co.*
464 S.W.3d 353 (Tex. 2015)........................................5

*LMC Complete Auto., Inc. v. Burke*
229 S.W.3d 469 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)........................................5

*Olympia Equipment v. Western Union*
786 F.2d 794 (7th Cir. 1986) ........................................12

*Poplar Grove v. Bache*
600 F.2d 1189 (5th Cir. 1979) ........................................ 11-12

*Ramco Oil & Gas, Ltd. v. Anglo-Dutch (Tenge) L.L.C.*
171 S.W.3d 905 (Tex. App.—Houston [14th Dist.] 2005, no pet.)
(op. on reh'g) ........................................4, 5

*Tex. Soccer Found. v. Sting Soccer Found.*
2020 WL 3445815, at *2 (Tex. App.—Dallas June 24, 2020, no pet.) ........................................ 6-7

*United States v. Loftis*
2009 WL 10678613 (N.D. Tex. Aug. 3, 2009)........................................11

Tex. R. App. P. 24.2........................................ *passim*

Tex. Civ. Prac. & Rem. Code § 52.006 ........................................ *passim*

Plaintiff Bliss Creek Fund 1, LLC ("Bliss Creek") files this Response in Opposition to Defendant Jonathan Adam's Motion to Set Security at $10,000 Under Rule 24.2(b) (the "Motion").

Bliss Creek respectfully requests that the Court: (1) deny the Motion; (2) alternatively, defer ruling and order that Adam (a) appear for oral deposition, and (b) produce the sworn accounting, custodian certified statements, monthly Post Freeze Account statements, and unredacted bank statements identified below, before any evidentiary hearing; (3) if any reduction is granted, impose the conditions set out in Section IV.F; (4) confirm that enforcement of the judgment, including the issued writ of execution, may proceed unless and until security is posted; and (5) grant Bliss Creek all other relief to which it is entitled.

## I. INTRODUCTION

Adam asks this Court to suspend enforcement of a $141,063,243.99 judgment in exchange for $10,000 — seven one-thousandths of one percent of the judgment, and four one-hundredths of one percent of the $25 million security the Legislature has already capped in his favor.[1] He asks the Court to make that extraordinary reduction on a record that contains exactly two verified facts about his finances: a checking account holding $6,750.55, and "less than $100,000" in personal property. Mot. Ex. H ¶¶ 3–4. He does not address net worth, income, or employment. He does not address the valuation of a single frozen account, wallet, or property. And the one bank statement he attaches has every deposit and every withdrawal redacted. Mot. Ex. H-1.

The Motion rests on a federal asset freeze that Adam **consented to**, that remains in effect only "until further order of the Court," and that Adam has never once asked the issuing court to modify so that he could post security. It relies on two surety emails that reject nothing — one of

[1] The Legislature already decided how far to protect appellants of large judgments, and it landed on $25 million, not $10,000. Adam is asking for a 99.96% discount off a number that is itself a 82% discount off the judgment. The statute requires the highest non-harmful amount.

which affirmatively explains that sureties "could accept collateral from a 3rd party on behalf of the judgment debtor," an avenue Adam's papers do not mention, though the SEC has identified millions of dollars in investor funds traced to Adam's own family members. And it culminates in the assertion that Bliss Creek is "better protected" by the freeze than by a bond — a proposition Adam himself refuted two weeks earlier, when he filed a federal interpleader premised on the sworn allegation that the frozen assets are a "finite pool" that cannot satisfy both the SEC and Bliss Creek, and his own Motion concedes his assets "are already vastly insufficient to satisfy either competing claim, let alone both." Mot. at 16.

One day after filing the Motion, Adam completed the circle. In opposing Bliss Creek's request for his deposition, Adam told this Court that no oral examination is warranted because the Motion, if granted, would "eliminate" Bliss Creek's basis for post-judgment discovery — while the Motion itself insists that no discovery or evidentiary hearing is needed to decide it. Resp. to Discovery Letter (July 17, 2026) at 1–2; Mot. § B.4.

The argument is an impressive exercise in self-serving circularity: Adam would have the Court deny discovery because the Motion will be granted and grant the Motion because no discovery is needed. It is a closed loop designed to ensure that no court and no creditor ever examines Adam's finances under oath. It is a contrived tactic in furtherance of Adam's attempt to delay and avoid all aspects of this matter in multiple forums.

Thus, the Court should deny the Motion. Adam has not carried (nor has he attempted to carry) his evidentiary burden under Texas Civil Practice and Remedies Code § 52.006(c) and Rule 24.2(b). In the alternative, the Court should defer ruling until Adam sits for the oral deposition Bliss Creek has been seeking for months and produces the sworn financial disclosures he has already made to the SEC — documents his own filings identify as the definitive record of his

assets. And if the Court nonetheless reduces the required security, it should do so only on the strict conditions set out in Section IV.F below.

## II. BACKGROUND

On **August 26–27, 2024:** Adam consented to the SEC's Asset Freeze Order and to a Consent Judgment obligating him to pay disgorgement, prejudgment interest, and a civil penalty in amounts to be set on the SEC's motion. Mot. Exs. D, F. The freeze order requires Adam to deliver a sworn accounting of every asset worth more than $1,000, and requires every custodian to file certified balance statements with the federal court. Mot. Ex. D §§ II–IV.

On **April 4, 2025:** the Natrona County, Wyoming district court entered a $141,063,243.99 default judgment ("Wyoming Judgment") for Bliss Creek against Adam and GCZ, including $47,021,081.33 in unpaid principal and accrued earnings. Mot. Ex. A.

On **October 1, 2025:** the SEC moved for remedies: $30,512,775 in disgorgement plus $6,221,302 in prejudgment interest (jointly and severally), a $3,000,000 penalty against Adam individually, and relinquishment of four Angleton properties — including relief-defendant properties held by Adam's wife, son, parents, and in-laws, purchased with investor funds. Mot. Ex. G.

On **February–April 2026:** Bliss Creek domesticated the Wyoming Judgment; Adam removed to this Court; this Court denied his motion to vacate. Mot. Ex. B. Adam appealed (Mot. Ex. C), and secured an un-objected thirty-day extension on his opening brief deadline.

On **June 5, 2026:** Bliss Creek applied to the clerk of this Court for a writ of execution and noticed Adam's deposition.[2] The writ has issued.

[2] Beginning in or about April 2026, Bliss Creek's counsel repeatedly requested, in writing, dates on which Adam would appear for a post-judgment deposition for the purpose of enforcement and collection discovery. Rather than provide dates, Adam's counsel responded with the debtor's intention to appeal and secure a bond. Bliss Creek asked for an update on the bond in June, and was informed Adam was "still considering his options regarding suspension of

On **July 1, 2026:** Adam and GCZ filed a Fed. R. Civ. P. Rule 22 interpleader action in the Southern District of Texas seeking to enjoin Bliss Creek's collection efforts, alleging the SEC and Bliss Creek assert competing claims to a "finite pool" of frozen assets. Mot. Ex. E ¶¶ 1–4.

On **July 8, 2026:** Adam's counsel placed two telephone calls to surety agencies, generating the two emails attached as Exhibit I. No bond application has been submitted to anyone.

**July 16, 2026:** Adam filed this Motion, supported by a three-page affidavit signed the day before.

**July 17, 2026:** Adam responded to Bliss Creek's BCLR 4 discovery letter, opposing an oral deposition in part because this Motion, "if granted," would eliminate Bliss Creek's discovery rights under Rule 621a.

## III. LEGAL STANDARD

Rule 24.2(b) requires the trial court to lower the required security only if, "after notice to all parties and a hearing, the court finds that posting a bond, deposit, or security in the amount required by (a) is likely to cause the judgment debtor substantial economic harm." Tex. R. App. P. 24.2(b); Tex. Civ. Prac. & Rem. Code § 52.006(c).

Adam, as the judgment debtor, bears the burden of proving that likelihood. *See* Tex. Civ. Prac. & Rem. Code Ann. 52.006(c); Tex.R.App. P. 24.2(c)(3); *Ramco Oil & Gas, Ltd. v. Anglo-*

enforcement proceedings." On June 5, 2026, Bliss Creek's counsel sent a letter to Adam's counsel demanding within five days either written confirmation of the bond or written agreement to provide dates for deposition. Bliss Creek further served a Notice of Deposition on Adam's Counsel, setting the date of the deposition for June 26, 2026 in Austin. Adam's Counsel did not respond to the letter in writing and instead requested a teleconference. During the teleconference, Adam's Counsel made clear that Adam would resist live deposition. Adam's Counsel offered to respond to deposition by written questions, but Bliss Creek declined to allow Adam to dictate its enforcement strategy. Adam's Counsel requested relief from the June 26 date noticed on account of attorney unavailability, and Bliss Creek obliged with a request for subsequent dates in July.[2] Bliss Creek further informed Adam's counsel of its intent to file its discovery challenge with the Court following the July 4 holiday weekend in the continued absence of proposed dates. To date, Adam has refused to provide a single date for his deposition. Bliss Creek's efforts to obtain this discovery by agreement have been exhausted, necessitating discovery-related adjudication request per BCLR 4 from Bliss Creek.

*Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 917 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (op. on reh'g).

As Adam has indicated his intent to obfuscate accountability in every available forum, it bears noting that the Court's denial of Adam's motion would be reviewed for abuse of discretion. *Ramco*, 171 S.W.3d at 909. A trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings under section 52.006(b) or (c). Thus, in appealing a denial of his Motion, Adam would need to show that this Court abused its discretion by ruling based on legally insufficient evidence—that the evidence conclusively establishes, as a matter of law, all vital facts in support of his position. *See Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). All evidence is to be construed in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

Adam opens with *In re Longview Energy Co.*, quoting the Texas Supreme Court's observation that the modern supersedeas rules are "protective of debtors, consistent with deep, populist Texas traditions." 464 S.W.3d 353, 359 (Tex. 2015). The Court made that observation while tracing the legislative history of Chapter 52 — describing how the 2003 reforms limited security to compensatory damages, interest, and costs, and capped it at the lesser of fifty percent of net worth or $25 million. *Id.* at 358–59. The "protection" the Court was describing *is* the cap. It is the Legislature's considered judgment about how far a judgment debtor's appellate rights should displace a judgment creditor's right to collect, and Adam already has the full benefit of it: a $141,063,243.99 judgment has already been reduced, by operation of statute, to $25,000,000. *Longview* does not relieve a judgment debtor of proving that he cannot bear that reduced amount. The same opinion recites the governing standard: security is lowered "on a showing by the

judgment debtor" that the required amount is likely to cause substantial economic harm. Tex. Civ. Prac. & Rem. Code § 52.006(c). And *Longview*'s actual holding confirms the point rather than undermining it. The security in that case was set aside not because the debtor proved hardship, but because a $95.5 million disgorgement award was not "compensatory damages" that had to be superseded at all. 464 S.W.3d at 361. That characterization question is not presented here. The Wyoming Judgment is a liquidated money judgment for principal and accrued earnings — compensatory damages in the most conventional sense — and Adam does not contend otherwise. *Longview* therefore tells this Court what must be superseded. It says nothing that excuses Adam from proving what he can pay. He has not done so, so the Court should deny his Motion.

## IV. ARGUMENT AND AUTHORITIES

### A. Adam Bears the Burden of Proof, and His Evidence Proves Almost Nothing.

*Ramco* — Adam's own lead authority — identifies the factors that inform the inquiry: the cost of obtaining a bond; cash or assets on hand; unencumbered assets to sell or pledge; ability to borrow; other available sources of funds; the economic impact of a bond requirement; and whether a bond would trigger bankruptcy or similar harm. *Id.* Conclusory affidavits are insufficient to support a § 52.006(c) reduction. *See, e.g.*, *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 488 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Crowder v. Sanger*, 2022 WL 2291213 (Tex.App.-Austin June 24, 2022)(not reported).

Measured against those factors, Adam's proof is practically absent:

**Cost of a bond:** Adam presents no evidence. He offers no premium quote, no application, and no denial of an application. *See* § III.B.3, *infra*.

**Cash and assets on hand:** Adam's position—that he has $6,750.55 in checking and "less than $100,000" in personal property represents a ceiling, not a number. The value of the frozen estate, which Adam swears "substantially" comprises his net worth (Mot. Ex. H ¶ 8), is nowhere

stated, though it is catalogued account-by-account and wallet-by-wallet in the freeze order and quantified in sworn filings Adam has already made to the SEC.

**Ability to borrow / other sources:** Adam offers one conclusory sentence (Mot. Ex. H ¶ 7), yet provides no evidence of any attempt to borrow and maintains total silence about third-party collateral — the very option his own surety exhibit identifies. Mot. Ex. I-1.

**Income:** Adam swears his "current personal earnings are wages for personal services" (Mot. Ex. H ¶ 10) but never discloses the amount, the employer, or what he has accumulated in the twenty-three months since the freeze — months in which the freeze order's "Post Freeze Account" carve-out has permitted him to receive and freely transact unlimited income from sources unrelated to the securities offering. Mot. Ex. D at 2–3.

**Economic impact:** paragraph 11 of the affidavit ("[r]equiring me to post security in excess of $10,000 would cause me substantial economic harm") is a verbatim recitation of the statutory standard — a legal conclusion, not evidence. Bliss Creek objects to it as such.

The redactions deserve particular attention. Exhibit Mot. H-1 — the only financial document Adam produced — blacks out every deposit and every withdrawal, including the *sources* of the funds flowing into the one account he admits controlling. A judgment debtor who asks a court to find him incapable of posting security, and who redacts his own evidence of cash flow before handing it to the court, has proven only that the unredacted version would not help him. Bliss Creek objects to Motion Exhibit H-1 as incomplete and requests that, at minimum, the Court require an unredacted version before according the exhibit any weight.

The absence of evidence is fatal. *Tex. Soccer Found. v. Sting Soccer Found.*, 2020 WL 3445815, at *2 (Tex. App.—Dallas June 24, 2020, no pet.)

> In its motion to set the bond, [Judgment Debtor] made the conclusory statement that a supersedeas bond in excess of a nominal amount would cause it substantial

> economic harm. It was [Judgment Debtor's] burden to demonstrate the alleged substantial economic harm to the trial court. [Judgment Debtor] did not present any evidence of the factors for a trial court to consider in determining whether a bond would cause [Judgment Debtor] substantial economic harm in its motion to set the bond or at the hearing on the motion. Thus, it failed to meet its burden.

*Id.*

Finally, the Motion refutes itself. Adam is represented in this Court by two partners and an associate of Haynes and Boone, LLP — the same firm that removed this action, briefed the motion to vacate, perfected the appeal, prepared this twenty-page Motion with eleven exhibits, conducted the surety outreach, and filed a federal interpleader on his behalf three weeks ago. The work product reflected in the Motion alone plausibly represents dozens of hours of attorney time; at even a blended $600 per hour — the cost of preparing the Motion likely exceeds the $10,000 in total security Adam tells the Court is all he can post. Yet his affidavit discloses a single unfrozen account, averaging $2,067.41, used "to pay ordinary household expenses." Motion Ex. H ¶ 3. That account is not funding a three-front litigation defense. This alone justifies the discovery at issue, in which Adam has refused to engage.

The possibilities are limited, and each defeats the Motion: either (i) Adam has income or accounts he has not disclosed, rendering the affidavit materially incomplete; (ii) a third party is funding his defense — in which case a "source of funds available" exists under *Ramco*, and the same source could supply the third-party bond collateral Adam's own surety exhibit confirms is accepted, Ex. I-1; or (iii) his counsel are extending him credit — in which case the Motion's assertion that "[n]o rational lender would extend credit" to Adam, Mot. at 8, is refuted at his own counsel table. The affidavit says nothing about how Adam's defense is funded. That omission bears directly on the *Ramco* "other sources of funds" factor, and the funding of his defense is a proper subject of the oral deposition Adam resists.

### B. The Freeze Order Does Not Make Security Impossible; Adam Has Simply Declined to Pursue Every Available Path.

#### 1. Adam has never asked the Georgia court to modify the freeze — an order he consented to, and which is effective only "until further order of the Court."

The Motion's central premise is legal impossibility: the freeze "prohibits" Adam from posting security. But the Consent Order Freezing Assets is not a law of nature. It is a consent order, entered at Adam's agreement, effective "until further order of the Court," under a court that expressly retained jurisdiction to enforce and modify it. Mot. Ex. D at 1, § IX. Federal courts routinely entertain motions to modify asset freezes for specified purposes — and a carve-out to fund appellate security is among the least objectionable imaginable, because the funds are not dissipated; they are transferred into the registry of a court or the collateral account of a surety, where they remain fully preserved. The SEC, whose quantified claims total $39.7 million against an estate Adam implies is worth far more, might well not oppose such a motion. This is not known, because in the fifteen months since the Wyoming judgment and the five months since domestication, Adam has never filed one.

A judgment debtor cannot manufacture impossibility by declining to ask the only court with power to say yes. Adam's claimed dilemma — Texas demands security his federal order forbids — is a dilemma he has chosen to preserve, not one imposed on him. At minimum, no finding of impossibility can rest on this record, where the debtor has not sought, much less been denied, the federal relief that would dissolve the conflict.

But this is exactly what Adam has done at every turn—obfuscate, delay, and deflect.

#### 2. The freeze does not reach Adam's post-freeze income or after-acquired assets; Adam will not say what those are.

The freeze reaches assets held as of August 26, 2024 and proceeds of the alleged offering. Mot. Ex. D § I.A. It expressly permits Adam to open "Post Freeze Accounts" and to "direct,

deposit, or transact funds and assets obtained or received from a source unrelated to the securities offering." *Id.* at 2. Adam has therefore been free for twenty-three months to earn, save, and spend. He has sworn monthly statements to the SEC itemizing every dollar entering those accounts. *Id.* at 3. Yet the Motion discloses none of it: not his employer, not his income, not his accumulated post-freeze assets. The $10,000 figure is presented as the natural limit of his capacity, but the record contains no evidence of what his capacity actually is — only proof that documents quantifying it exist and were withheld.

**3. The surety emails reject nothing; one of them affirmatively identifies the path Adam ignored.**

The Motion asserts that "[t]wo independent surety bond agencies refused to issue a bond" and that "no bond is obtainable at any cost." Mot. at 12. The exhibits say otherwise. Both emails were sent the morning of July 8, 2026, following brief introductory phone calls; it appears no application was ever submitted, no financial information was ever provided to any surety, and no bond was ever denied. The Branum email states a collateral requirement — "[w]e are unable to issue appeal bonds without 100% cash collateral" — which is a term sheet, not a refusal. Mot. Ex. I-2. The Ayala email goes further in the wrong direction for Adam: it explains that "surety companies are able to accept various types of collateral and in combination," that they "could accept collateral from a 3rd party on behalf of the judgment debtor as well," and it invites a follow-up call to discuss options. Mot. Ex. I-1.

The SEC's remedies motion — Adam's own Exhibit G — identifies approximately $2.7 million ($2.48 million plus interest) in investor funds traced to Adam's family members as relief defendants, including $931,000 to his wife Ava Adam, and four Angleton real properties purchased with investor funds and titled in family members' names. Mot. Ex. G at 3–4. Whether Adam's family would post collateral for his appeal is a question the record does not answer,

because Adam never asked — or at least has offered no evidence that he did. What the record does establish is that the "rejections" on which the Motion rests are two emails from a single morning of phone calls, one of which expressly maps the road Adam declined to travel. Bliss Creek further objects that both emails are hearsay offered for their truth through the declaration of counsel, who has no personal knowledge of Adam's finances.

### C. The Freeze Order Does Not Protect Bliss Creek — as Adam Has Admitted in Two Courts in the Same Month.

#### 1. The frozen assets secure the SEC's claims, not Bliss Creek's judgment.

A supersedeas bond exists to assure that the judgment creditor — this creditor — can collect if the appeal fails. The freeze does something categorically different: it preserves a pool of assets in an SEC enforcement action for remedies the SEC will collect. The SEC has moved for $30,512,775 in disgorgement, $6,221,302 in prejudgment interest, a $3,000,000 penalty against Adam individually, and relinquishment of the four Angleton properties. Ex. G. If Adam loses his appeal, those frozen assets do not flow to Bliss Creek; they are consumed by the SEC's prior, quantified, actively-litigated claims. Bliss Creek holds no lien on the frozen assets, is not a party to the Georgia action, and has no right to notice — much less consent — before the freeze is modified or dissolved.

#### 2. Adam's own filings judicially admit the point.

Two weeks before filing this Motion, Adam told the Southern District of Texas the opposite of what he tells this Court. His interpleader complaint alleges that the SEC and Bliss Creek "are pursuing overlapping recoveries against the same finite pool of frozen assets," that "Plaintiffs may be forced to pay twice," and it seeks to *enjoin Bliss Creek's collection efforts* against those very assets. Ex. E ¶¶ 1–4. This Motion says the quiet part aloud: Adam's assets "are already vastly insufficient to satisfy either competing claim, let alone both." Mot. at 16. Both statements cannot

coexist with the Motion's Section F, which assures this Court that "Bliss Creek is therefore *better* protected by the existing Asset Freeze Order than it would be by a bond." Mot. at 14. A pool that is "vastly insufficient to satisfy either claim," standing behind a senior $39.7 million federal claimant, with an owner actively litigating to bar Bliss Creek from reaching it, is not protection. It is a locked room with someone else's name on the door. Adam holds neither of the two keys.

**3. The freeze is contingent and revocable — Adam's own alternative prayer concedes it.**

The Motion's fallback request asks that any $10,000 security be conditioned on the freeze "remain[ing] in full force and effect," with notice to Bliss Creek "within five (5) business days" of any modification or dissolution and a re-determination of security thereafter. Mot. Prayer ¶ 2. That request is an admission that the freeze can disappear — on the SEC's motion, on Adam's motion, on settlement, or on final judgment in Georgia — without Bliss Creek's participation. Five business days is a lifetime for the asset classes at issue: the freeze order lists dozens of cryptocurrency wallets whose contents can move anywhere on earth in minutes. Security that can evaporate on someone else's timetable, with after-the-fact notice, is not security within the meaning of Rule 24.

**4. Adam's authorities involve protection that actually ran to the judgment creditor.**

In *United States v. Loftis*, the assets were held under writs of garnishment obtained by the judgment creditor itself — the United States — so staying execution without a bond left the creditor's own liens in place. 2009 WL 10678613, **1, 4 (N.D. Tex. Aug. 3, 2009).

*Poplar Grove* authorizes alternative arrangements only where they "furnish equal protection to the judgment creditor":

> Contrariwise, if the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute

> security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor. There is no such equality here.

*Poplar Grove v. Bache*, 600 F.2d 1189, 1191 (5th Cir. 1979). *Olympia Equipment* likewise concerned substitute security available to the creditor. *Olympia Equipment v. Western Union*, 786 F.2d 794 (7th Cir. 1986). None involved a debtor pointing to a *different* creditor's restraint — much less one the debtor was simultaneously wielding as a litigation weapon against the judgment creditor.

**D. The Exempt-Assets Argument Inverts the Law.**

The Motion argues Adam's unfrozen assets are exempt from execution and therefore "could not serve the protective purpose of a supersedeas bond." Mot. § C. Exemption statutes limit what a *creditor* may seize; they do not limit what a *debtor* may voluntarily pledge, deposit, or spend. Adam concedes as much: his own Motion offers to post $10,000 "from current exempt earnings." Mot. at 12. If exempt wages can lawfully fund $10,000 in security, they can lawfully fund whatever amount his actual income supports — an amount he declines to reveal.

As for the homestead, Adam's papers omit that the SEC has moved to require Adam and his wife to *relinquish* 518 Bryan Street precisely because it was purchased with investor funds. Ex. G at 4. The Court need not resolve that federal claim to see that the homestead is hardly the unassailable exempt asset the Motion depicts.

**E. On This Record the Court Cannot Perform the Calculation the Statute Requires.**

The Court cannot perform the calculation the statute requires. Section 52.006(c) does not authorize nominal security as a default. It directs the court to lower security "to an amount that will not cause the judgment debtor substantial economic harm" — that is, to determine the greatest amount the debtor can post without substantial harm. Such a determination is impossible on this record. The Court has no net worth, no income figures, no asset valuations, and no explanation of

the $10,000 figure beyond counsel's assertion that it "signals good faith." Even the sparse record Adam did make shows capacity beyond $10,000: $6,750.55 in unfrozen checking, up to $100,000 in pledgeable personal property, and an undisclosed wage stream sufficient — by Adam's own telling — to cover his living expenses and this offer.

The path to an accurate record is short, and Adam has already mapped it. In his July 17 response to Bliss Creek's discovery letter, Adam argued that an oral deposition is unnecessary because the information Bliss Creek seeks — "the existence and location of Adam's assets" — is "already documented in the federal record through the sworn accounting." Resp. to Discovery Letter at 3. But that should not foreclose Bliss Creek's right to inquire into the same through deposition, and evaluate what lies beyond that data.

Bliss Creek agrees the sworn accounting is highly probative. It is also not in the record and conspicuously absent from a Motion that asks the Court to take judicial notice of the freeze order while withholding the disclosures made under it. A party may not cite a document as the convenient, sufficient source of the truth while declining to produce it. The same is true of the custodian certified balance statements filed with the Georgia court under Section II of the freeze order and the monthly Post Freeze Account statements Adam swears to the SEC — each quantifies exactly what this Motion leaves blank.

Adam's Rule 621a argument collapses into the same circle. He resists deposition on the ground that *if* this Motion is granted and security posted, Rule 621a discovery "disappears entirely." Resp. at 2. But no security has been posted and the judgment is not superseded; Rule 621a discovery is proper today by the rule's own terms. And Adam has now independently placed his entire financial condition at issue by filing this Motion — a second, freestanding basis for examining him under oath that no future supersedeas would extinguish. The Court should decline

to decide a motion built on the debtor's say-so while the debtor simultaneously blocks every mechanism for testing it.

### F. If the Court Nonetheless Reduces the Security, any Reduction Should Carry Conditions with Teeth.

Rules 24.1(e) and 24.2(d) empower the Court to condition any decreased security and to enjoin dissipation. Should the Court conclude some reduction is warranted notwithstanding the failures of proof above, Bliss Creek requests that any order include, at minimum:

**Disclosure first:** before any reduced amount takes effect, Adam must serve (i) a sworn net-worth affidavit with complete, itemized schedules of assets and liabilities of the quality Rule 24.2(c) would require, (ii) the sworn accounting and amendments served on the SEC, (iii) the custodian certified balance statements, (iv) all monthly Post Freeze Account statements, and (v) unredacted statements for all unfrozen accounts for the trailing twelve months — and must sit for the oral deposition already noticed.

**A federal carve-out motion:** Adam must move the Northern District of Georgia within thirty days for modification of the freeze to permit posting security (or obtain the SEC's written consent), and report the outcome to this Court; failure vacates the reduction.

**A Rule 24.2(d) injunction:** prohibiting Adam from dissipating, transferring, encumbering, or gifting any asset — frozen or unfrozen, including community assets and interests in Shorestream Limited, Tetragon FLP, LLC, and Tiered Communication Services — beyond ordinary living expenses, and prohibiting any transfer to family members or affiliated entities.

**Reporting to Bliss Creek:** simultaneous service on Bliss Creek of every monthly statement and sworn report Adam provides the SEC; notice within two business days of any motion, order, or agreement affecting the freeze in the Georgia action or the interpleader.

**Automatic redetermination:** if the freeze is modified, dissolved, or expires, or any required report is late or materially inaccurate, the full Rule 24.2(a) security is reinstated automatically and enforcement may resume without further motion.

**No interim suspension:** the order should confirm that the judgment is not superseded, and enforcement is not stayed, unless and until security is actually posted and every condition satisfied. A pending Rule 24.2(b) motion suspends nothing.

## V. REQUEST FOR EVIDENTIARY HEARING

Rule 24.2(b) permits reduction only "after notice to all parties and a hearing." Adam's suggestion that "[n]either further discovery nor an evidentiary hearing is necessary," Mot. § B.4, asks the Court to dispense with the one procedural safeguard the rule makes mandatory — cross-examination of the only witness supporting the Motion. Bliss Creek requests an oral, evidentiary hearing at which Adam appears and testifies, set after the discovery identified in Section IV.E.

## VI. PRAYER

Bliss Creek respectfully requests that the Court: (1) deny the Motion; (2) alternatively, defer ruling and order that Adam (a) appear for oral deposition, and (b) produce the sworn accounting, custodian certified statements, monthly Post Freeze Account statements, and unredacted bank statements identified above, before any evidentiary hearing; (3) if any reduction is granted, impose the conditions set out in Section IV.F; (4) confirm that enforcement of the judgment, including the issued writ of execution, may proceed unless and until security is posted; and (5) grant Bliss Creek all other relief to which it is entitled.

Respectfully submitted,

Bradley W. Beskin
Texas Bar No. 24105463
Blake Sonne (Pro Hac Vice)
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: 405.516.7800
Facsimile: 405.516.7859
bbeskin@whittenburragelaw.com
bsonne@whittenburragelaw.com

**COUNSEL FOR PLAINTIFF AND JUDGMENT CREDITOR BLISS CREEK FUND 1, LLC**

## CERTIFICATE OF COMPLIANCE

This Response contains approximately 5303 words exclusive of cover, tables, and certificates.

Respectfully submitted,

Bradley W. Beskin

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on July 26, 2026

Respectfully submitted,

Bradley W. Beskin