***Adam v. SEC*, 4:26-cv-05240 (S.D. Tex.)**

**DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS THE COMPLAINT IN INTERPLEADER UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# EXHIBIT 3

***Bliss Creek v. Adam*, 23-BC11A-0019 (Business Court of Texas, 11th Division)**

**DEFENDANT JONATHAN ADAM'S**
**REPLY IN SUPPORT OF MOTION TO SET SECURITY AT $10,000**

**(Brief & Exhibit M)**

E-filed in the Office of the Clerk
for the Business Court of Texas
8/3/2026 4:42 PM
Accepted by: Alexis Jennings
Case Number: 26-BC11A-0019

**THE BUSINESS COURT OF TEXAS,**
**11th DIVISION**

| | | |
|---|---|---|
| **BLISS CREEK FUND 1, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 26-BC11A-0019** |
| | § | |
| **JONATHAN ADAM,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT JONATHAN ADAM'S**
**<u>REPLY IN SUPPORT OF MOTION TO SET SECURITY AT $10,000</u>**

Defendant Jonathan Adam files this *Reply in Support of Motion to Set Security at $10,000* and would show:

**A. Introduction.**

A federal court has frozen Adam's assets. He cannot pledge them, transfer them, encumber them, or use them as bond collateral without violating that order. That is not a disputed fact. It is the starting point of this Motion.

From that starting point, the rest follows. A person who cannot lawfully access his assets cannot post a $25 million bond from those assets. Two bond companies confirmed what common sense already dictates: no one will underwrite a bond backed by collateral the principal is forbidden to touch. And no rational lender will extend credit to a borrower with frozen collateral and competing claims exceeding $180 million. These are not contested propositions. They are the inevitable consequences of a federal freeze order that has been in effect since August 2024—eight months before Bliss Creek obtained the Wyoming judgment.

The question before this Court is practical: **what can Adam actually post**? The answer is $10,000 from available exempt earnings. That is what exists outside the freeze. And the freeze

itself—judicially supervised, enforceable by contempt, prohibiting any dissipation—already provides the anti-dissipation protection that a supersedeas bond is designed to accomplish.

Bliss Creek's Response raises process objections: why hasn't Adam sought to modify the freeze, disclosed more, or submitted to a live deposition. But none of those objections change the arithmetic. The freeze exists. It predates the judgment. It prohibits the use of the assets Bliss Creek says should secure that judgment. And this Court has flexible tools that include conditions, injunctions, continuing jurisdiction, and redetermination to protect Bliss Creek without requiring the impossible.

Notably, Bliss Creek characterizes Adam's positions as gamesmanship and delay. The record tells a different story. On the bond, Adam has asked for the relief Rule 24.2(b) provides when the required amount causes substantial economic harm. On discovery, Adam has offered written questions rather than refusing to participate at all. On the interpleader, Adam has asked a federal court to resolve competing claims for the same alleged wrongdoing to the same finite pool rather than forcing piecemeal resolution across multiple forums. At every step, Adam has asked for reasonableness and proportionality. Bliss Creek's response reframes those positions as obstruction but requesting the procedural tools the rules provide is not gamesmanship. It is litigation.

## B. <u>The Federal Freeze Order Resolves the Bond Question.</u>

Adam is not claiming poverty. He is pointing to a federal court order that prohibits him from using substantially all non-exempt assets. The freeze covers bank accounts, brokerage accounts, cryptocurrency exchanges, wallets, and real property. It **explicitly prohibits** withdrawal, transfer, pledge, encumbrance, disposal, or diminution. It has been in effect since August 2024. It remains effective until further order of the federal court.

*Ramco* says the inquiry should focus on "**available resources** and [the debtor's] ability to use them to post security." 171 S.W.3d at 917 (emphasis added). Frozen assets are not available resources. A $50 million frozen estate and a $5 million frozen estate produce the same result for Rule 24 purposes: zero dollars available for bond collateral. The value of the frozen pool is therefore irrelevant. The question is how much is unfrozen and available. Adam has answered: $6,750.55 in one checking account and less than $100,000 in exempt personal property. *See* Ex. H attached to Motion.

**C. <u>Every *Ramco* Factor Supports Reduction.</u>**

Each *Ramco* factor confirms what the freeze order already establishes:

**Cost and availability of a bond.** Two bond agencies require 100% cash collateral, which Adam cannot provide, and no bond is available on terms he can lawfully meet. *See* Ex. I to Motion. To address Bliss Creek's concern that Exhibit I does not definitively establish unavailability (a concern Adam disputes), his counsel contacted Court Surety Bond Specialist to discuss Adam's bond needs. Counsel spoke to Arturo Ayala, an "Appeal Bond Specialist" that sources sureties for judgment debtors. Ayala confirmed that sureties need 100% collateral. Because Adam does not have sufficient collateral to post, Ayala advised that it would be "difficult to even approach a surety company for a preliminary approval, as a surety company will generally not decline a bond request, what they usually come back with is a conditional approval based on posting 100% collateral." *See* Exhibit L, Wirmani Affidavit attached to Reply. Accordingly, as advised by an "Appeal Bond Specialist," without 100% collateral to post, the application process would be fruitless.

**Cash or assets on hand.** One unfrozen account: $6,750.55. Less than $100,000 in personal property. Everything else is frozen. *See* Ex. H attached to Motion.

**Unencumbered assets to sell or pledge.** None. Frozen assets cannot be pledged. Unfrozen personal property is exempt under Tex. Prop. Code § 42.001. A homestead is exempt under Tex. Const. art. XVI, § 50 and Tex. Prop. Code § 41.001. The Bryan property, Adam's only real estate asset, is his homestead. *See* Ex. H attached to Motion.

**Ability to borrow.** No rational lender would extend credit to a borrower with frozen collateral, $180+ million in competing claims, and undetermined SEC liability. The Court may draw this commercially obvious inference from undisputed facts without requiring formal loan-denial letters. Tex. R. Evid. 201(b).[1] Texas courts have long recognized that some conclusions are so evident from the surrounding facts that no further proof is required, and that a court may take judicial notice of the impossibility of a contrary result. *Clements v. Texas Co.*, 273 S.W. 993, 999 (Tex. Civ. App.—Galveston 1925, writ ref'd) ("We take judicial notice of the impossibility of this performance; to hold otherwise would do **violence to simple common sense**.") (emphasis added). Such is the case here.

**Other sources of funds.** Bliss Creek makes much of Adam's legal fees, implying that any funds available for payment of legal fees should be available for a bond. But legal fee payment arrangements are irrelevant to this Motion. Adam has been clear in his sworn testimony what funds he has available. And in any event, does Bliss Creek mean to suggest that Adam's legal fees equate to the $25 million he needs to post in collateral? Surely not.

---

[1] The Court may take judicial notice of two commercially indisputable propositions that follow from the undisputed record. First, supersedeas bonds require collateralization. The surety emails in this record confirm what is generally known in the financial and legal communities: sureties require 100% collateral from principals who cannot demonstrate substantial unencumbered liquidity. Tex. R. Evid. 201(b)(1) (facts "generally known within the trial court's territorial jurisdiction"). Second, commercial lenders do not extend unsecured credit to borrowers whose assets are frozen by court order and who face undetermined liabilities exceeding $180 million. These are not contested empirical questions. They are matters of prevailing financial and business practice of which trial courts may take judicial notice.

**Economic impact.** Required security: $25 million. Available unfrozen funds: $6,750.55. The disparity—a factor of more than 3,700—speaks for itself. The Court can take judicial notice of the inevitable economic impact to Adam.

**Bankruptcy or similar harm.** The only realistic alternative to this Motion would be bankruptcy. Requiring security Adam cannot post does not protect Bliss Creek; it forecloses the appeal without corresponding collection benefit.

**D. <u>The Freeze Protects the Pool; the Interpleader Resolves Priority.</u>**

Bliss Creek argues that Adam cannot simultaneously say the freeze "protects" Bliss Creek and call the frozen pool "vastly insufficient" in the interpleader. That is not a contradiction. It is two consistent observations about the same reality.

The pool is finite. It is frozen. It cannot satisfy everyone. Those are all true at the same time.

Also true, the freeze order is still the best available protection over that finite pool because it prevents dissipation. For this motion, the relevant point is preservation, not sufficiency. The freeze prevents Adam from spending, hiding, or giving away the assets while the courts sort out priority. That is exactly what a supersedeas bond is designed to accomplish: preservation of the status quo during appeal.

Neither Adam nor this Court knows what Bliss Creek's ultimate collection rights will be until priority is determined. Setting a security amount that assumes Bliss Creek will collect ahead of the SEC, while the interpleader is asking a federal court to resolve exactly that question, puts the cart before the horse. The appropriate course is nominal security with conditions and, if necessary, redetermination once priority is resolved.

**E. No Realistic Alternative Exists.**

Bliss Creek's argument, followed to its logical conclusion, asks Adam to do something no court should require:

**Modify the federal freeze?** That would ask one creditor's state-court convenience to override a federal order entered for the benefit of all alleged victims of the securities scheme, including Bliss Creek itself. Asking Adam to seek a carve-out from the Georgia court is not a neutral act. It is asking Adam to preference Bliss Creek over the SEC and other claimants the freeze was designed to protect. No principled reason supports that preference while the interpleader is pending.

**Post a bond from frozen assets?** That would require Adam to violate a federal order enforceable by contempt.

**Post a bond from exempt wages?** Adam has offered $10,000. Beyond that, forcing a debtor to waive Texas exemptions to create new security that would not have been available in execution is not the purpose of Rule 24.

**Borrow money?** No rational lender would extend credit to a borrower whose collateral is frozen by federal order, who faces competing claims exceeding $180 million, and who has undetermined additional SEC liability. That is not a proposition requiring formal proof. It is commercially obvious from the undisputed facts in the record.

**Get third-party collateral?** Bliss Creek points to a surety email mentioning this option. But no third party has agreed to post collateral, and Adam cannot force a non-party to do so. The existence of a theoretical path does not become an evidentiary failure simply because no one has volunteered to walk it. *See* Exhibit M, Adam's Affidavit attached to Reply.

When Bliss Creek's demands are listed together, what emerges is that none of them are realistic. Bliss Creek is fighting the reality of the freeze rather than proposing a workable path forward. The workable path is nominal security plus conditions.

**F. Bliss Creek's Authorities Involve Debtors With Free Access to Assets.**

Bliss Creek relies on *LMC Complete Automotive*, *Crowder v. Sanger*, and *Tex. Soccer Found. v. Sting Soccer Found.* to argue that Adam's proof is insufficient. Each case involved a judgment debtor with **free access to assets** who simply failed to document hardship. None involved a federally frozen estate.

In *LMC Complete Automotive*, the debtor was an operating business with annual revenues exceeding $2.5 million, employees on payroll, available lines of credit at multiple banks, and a majority shareholder who owned related businesses and obtained construction financing during the appeal. The court found that LMC had resources it could use but chose not to prove it couldn't. That is not this case.

In *Crowder*, the debtor submitted a net-worth affidavit with stale valuations, unexplained omissions, contradictory tax documents, and volatile stock holdings whose value changed dramatically between the affidavit date and filing. The court struck the affidavit because the debtor could have provided accurate, current information and didn't. That is also not this case. Adam's situation is not that he failed to accurately value assets he controls. It is that the assets are frozen and their value is irrelevant because he cannot use them regardless of what they are worth.

In *Tex. Soccer Found.*, the debtor made only a conclusory statement about harm and presented **no evidence of any *Ramco* factor** at all. That is the furthest case from Adam's situation. Adam has submitted two sworn affidavits, a bank statement, surety communications, the freeze

order itself, and the interpleader complaint. His evidence is not absent. It shows that the barrier to security is a federal court order, not a failure of effort.

Bliss Creek's cases establish that conclusory hardship claims by debtors who have free access to assets are insufficient. They do not establish that a debtor whose assets are frozen by federal order must nonetheless prove the value of what he cannot touch.

### G. <u>The Sworn Record Addresses Bliss Creek's Specific Objections.</u>

Adam's affidavit establishes the critical facts for the Rule 24 question:

- He has one unfrozen checking account at PNC Bank—his only live account. Ex. H attached to the Motion.
- That account had $6,750.55 as of June 16, 2026, with an average monthly balance of $2,067.41. *Id*.
- He has less than $100,000 in personal property not subject to the freeze. *Id*.
- Substantially all non-exempt assets are frozen. *Id*.
- His net worth consists substantially of the frozen assets. *Id*.
- His current earnings are wages for personal services and are thus exempt. *Id*.; *see also* Ex. M.
- He cannot access, transfer, pledge, or use the frozen assets. *Id*.; *see also* Ex. D.

Bliss Creek objects to redacted deposits and withdrawals. But for a Rule 24 motion, what matters is how much Adam has available, not where each dollar originated. The source-of-funds question is a red herring here. This Court is not tracing investor proceeds or evaluating disgorgement. It is deciding whether Adam can post more than $10,000 without substantial economic harm. However, and without agreeing that an unredacted version of the bank statement is necessary, Adam attaches an unredacted version to this Reply. *See* Exhibit M-1. In addition, Adam testifies that he is currently employed with Kari Barnes Consulting and receives monthly compensation of $20,000 (gross). *Id.* Mr. Adam's employment began in June 2026. *Id.*

The affidavit answers that question with concrete numbers, not legal conclusions. Adam swears under oath that the PNC account is his only unfrozen account. He states the balance:

$6,750.55. He states that substantially all non-exempt assets are frozen and that he cannot access them. Those are verifiable facts based on the record.

Bliss Creek characterizes paragraph 11 of the affidavit ("requiring me to post security in excess of $10,000 would cause me substantial economic harm") as a bare legal conclusion. But that sentence does not stand alone. It is the logical conclusion of the preceding ten paragraphs, which establish the factual predicates: one modest account, limited exempt personal property, everything else frozen by federal order. When a debtor swears he has $6,750.55 in his only unfrozen account and no access to anything else, requiring $25 million in security is not just likely to cause substantial economic harm; it is mathematically impossible to satisfy from those resources. The numbers themselves are the evidence of harm.

If Bliss Creek genuinely disputes that the PNC account is Adam's only unfrozen account, the proportional remedy is a targeted written question, not a theory that redacted transaction lines prove hidden wealth, and not an open-ended live deposition that overlaps with the SEC enforcement case.

## H. <u>Any Additional Discovery Should Be Written, Narrow, and Protected.</u>

Reasonableness requires matching the discovery method to the dispute. The Rule 24 question is narrow; the discovery should be too.

If the Court wants more information before ruling, Adam does not object to providing it through appropriate means. But the method matters.

Adam is a defendant in an SEC enforcement action. The freeze order requires sworn accounting of assets, accounts, transfers, and property. The SEC remedies motion seeks disgorgement, penalties, and relinquishment of properties held by Adam and family members. The freeze order itself preserves constitutional and legal privileges, including the Fifth Amendment.

In that context, a broad live deposition is not proportional to the Rule 24 question. It risks turning this supersedeas dispute into a collateral SEC examination about source of funds, transfers, tracing, family-member property, and other topics that belong in the federal proceedings.

Adam offered written questions to Bliss Creek weeks ago. Written questions can address the actual Rule 24 issues: current unfrozen cash, post-freeze income, non-exempt unfrozen property, bond availability, and whether any non-party has agreed to post security. It is proportional. It protects against collateral-use risks and privilege disputes. And it preserves Bliss Creek's ability to seek further discovery if genuine gaps remain after the written responses.

If the Court believes more is needed than what is provided in written responses, sensitive federal-accounting materials can be produced for *in camera* review.

## I. <u>Protective Conditions Give Bliss Creek What a Bond Cannot.</u>

Bliss Creek articulates a concern that the freeze could change without its participation. That is a fair concern. But it supports conditions, not a bond Adam cannot fund.

Adam proposes:

- Security set at $10,000, postable from available exempt earnings.
- The order conditioned on the Asset Freeze Order remaining in full force and effect.
- Adam to notify the Court and Bliss Creek within five business days of any motion, order, agreement, modification, dissolution, or expiration affecting the freeze.
- An injunction under Rule 24.2(d) prohibiting Adam from dissipating or transferring unfrozen assets beyond ordinary living expenses.
- Automatic redetermination of security under Rule 24.3 if the freeze is materially modified or dissolved.
- Continuing jurisdiction retained by the Court to modify the amount or type of security if circumstances change.

That package gives Bliss Creek notice, reporting, anti-dissipation protection, and redetermination rights. It uses the tools Rule 24 provides. And it does not require Adam to do the impossible.

**J. Conclusion.**

The freeze order is the dispositive fact in this case. It makes a traditional bond legally impossible without violating a federal court order. It also makes a traditional bond unnecessary because it already prevents the dissipation that a supersedeas bond is designed to prevent.

Bliss Creek's response does not identify a realistic path to a bond that Adam can lawfully post. It asks the Court to require what the federal order forbids.

The Court should set security at $10,000 with protective conditions. In the alternative, if the Court requires more information, it should order limited written discovery and protected production narrowly tailored to the Rule 24 issues before requiring any live examination.

Respectfully submitted,

*/s/ Victor Vital*

Victor Vital
State Bar No. 00794798
victor.vital@haynesboone.com
Elizabeth Wirmani
State Bar No. 24052268
elizabeth.wirmani@haynesboone.com
Haynes and Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

Natasha Breaux
State Bar No. 24073688
Natasha.breaux@haynesboone.com
Haynes and Boone, LLP
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2154
Telecopier: (713) 236-5680

**ATTORNEYS FOR DEFENDANT JONATHAN ADAM**

## CERTIFICATE OF COMPLIANCE

This Reply contains approximately 2,992 words exclusive of style, title, signature blocks, and certificates.

*/s/ Elizabeth Wirmani*
Elizabeth Wirmani

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record and the court reporter responsible for preparing the reporter's record in accordance with the Texas Rules of Civil Procedure on August 3, 2026.

*/s/ Elizabeth Wirmani*
Elizabeth Wirmani

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jessica Sanchez on behalf of Victor Vital
Bar No. 794798
jessica.sanchez@haynesboone.com
Envelope ID: 118163109
Filing Code Description: Answer/Response
Filing Description: Reply in support of Motion to Set Security
Status as of 8/3/2026 4:59 PM CST

Case Contacts

| **Name** | **BarNumber** | **Email** | **TimestampSubmitted** | **Status** |
|---|---|---|---|---|
| Natasha Breaux | | natasha.breaux@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |
| Victor Vital | | victor.vital@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |
| Elizabeth Wirmani | | elizabeth.wirmani@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |
| Adam Zentner | | adam@zentnerlaw.com | 8/3/2026 4:42:45 PM | SENT |
| Bradley Beskin | | bbeskin@whittenburragelaw.com | 8/3/2026 4:42:45 PM | SENT |
| Business Court Division 3B | | BCDivision3B@txcourts.gov | 8/3/2026 4:42:45 PM | SENT |

Associated Case Party: Jonathan Adam

| **Name** | **BarNumber** | **Email** | **TimestampSubmitted** | **Status** |
|---|---|---|---|---|
| Rachel HBartenfeld | | rachel.bartenfeld@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |
| Mishan Kara | | mishan.kara@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |
| Jessica Sanchez | | jessica.sanchez@haynesboone.com | 8/3/2026 4:42:45 PM | SENT |

Associated Case Party: GCZ GLOBAL LLC

| **Name** | **BarNumber** | **Email** | **TimestampSubmitted** | **Status** |
|---|---|---|---|---|
| Leslie Katz | | Leslie.Katz@practus.com | 8/3/2026 4:42:45 PM | SENT |
| Leslie Katz | | Katz@practus.com | 8/3/2026 4:42:45 PM | ERROR |

DEFENDANT'S EXHIBIT M

**THE BUSINESS COURT OF TEXAS,**
**11th DIVISION**

| | | |
|---|---|---|
| **BLISS CREEK FUND 1, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 26-BC11A-0019** |
| | § | |
| **JONATHAN ADAM,** | § | |
| | § | |
| **Defendant.** | § | |

**AFFIDAVIT OF JONATHAN ADAM**

STATE OF TEXAS §
§
COUNTY OF BRAZORIA §

**BEFORE ME** the undersigned authority on this day personally appeared the undersigned affiant, who by me sworn, under oath stated:

1. To date, no third-party has offered to or agreed to provide funds to secure a bond in this matter. I do not know of a third-party that would be positioned to, or would agree to, post $25 million in collateral on my behalf.

2. An unredacted version of my June 2026 bank statement from PNC Bank is attached as Ex. 1. This is my only, unfrozen bank account.

3. I am currently employed by Kari Barnes Consulting. I began this employment in June 2026. My monthly income is $20,000 gross. I receive $7,246 net income on the 15th of each month and the last day of each month.

Further Affiant Sayeth Not

EXECUTED on August 3, 2026.

Jonathan Adam

Subscribed and sworn to before me on August 3rd, 2026.

MAGEN GIBSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-17-29
Notary ID # 129743367

Notary Public Signature

Magen Gibson

Notary Public Printed Name

# Exhibit 1

# PNC Simple Checking Statement

PNC Bank

PNC BANK
PO Box 609
Pittsburgh, PA 15230-9738

Primary account number: XX-XXXX-9498
Page 1 of 2

**For the period 05/21/2026 to 06/17/2026**

Number of enclosures: 0

JONATHAN ADAM
518 BRYAN ST
ANGLETON TX 77515-4836

For 24-hour banking, and transaction or interest rate information, sign-on to PNC Bank Online Banking at pnc.com

For customer service call 1-888-762-2265

PNC accepts Telecommunications Relay Service (TRS) calls.

Para servicio en espanol, 1-866-465-2762

**Moving?** Please contact us at 1-888-762-2265

PO Box 609
Pittsburgh, PA 15230-9738

Visit us at pnc.com

PNC accepts Telecommunications Relay Service (TRS) calls.

## PNC Simple Checking Account Summary

JONATHAN ADAM

**Account number:** XX-XXXX-9498

**Overdraft Protection** has not been established for this account.
Please contact us if you would like to set up this service.

### Balance Summary

| Beginning balance | Deposits and other additions | Checks and other deductions | Ending balance |
|---|---|---|---|
| .00 | 10,917.46 | 4,166.91 | 6,750.55 |

| Average monthly balance | Charges and fees |
|---|---|
| 2,067.41 | .00 |

### Transaction Summary

| Checks paid/withdrawals | Debit Card POS signed transactions | Debit Card/Bankcard POS PIN transactions |
|---|---|---|
| 0 | 11 | 14 |

| Total ATM transactions | PNC Bank ATM transactions | Other Bank ATM transactions |
|---|---|---|
| 0 | 0 | 0 |

## Activity Detail

### Deposits and Other Additions

There were 5 Deposits and Other Additions totaling $10,917.46.

| Date | Amount | Description |
|---|---|---|
| 05/22 | 50.00 | Zel From Garrett Adam |
| 05/26 | .01 | Direct Deposit - Acctverify Gusto 6seml5fs45o |
| 05/29 | 3,615.34 | Direct Deposit - Payroll KARI BARNES CONS 6semk8rpvhg |
| 06/08 | 21.44 | Visa Money Transfer C Venmo*adam jonathan New York Ci NY |
| 06/15 | 7,230.67 | Direct Deposit - Payroll KARI BARNES CONS 6semk92dukj |

### Banking/Debit Card Withdrawals and Purchases

There were 14 Debit Card/Bank card PIN POS purchases totaling $1,335.05.

There were 10 other Banking Machine/Debit Card deductions totaling $947.86.

| Date | Amount | Description |
|---|---|---|
| 05/27 | 18.58 | 0216 Debit Card Purchase Taco Bell 026764 |
| 06/01 | 53.65 | 0216 Debit Card Purchase Buc-Ee's #0025 Anglet |

Banking/Debit Card Withdrawals and Purchases continued on next page

# PNC Simple Checking Statement

For 24-hour information,sign on to PNC Bank Online Banking on pnc.com

Account Number: XX-XXXX-9498 - continued

**For the period 05/21/2026 to 06/17/2026**
JONATHAN ADAM
Primary account number: XX-XXXX-9498


## Banking/Debit Card Withdrawals and Purchases *- continued*

| Date | Amount | Description |
|---|---|---|
| 06/01 | 68.73 | POS Purchase H-E-B #707 Lake Jackson Tx |
| 06/02 | 60.32 | 0216 Debit Card Purchase Buc-Ee's #0021 Anglet |
| 06/02 | 5.41 | 0216 Debit Card Purchase Bank Of America Ctr Ga |
| 06/03 | 6.40 | 0216 Debit Card Purchase Tst* Bun Slut BS2 - Mo |
| 06/05 | 31.93 | POS Purchase Buc-ee's # Angleton Tx |
| 06/08 | 36.23 | 0216 Debit Card Purchase Buc-Ee's #0025 Anglet |
| 06/08 | 300.00 | 0216 Debit Card Purchase Venmo *Monique Salazar |
| 06/08 | 112.50 | POS Purchase H-E-B #707 Lake Jackson Tx |
| 06/08 | 19.59 | POS Purchase Dollar General Angleton Tx |
| 06/08 | 39.69 | 0216 Debit Card Purchase Sonic Drive In #1827 |
| 06/09 | 79.01 | POS Purchase Wal-Mart #0527 Angleton Tx |
| 06/10 | 48.24 | POS Purchase Kroger #256 Angleton Tx |
| 06/11 | 70.97 | POS Purchase H-E-B Gas Carw Lake Jackson Tx |
| 06/11 | 142.02 | POS Purchase H-E-B #707 Lake Jackson Tx |
| 06/15 | 389.34 | 0216 Debit Card Purchase Progressive Ins |
| 06/15 | 473.03 | POS Purchase Best Buy Lake Jackson Tx |
| 06/15 | 174.54 | POS Purchase H-E-B #707 Lake Jackson Tx |
| 06/16 | 38.24 | 0216 Debit Card Purchase Buc-Ee's #0021 Anglet |
| 06/17 | 42.15 | POS Purchase Barnes and Nob Pearland Tx |
| 06/17 | 39.30 | POS Purchase Tractor-Supply Lake Jackson Tx |
| 06/17 | 20.09 | POS Purchase Office Depot # Lake Jackson Tx |
| 06/17 | 12.95 | POS Purchase Lowe's #13 Lake Jackson Tx |

## Online and Electronic Banking Deductions

There were 6 Online or Electronic Banking Deductions totaling $1,884.00.

| Date | Amount | Description |
|---|---|---|
| 05/29 | 1,000.00 | Zel To Garrett Adam |
| 06/08 | 50.00 | Zel To Garrett Adam |
| 06/09 | 100.00 | Zel To Garrett Adam |
| 06/15 | 200.00 | Zel To Garrett Adam |
| 06/16 | 120.00 | Web Pmt- Starlink I Starlink Interne St-L9A8W9J8O5V2 |
| 06/17 | 414.00 | Web Pmt- Mobile Pmt Capital One Ca0A90095522Aea |

## Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 05/21 | .00 | 05/29 | 2,646.77 | 06/05 | 2,420.33 | 06/11 | 1,443.52 |
| 05/22 | 50.00 | 06/01 | 2,524.39 | 06/08 | 1,883.76 | 06/15 | 7,437.28 |
| 05/26 | 50.01 | 06/02 | 2,458.66 | 06/09 | 1,704.75 | 06/16 | 7,279.04 |
| 05/27 | 31.43 | 06/03 | 2,452.26 | 06/10 | 1,656.51 | 06/17 | 6,750.55 |