***Adam v. SEC*, 4:26-cv-05240 (S.D. Tex.)**

**DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS THE COMPLAINT IN INTERPLEADER UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# EXHIBIT 4

***Bliss Creek v. Adam*, 23-BC11A-0019 (Business Court of Texas, 11th Division)**

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO SET SECURITY AT $10,000 UNDER RULE 24.2(b)**

**CAUSE NO. 26-BC11A-0019**

<table>
<tr><td>

**BLISS CREEK FUND 1, LLC**,

*Plaintiff and Judgment Creditor*,

v.

**GCZ GLOBAL, LLC**, *and*<br>**JONATHAN ADAM**,

*Defendants and Judgment Debtors*.

</td><td>

**TEXAS BUSINESS COURT**<br>**ELEVENTH DIVISION A**<br>*Equalized to Third Division*<br>*Hon. Patrick K. Sweeten*

</td></tr>
</table>

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO SET SECURITY AT $10,000 UNDER RULE 24.2(b)**

## I. THE NEW EVIDENCE DEFEATS THE MOTION

### A. Adam Has $20,000 Per Month in Unfrozen Income that He Did Not Disclose.

The Motion rested on a single sworn proposition: that Adam's entire unfrozen financial life consists of one checking account holding $6,750.55. Mot. Ex. H ¶¶ 3–4. On that record he asked this Court to set security at $10,000 against a judgment of $141,063,243.99.

Adam now swears in Reply that he "is currently employed by Kari Barnes Consulting," that his "monthly income is $20,000 gross," and that he receives "$7,246 net" twice a month. Reply Ex. M ¶ 3. That is $240,000 per year gross — none of it frozen, all of it deposited into the very account Adam offered as proof that he cannot pay. His proposed security is less than three weeks of his own take-home pay. The omission is telling: his July affidavit told the Court that "[f]unds I received in that account represent income I earned through employment," Mot. Ex. H ¶ 3, so he understood his income was material. He disclosed that it existed, withheld what it was, and redacted from Exhibit H-1 the entries that would have revealed it.

**B. The Redactions Concealed the Income.**

Exhibit H-1 and Exhibit M-1 are the same document: a PNC Simple Checking statement for May 21 through June 17, 2026. In the version filed with the Motion, the Balance Summary, the Transaction Summary, and the entire Activity Detail are blanked. Bliss Creek objected that a redacted statement cannot establish the financial condition it was offered to prove. Resp. § IV.A. The Reply calls that objection a "red herring," Reply § G, and then attaches the unredacted statement — which shows what the redactions covered:

**Payroll deposits.** Two deposits from "KARI BARNES CONS" — $3,615.34 on May 29 and $7,230.67 on June 15, 2026 — plus a one-cent payroll-provider verification deposit ("Direct Deposit – Acctverify Gusto") on May 26, 2026.

**Transfers to third parties.** $1,350.00 by Zelle to Garrett Adam in four transactions, and $300.00 by Venmo to a third party on June 8, 2026.

**An active line of credit.** A $414.00 payment to Capital One on June 17, 2026 — notwithstanding Adam's sworn statement that he is "unable to borrow funds." Mot. Ex. H ¶ 7.

Those entries also date the employment. Adam swears he "began this employment in June 2026," Reply Ex. M ¶ 3, but his own exhibit shows a payroll-provider verification deposit on May 26 and a May 29 payroll deposit that is precisely half the June 15 deposit, to the penny — a partial first pay period beginning in mid-May. Adam had therefore been drawing a $20,000 monthly salary for two months, and had received at least three paychecks, when he swore the July affidavit that disclosed none of it. The same statement answers the one figure the Motion offered as proof of hardship: the account opened at a zero balance on May 21, so the "average monthly balance" of $2,067.41 measures how recently the account was opened, not what Adam earns or keeps. And Adam plainly read this statement closely — the $6,750.55 he recites appears nowhere but the Daily Balance Detail, where it is the June 17 balance rather than the June 16 figure he assigns to it —

which is difficult to square with redactions that happened to remove every entry unfavorable to the Motion. Reply Ex. M-1 at 1–2.

These inconsistencies emphasize the need for discovery in this matter, as well as a full evidentiary hearing, before the Court determines whether it should afford Adam any relief.

### C. The Statement Omits Equally Significant Information.

Adam's total outflow for the period was $4,166.91. The statement reflects no rent or mortgage payment, no utility payment other than $120.00 to Starlink, no insurance premium other than $389.34 to an automobile carrier, and no payment to counsel — though Adam is represented here by three lawyers at Haynes and Boone, LLP. Against that record he swears that "no third-party has offered to or agreed to provide funds **to secure a bond** in this matter." Reply Ex. M ¶ 1 (emphasis added). The sentence is carefully drawn; if the representations are true, then a third party is plainly providing funds for other purposes. The Reply's answer, that "legal fee payment arrangements are irrelevant," Reply § C, refuses the question *Ramco* puts in issue: whether this debtor has access to financial support from any source. *Ramco Oil & Gas, Ltd. V. Anglo-Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 917 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (op. on reh'g).

## II. EXHIBIT L SHOWS ADAM HAS NEVER APPLIED FOR A BOND

Adam offers the Ayala email to prove that a bond is unobtainable. Read as written, it proves the opposite. Mr. Ayala performed no underwriting; his conclusion is drawn "[f]rom our conversation" with Adam's counsel — a call placed the morning the Reply was filed — and he reviewed no financial information. Reply Ex. L-1. No surety has declined anything: Mr. Ayala writes that a surety "will generally not decline a bond request," and that "what they usually come back with is a conditional approval based upon posting 100% collateral." *Id.* A conditional approval is an approval. He then describes the process Adam has never begun — "make a

submission to a surety company for a preliminary approval" — and the record contains no submission, no application, and no declination. Approximately fifteen months after entry of the Wyoming Judgment, Adam has not applied for a bond.

Exhibit L also refutes the contention that no alternative exists. Mr. Ayala identifies five accepted forms of collateral — cash, bank letters of credit, real estate, marketable securities, and the cash surrender value of permanent life insurance, the last of which Adam has never addressed — and states that they "could be used in combination to come up to the required bond amount," and that sureties "could consider accepting collateral from a third-party on behalf of the judgment debtor." *Id*. Adam's own exhibit identifies the path his affidavit says does not exist, and confirms that security need not come from one source in one form.

## III. JUDICIAL NOTICE CANNOT SUPPLY THE MISSING PROOF

Adam asks the Court to take judicial notice under Rule 201(b)(1) that sureties require full collateral. Reply § C. That rule permits notice of an adjudicative fact "not subject to reasonable dispute" because it "is generally known within the trial court's territorial jurisdiction." Underwriting standards for a $25 million bond for a particular applicant are not generally known in any jurisdiction — and Adam's own evidence proves it, because a fact that is indisputable and generally known does not require a bespoke telephone consultation yielding five collateral options, combinations of them, third-party collateral, and a submission process. *Clements v. Texas Co.*, 273 S.W. 993, 999 (Tex. Civ. App.—Galveston 1925, writ ref'd), does not change the analysis: whatever the law's tolerance for impossibility, impossibility is a fact that must be proved. Rule 24.2(b) permits reduction only where "the court finds" a likelihood of substantial economic harm, and Section 52.006(c) only "on a showing by the judgment debtor." *See In re Longview Energy Co.*, 464 S.W.3d 353, 359 (Tex. 2015). Adam has shown only that he ***never tried***.

## IV. OBJECTIONS TO ADAM'S REPLY EVIDENCE

Bliss Creek objects to Reply Exhibit L-1 and to paragraph 5 of the Wirmani Declaration, and requests a ruling on each objection. The Ayala email is **hearsay within hearsay**, Tex. R. Evid. 802, 805: it is offered for its truth and recounts what unidentified "surety companies" generally do, and Mr. Ayala is not sworn or subject to cross-examination. Without intending disrespect to Plaintiff's Counsels' colleague, Ms. Wirmani lacks personal knowledge of surety practices, Tex. R. Evid. 602 — she is counsel of record, not an underwriter — and her account of industry practice is undisclosed opinion testimony from a witness never designated or qualified. Tex. R. Evid. 701, 702. Paragraph 5 also mischaracterizes the exhibit: it says the email "confirm[s] the issuance of a bond would require 100% collateral," while the email says sureties "generally require" collateral and would return "a conditional approval." The appended webpage printout is unauthenticated marketing material published by the agency itself. Tex. R. Evid. 901.

## V. RULE 24.2(b) REQUIRES A HEARING

Adam has maintained from the outset that "[n]either further discovery nor an evidentiary hearing is necessary." Mot. § B.4. The rule he moves under says otherwise: the court may lower the security only if, "after notice to all parties and a hearing, the court finds" a likelihood of substantial economic harm. Tex. R. App. P. 24.2(b). The hearing is a condition of the relief, and the need for one is now concrete — Adam has sworn in Reply to material facts he omitted from the affidavit supporting the Motion, and his second affidavit is contradicted on its own start date by the exhibit attached to it. This Court should not resolve a $141 million supersedeas question on a paper record that changed the day briefing closed.

To the extent Adam relies on net worth — he swears it "consists substantially of the assets frozen," Mot. Ex. H ¶ 8 — his affidavit states no figure and none of the "complete, detailed information concerning the debtor's assets and liabilities" Rule 24.2(c)(1) requires, and Bliss

Creek is entitled to "reasonable discovery concerning the judgment debtor's net worth" under Rule 24.2(c)(2). Adam cannot invoke his net worth and refuse to substantiate it. Nor does calling his earnings "wages for personal services," id. ¶ 10, remove them: an exemption from garnishment limits a creditor's remedies; it does not measure what a debtor voluntarily seeking to suspend enforcement can post. Income is a *Ramco* factor, and *Ramco* is Adam's lead authority. 171 S.W.3d at 917.

## VI. PRAYER

Bliss Creek's position remains that the Motion should be denied and security set in the amount the statute requires. If the Court is nonetheless inclined to reduce it, the reduction should be measured against evidence rather than a single-day account balance, and should take the form of an initial deposit into the registry of the Court together with periodic payments determined from Adam's disclosed income — subject to redetermination under Rule 24.3 and to the conditions set out in Section IV.F of Bliss Creek's Response, including the four Adam's own proposal omits. Adam's offer of protective conditions is itself an admission: a party who maintains that $10,000 is adequate security has no occasion to propose six conditions to make it safe.

Bliss Creek respectfully requests that the Court: (1) sustain the objections above and strike Reply Exhibit L-1 and paragraph 5 of the Wirmani Declaration; (2) set the Motion for the evidentiary hearing Rule 24.2(b) requires and permit the post-judgment discovery described in Bliss Creek's Response; (3) deny the Motion and set security in the amount required by Tex. R. App. P. 24.2(a)(1) and Tex. Civ. Prac. & Rem. Code § 52.006; (4) alternatively, set security in an amount supported by Adam's newly disclosed income and subject to the conditions requested in Section IV.F of the Response; and (5) grant such other relief to which Bliss Creek is justly entitled. Any order on the Motion is without effect on enforcement of the Judgment against GCZ Global, LLC, a co-judgment debtor that has not sought relief from this Court.

Respectfully submitted,

/s/ Bradley W. Beskin

Bradley W. Beskin
Texas Bar No. 24105463
Blake Sonne (Pro Hac Vice)
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: 405.516.7800
Facsimile: 405.516.7859
bbeskin@whittenburragelaw.com
bsonne@whittenburragelaw.com

**COUNSEL FOR PLAINTIFF AND JUDGMENT CREDITOR BLISS CREEK FUND 1, LLC**

## CERTIFICATE OF COMPLIANCE

This document complies with the applicable length limitations. Relying on the word count of the computer program used to prepare it, the undersigned certifies that the **Sur-Reply** contains approximately **1,870** words, excluding the caption, signature block, and certificates.

Respectfully submitted,

Bradley W. Beskin

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on August 4, 2026.

Respectfully submitted,

Bradley W. Beskin