**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JONATHAN L. ADAM and GCZ GLOBAL, LLC,** | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:26-cv-5240** |
| **v.** | § | |
| **SECURITIES AND EXCHANGE COMMISSION and BLISS CREEK FUND 1, LLC** | § | |
| **Defendants.** | § | |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BLISS CREEK FUND 1, LLC'S MOTION TO DISMISS

Table of Contents

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............ 1
STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............ 2
SUMMARY OF ARGUMENT ............ 3
INTRODUCTION ............ 4
FACTUAL BACKGROUND ............ 5
DISPUTED ASSETS ............ 6
FUNDAMENTAL ERRORS IN BLISS CREEK'S MOTION ............ 7
A. Bliss Creek Conflates Statutory Interpleader with Rule 22, Which Requires Only Two Things. ............ 7
B. Interpleader Is Not a Delay Tactic; It Is a Response to a Concrete Conflict. ............ 8
C. The Atypical Facts Make Interpleader More Necessary, Not Less. ............ 8
D. The Frozen Assets Are the Only Meaningful Source of Recovery ............ 8
ARGUMENT AGAINST MOTION TO DISMISS ............ 9
A. BLISS CREEK'S RULE 12(b)(1) CHALLENGE FAILS. ............ 9
1. The Controversy Is Ripe and Justiciable. ............ 9
2. The Post Freeze Account Does Not Eliminate the Conflict. ............ 11
3. Sovereign Immunity Does Not Bar Claims Against the SEC. ............ 12
B. BLISS CREEK'S RULE 12(b)(6) CHALLENGE FAILS. ............ 14
1. Rule 22 Imposes No "Innocent Stakeholder" Requirement. ............ 15
2. The Disputed Assets Are a Single, Identifiable Fund. ............ 16
3. The SEC and Bliss Creek Assert Adverse Claims to the Same Property. ............ 16
4. Rule 22 Does Not Require a Pre-Filing Deposit. ............ 18
5. Rule 22 Imposes No Factual-Pattern Limitation ............ 19
C. The Anti-Injunction Act Does Not Support Dismissal. ............ 19
D. Bliss Creek's *Brillhart/Wilton* argument does not warrant dismissal. ............ 21
CONCLUSION ............ 23
CERTIFICATE OF SERVICE ............ 24

## Table of Authorities

**Page(s)**

**Cases**


*Airborne Freight Corp. v. United States*,
195 F.3d 238 (5th Cir. 1999) ........ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 10

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985) ........ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942) ........ 21

*Burnett Specialists v. Cowen*,
140 F.4th 686 (5th Cir. 2025) ........ 2

*Corrigan Dispatch Co. v. Casa Guzman, S.A.*,
696 F.2d 359 (5th Cir. 1983) ........ 11

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1332 (5th Cir. 1981) ........ 20

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
391 F. Supp. 2d 541 (S.D. Tex. 2005) ........ 18

*Franchise Tax Bd. v. Constr. Lab. Vacation Trust*,
463 U.S. 1 (1983) ........ 14

*Gelfgren v. Republic Nat'l Life Ins. Co.*,
680 F.2d 79 (9th Cir. 1982) ........ 18

*General Railway Signal Co. v. Corcoran*,
921 F.2d 700 (7th Cir. 1991) ........ 19

*Indianapolis Colts v. Mayor & City Council of Baltimore*,
733 F.2d 484 (7th Cir. 1984) ........ 23

*Int'l Marine Carriers v. Oil Spill Liability Trust Fund*,
903 F. Supp. 1097 (S.D. Tex. 1994) ........ 13

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................9

*Murphy v. Travelers Insurance Co.*,
534 F.2d 1155 (5th Cir. 1976)....................16, 18

*Newby v. Enron Corp.*,
338 F.3d 467 (5th Cir. 2003)....................20

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001)....................2, 9

*Rhoades v. Casey*,
196 F.3d 592 (5th Cir. 1999)....................14

*Salomon Smith Barney v. McDonnell*,
201 F.R.D. 297 (S.D.N.Y. 2001)....................12

*SEC v. Bergin*,
No. 3:13-CV-1940-M, 2015 WL 4275509 (N.D. Tex. July 15, 2015)....................18

*SEC v. Blakstad*,
No. 20-CV-7468, 2020 WL 7398755 (S.D.N.Y. Dec. 17, 2020)....................19

*SEC v. Novinger*,
40 F.4th 297 (5th Cir. 2022)....................14

*Sherwin-Williams Co. v. Holmes Cnty.*,
343 F.3d 383 (5th Cir. 2003)....................21, 22, 23

*St. Paul Ins. Co. v. Trejo*,
39 F.3d 585 (5th Cir. 1994)....................2, 22, 23

*State Farm Fire & Casualty Co. v. Tashire*,
386 U.S. 523 (1967)....................15, 19, 21

*Texas v. United States*,
523 U.S. 296 (1998)....................10

*Texas v. United States Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024)....................12, 13

*Tijerina v. Securian Life Insurance Co.*,
No. EP-24-CV-86-KC, 2024 WL 4820861 (W.D. Tex. Nov. 18, 2024)....................20

*Tittle v. Enron Corp.*,
463 F.3d 410 (5th Cir. 2006)....................11

*Wausau Insurance Cos. v. Gifford*,
954 F.2d 1098 (5th Cir. 1992) .......... 16

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) .......... 21

*Zacarias v. Stanford Int'l Bank, Ltd.*,
945 F.3d 883 (5th Cir. 2019) .......... 20, 21

**Statutes**

5 U.S.C. § 702 .......... 3, 12, 13, 14

28 U.S.C. § 1335 .......... 7, 8, 18

28 U.S.C. § 2283 .......... 2, 19

28 U.S.C. § 2410(a)(5) .......... 3, 13, 14

28 U.S.C. § 2201 .......... 2

Tex. Prop. Code § 42.001(a) .......... 7

Tex. Prop. Code § 42.001(b)(1) .......... 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .......... 2, 9, 14

Fed. R. Civ. P. 12(b)(6) .......... *passim*

Fed. R. Civ. P. 22 .......... *passim*

Fed. R. Civ. P. 22(a)(1) .......... 7, 15, 18, 19

Federal Rule of Evidence 201(b)(2) .......... 13

Tex. Const. art. XVI, § 50 .......... 7

Wright & Miller, *Federal Practice and Procedure* § 1716 (3d ed., April 2026
Update) .......... 18

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a Rule 22 interpleader and declaratory judgment action. Plaintiffs Jonathan L. Adam and GCZ Global, LLC, are defendants in an SEC enforcement action in the Northern District of Georgia and judgment debtors on a $141,063,243.99 default judgment held by Defendant Bliss Creek Fund 1, LLC, domesticated in Texas.[1] A federal asset freeze order entered August 26, 2024 bars transfer of the Disputed Assets. Bliss Creek has filed an Application for Writ of Execution in the Texas Business Court directing seizure of the same assets. The Complaint (Dkt. 1) was filed July 1, 2026. The SEC has not appeared. Bliss Creek filed the pending Motion to Dismiss (Dkt. 12) on August 13, 2026. No discovery has taken place. The case is at the pleading stage.

[1] On August 14, 2026, the Wyoming court denied a motion filed by GCZ Global to set aside the default and compensatory damages but set aside punitive damages for a hearing. Plaintiffs attach the Order for the Court's convenience. Ex. L. The compensatory component stands. The competing claims existed before that ruling and persist after it, so the ruling does not affect this Motion or Response.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Bliss Creek advances four discrete arguments in support of its Motion to Dismiss. Plaintiffs contend that the Complaint contains well-pleaded factual allegations more than sufficient to withstand each of those arguments.

**1. Subject-matter jurisdiction (Rule 12(b)(1)).** Whether the Complaint alleges a justiciable controversy and invokes a valid waiver of sovereign immunity. The plaintiff bears the burden of establishing jurisdiction. *Burnett Specialists v. Cowen,* 140 F.4th 686, 693 (5th Cir. 2025); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Id.*

**2. Failure to state a claim (Rule 12(b)(6)).** Whether the Complaint states a plausible interpleader claim under Rule 22. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All well-pleaded facts are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**3. Anti-Injunction Act.** Whether 28 U.S.C. § 2283 bars the requested stay of state-court execution proceedings at the pleading stage. Whether the "in-aid-of-jurisdiction" exception permits a stay necessary to prevent state proceedings from interfering with the federal court's jurisdiction. The question on a motion to dismiss is whether the Complaint plausibly alleges entitlement to such relief.

**4. Declaratory jurisdiction.** Whether the Court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, guided by the *Trejo* factors. The *Brillhart/Wilton* framework applies. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994). Declining jurisdiction is an abuse of discretion when no alternative forum can resolve the full controversy.

## SUMMARY OF ARGUMENT

A federal freeze order says do not move these assets. A state-court writ says seize them. Both reach the same property. That conflict is present, concrete, and justiciable—not hypothetical or contingent. Two sovereign-immunity waivers, 5 U.S.C. § 702 and 28 U.S.C. § 2410(a)(5), independently support jurisdiction over the SEC. If this case is dismissed, one investor will seize assets frozen for the benefit of all victims of the same alleged fraud, and no court will have determined whether that outcome is correct.

Rule 22 requires two things: adverse claimants and exposure to double or multiple liability. Both are present. The SEC and Bliss Creek target the same frozen assets for the same alleged wrongdoing. Their claims overlap by at least $16 million. Rule 22 imposes no innocent-stakeholder requirement, no deposit prerequisite, and no fact-pattern limitation—and Bliss Creek's Motion depends on importing all three.

The Anti-Injunction Act does not bar the targeted stay Plaintiffs request. The "in-aid-of-jurisdiction" exception permits a federal court to stay state proceedings that threaten property it must control to adjudicate the case before it. Bliss Creek's writ threatens exactly that property.

Every Trejo factor supports exercising declaratory jurisdiction. No other court can bring the SEC, Bliss Creek, and the frozen Texas property into one proceeding. The Northern District of Georgia cannot join Bliss Creek. The Texas Business Court cannot join the SEC. If this Court declines jurisdiction, Plaintiffs have no forum and no path to resolution.

The Motion should be denied.

## **INTRODUCTION**

Two separate legal proceedings have resulted in liability for the **same** alleged wrongdoing and produced irreconcilable commands directed at the **same** finite pool of assets: the SEC's federal freeze says do not move the property, while Bliss Creek's state-court writ says submit it for seizure. Plaintiffs need one court to decide how those commands coexist.

Rule 22 is tailored to these facts: one alleged wrongdoing, two claimants, one pool of frozen assets, and a concrete risk that satisfying one obligation will make compliance with the other impossible. Bliss Creek, however, asks this Court to dismiss before the competing claims are heard. It advances four separate grounds for dismissal. None succeeds. The Complaint alleges a concrete conflict, identifies the competing claims and the property at stake, and invokes a procedural device designed for exactly this situation.

But if this case is dismissed, the consequences extend beyond the players in this action. Bliss Creek will likely seize assets that the SEC froze to protect all victims of the alleged fraud—not just Bliss Creek. The frozen assets are finite. Once they're gone, the SEC's disgorgement process, which covers approximately $61.5 million in losses across multiple investors, will have nothing to distribute. Bliss Creek will have recovered ahead of every other victim, not because its claim has priority, but because it moved fastest. No court will have decided whether that outcome is legally correct. That is the precise inequity Rule 22 exists to prevent.

Moreover, no other court can resolve this dispute. The Northern District of Georgia controls the freeze but cannot join Bliss Creek, which has no Georgia contacts. The Texas Business Court controls the writ but cannot join the SEC or interpret a federal enforcement order. The Wyoming court is deciding a Rule 60(b) motion but has no jurisdiction over Texas property or the SEC. This Court is the only forum where the SEC, Bliss Creek, and the frozen Texas property can all be brought together. If this Court declines jurisdiction, there is no Plan B. Plaintiffs will remain

subject to irreconcilable commands, with no path to compliance and no forum for resolution. That is the definition of a justiciable controversy.

## FACTUAL BACKGROUND

Plaintiffs incorporate by reference the facts alleged in the Complaint (Dkt. 1). Compl. ¶¶ 1–47. The essential and concrete facts alleged are these:

The SEC filed an enforcement action in the Northern District of Georgia, Case No. 1:24-cv-03774-MHC, alleging that Adam and GCZ operated a fraudulent securities scheme. On August 26, 2024, the court entered Asset Freeze Orders. Compl. ¶¶ 14–18; Compl., Exs. A and B.

On August 27, 2024, Consent Judgments were entered against Plaintiffs ordering them to pay "disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty" in amounts "to be determined by the Court upon motion of the Commission." Compl. ¶¶ 19–21; Compl., Exs. C and D at 4. The SEC seeks $30,512,775 in disgorgement, $6,221,302 in prejudgment interest, civil penalties, and a constructive trust over certain real properties. Remedies Mot., attached as Ex. M at p. 3.[2]

Three weeks later, on September 19, 2024, Bliss Creek sued Plaintiffs in Wyoming for fraud and other claims that stemmed from the same alleged fraudulent securities scheme alleged by the SEC months earlier. Its complaint relied on the SEC's allegations, underscoring that both claims arise from the same conduct.[3] Based on representation made by Bliss Creek's co-founder that the lawsuit was just a "formality" and would never be enforced, Adam and GCZ did not

[2] The Complaint speaks to the SEC's disgorgement efforts. The Remedies Motion is offered solely to provide context to those efforts.
[3] In its appeal pending before the Fifteenth Court of Appeals regarding jurisdictional matters, Plaintiff Adam contends that it was improper for the Wyoming court to rely on the SEC's unadjudicated allegations to assert jurisdiction over Mr. Adam under an alter ego theory. By noting that Bliss Creek's Wyoming case relied heavily on these allegations, Plaintiffs in no way waive their right to challenge the Wyoming court's reliance on those allegations as improper.

answer. On April 4, 2025, the Wyoming court entered a $141,063,243.99 default judgment—$47,021,081.33 compensatory and $94,042,162.66 punitive. Compl. ¶¶ 22-26.

Bliss Creek domesticated the judgment in Texas. Compl. ¶¶ 27-30. On June 5, 2026, it filed an Application for Writ of Execution directing "the sheriff or constable of any county in Texas to seize and sell the non-exempt property of [the] Judgment Debtors" in satisfaction of its judgment. Compl. ¶ 32; Compl., Ex. I.

Bliss Creek filed a Wyoming lawsuit built on the SEC's own allegations, obtained a default judgment, and now seeks to execute against the same assets the SEC has frozen before the SEC can complete its enforcement process and before other investors included in the loss pool can participate in any recovery.

Bliss Creek's approximately $16,040,000 investment is included in the SEC's calculation of approximately $61.5 million in total investor losses. Compl. ¶ 35. The SEC seeks those **same dollars** as disgorgement, while Bliss Creek seeks them as compensatory damages. Without coordination, Plaintiffs pay twice — and Bliss Creek recovers twice.

## DISPUTED ASSETS

Plaintiffs' assets at issue fall into three categories.

**Disputed Assets** (Frozen by Federal Order; Targeted by Both the SEC and Bliss Creek):

- Real property: 715 S. Walker, 9 Greystone Ct., and 719 S. Walker, Angleton, TX. Compl. ¶ 34(a); Compl., Exs. A and B at 3–4.
- Financial accounts: First Carolina Bank, JP Morgan Chase, Comerica, Chicago Title, and Wells Fargo (accounts ending 1972, 4153, 3372, 5573). Compl. ¶ 34(b); Compl., Exs. A and B at 5.
- Cryptocurrency: Kraken and Coinbase. Compl. ¶ 34(c); Compl., Exs. A and B at 5–11.
- All other proceeds of the alleged securities offering, wherever located. Compl., Exs. A and B at 1–2.

The Asset Freeze Order is broad—it reaches any proceeds of the alleged offering, not just the specifically listed assets. But it is also specific: it reaches **only** assets acquired with proceeds of the alleged securities offering.

**<u>Exempt Assets</u>** (Not Subject to Either Claim or Not Subject to One Claim):

- Homestead: 518 Bryan St. Exempt under Tex. Const. art. XVI, § 50.
- Current, contingent wages: $20,000/month. Exempt under Tex. Prop. Code § 42.001(b)(1).
- Personal property: Under $100,000. Exempt under Tex. Prop. Code § 42.001(a).

**<u>Non-Disputed, Non-Exempt Assets</u>:**

- Post-freeze order checking and savings accounts, exclusive of wages, if any.
- Non-exempt personal property (over $100,000), if any.
- Other assets acquired without use of proceeds of the alleged securities offering, if any.

The Complaint in Interpleader implicates **<u>only</u>** the Disputed Assets. Bliss Creek is free to pursue non-disputed, non-exempt assets in its state-court proceedings.

## <u>FUNDAMENTAL ERRORS IN BLISS CREEK'S MOTION</u>

Bliss Creek's Motion rests on a series of errors that recur throughout its arguments that warrant preliminary attention.

### A. Bliss Creek Conflates Statutory Interpleader with Rule 22, Which Requires Only Two Things.

Rule 22 interpleader differs from statutory interpleader under 28 U.S.C. § 1335: it requires no deposit or minimal diversity and uses the same jurisdictional basis as any other federal action. Plaintiffs proceed under Rule 22 only. Rule 22(a)(1) imposes two requirements: (1) two or more adverse claimants, and (2) claims that may expose the stakeholder to double or multiple liability. Both are met. The SEC and Bliss Creek target the same frozen assets, and their overlapping claims—the frozen assets and Bliss Creek's judgment—create a concrete risk of paying the same money twice. Plaintiffs' status as judgment debtors with stakes in the disputed assets does not

disqualify them. However, Bliss Creek imports § 1335 requirements—deposit, surrender of the stake, and a disinterested stakeholder—into the Motion, none of which Rule 22 imposes.

**B. Interpleader Is Not a Delay Tactic; It Is a Response to a Concrete Conflict.**

Bliss Creek suggests the timing of this action reveals bad faith. The timeline tells a different story. Once the writ issued, Plaintiffs faced an imminent conflict between the writ and the freeze. They filed an interpleader—the device designed for exactly that situation—less than a month after Bliss Creek's Application. The subsequent bond motion in the Business Court reflects the same underlying reality: Plaintiffs cannot post meaningful security because the freeze immobilizes the assets that would serve as collateral. Filing in both courts is not forum shopping, it is a debtor responding to simultaneous enforcement in multiple forums, which is the very problem interpleader is meant to solve.

**C. The Atypical Facts Make Interpleader More Necessary, Not Less.**

A typical interpleader involves a neutral stakeholder caught between competing claimants. This case involves a debtor caught between a federal enforcement action and a state-court judgment. That distinction makes interpleader more necessary, not less. A neutral stakeholder can deposit the disputed property and withdraw. Adam cannot—the freeze bars any transfer, while the writ demands seizure. Bliss Creek's insistence on a typical fact pattern reads a limitation into Rule 22 that neither the text nor the case law supports.

**D. The Frozen Assets Are the Only Meaningful Source of Recovery**

The frozen assets are effectively the only meaningful source of recovery for either claimant. In *Airborne Freight Corp. v. United States*, 195 F.3d 238, 241–42 (5th Cir. 1999), the Fifth Circuit reserved the scenario of a debtor "bankrupt or otherwise **bereft of funds other than those in the stake**." (emphasis added). That is Plaintiffs' situation. Adam's non-frozen assets—exempt wages, an exempt homestead, exempt personal property, and a minimal checking

account—cannot satisfy either claim. That reality confirms that the fund is identifiable, the claims are adverse, and the double-liability risk is concrete.

## ARGUMENT AGAINST MOTION TO DISMISS

Bliss Creek advances four grounds for dismissal. None succeeds.

### A. BLISS CREEK'S RULE 12(b)(1) CHALLENGE FAILS.

Bliss Creek first argues that this Court lacks subject-matter jurisdiction. Under Rule 12(b)(1), the party invoking jurisdiction bears the burden of establishing it, and the court may consider the Complaint supplemented by undisputed facts. *Ramming*, 281 F.3d at 161. Bliss Creek contends that the alleged conflict between the Asset Freeze Order and its collection efforts is "hypothetical" and "contingent," and that no justiciable controversy exists. Mot. at 5–9. The Complaint's concrete allegations say otherwise.

#### 1. The Controversy Is Ripe and Justiciable.

That challenge fails because the Complaint plausibly alleges a present dispute. A controversy is ripe when it presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The allegations in the Complaint meet that standard.

The conflict between the Asset Freeze Order and Bliss Creek's execution efforts is immediate and concrete—not hypothetical or contingent. Three sets of properly alleged facts show a real risk:

- The Asset Freeze Orders have been in effect since August 26, 2024. They bar Plaintiffs from transferring, alienating, or disposing of the identified real property, accounts, and cryptocurrency. Compl. ¶¶ 14–18; Compl., Exs. A and B at 1–11.

- Bliss Creek has filed an Application for Writ of Execution in the Texas Business Court. Once issued, the writ will direct law enforcement to "seize and sell the non-

exempt property of [the] Judgment Debtors" statewide. Compl. ¶¶ 32–33; Compl., Ex. I. Plaintiffs need not wait for a levy to materialize before the conflict is live.[4]

- The two instruments reach the same property: the Angleton properties by address, the accounts by institution and number, the cryptocurrency by exchange, and other assets procured by the alleged securities scheme. Compl. ¶¶ 34-35.

These are concrete allegations, not legal conclusions. *Iqbal*, 556 U.S. at 678. Plaintiffs need not violate one obligation before seeking guidance.

Bliss Creek cites *Orix Credit Alliance, Inc. v. Wolfe*, which dismissed a declaratory action as unripe, finding that there was no actual controversy based upon "threatened claim" in a "draft motion." 212 F.3d 891, 895–97 (5th Cir. 2000). There, no order, writ, or instrument identified the property; here, the freeze order has been in effect for two years, the application for writ has been filed, and both reach specifically identified property. Here, the conflict is not 'threatened' by some 'draft' document—it is real and grounded in live, judicially enforceable filings.

Issuance of the writ is entirely within Bliss Creek's control, and once it issues, execution can proceed without further judicial authorization. The concern alone creates concrete, competing obligations—not a physical levy. This is not a case where the harm "may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (concluding that a claim was not ripe where it was speculative whether the problem being presented would ever need solving).

Bliss Creek's three ripeness arguments do not change that result. First, the SEC's claims need not be liquidated because the conflict is between a freeze order and a writ—not two final dollar amounts. Mot. at 5–6. Second, no physical levy is required; Rule 22 addresses exposure to

[4] The Wyoming court's August 14, 2026 Order confirms that Bliss Creek's claim is live. The court denied the motions to set aside the default and the compensatory-damages judgment. It set aside only punitive damages for a hearing. Ex. L. The compensatory component stands.

double or multiple liability, not completed harm. *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983) ("even the mere 'threat of multiple vexation by future litigation provides sufficient basis for interpleader'"); *see also Tittle v. Enron Corp.*, 463 F.3d 410, 424 n.10 (5th Cir. 2006) (citing *Corrigan Dispatch* with approval). Bliss Creek does not address or attempt to distinguish this principle. And finally, the possibility of asking the Georgia court to modify the freeze confirms rather than eliminates the conflict—Plaintiffs would need one court's permission to comply with another court's command, and the Georgia court cannot join Bliss Creek. Moreover, modification would not resolve the underlying dispute; it would simply expose the assets to execution without any determination of priority, leaving the SEC's disgorgement claims and the interests of other defrauded investors unprotected.

The Complaint alleges a named federal enforcement action, a dated freeze order, dated consent judgments, and a dated application for writ of execution. Compl. ¶¶ 14–18, 26, 32–34. Reinforced by Compl., Exs. A–D, I, these allegations establish a present Article III controversy sufficient to survive a 12(b)(1) attack.

**2. The Post Freeze Account Does Not Eliminate the Conflict.**

Separately, Bliss Creek points to the Asset Freeze Order's "Post Freeze Account" provision and contends that Plaintiffs can satisfy the judgment from new income. Mot. at 7. That limited provision allows Plaintiffs to receive and transact new income; it does not release the frozen assets.

The numbers refute the argument. Bliss Creek's compensatory-damages judgment is $47,021,081.33; Adam's gross salary, as stated in Bliss Creek's Motion, is $20,000 per month and contingent on continued employment.[5] Salary alone could not satisfy that amount for nearly 200 years.

[5] Given that Adam's income does not fall within the Disputed Assets and is not relevant to the Complaint in Interpleader, it was not addressed in the Complaint. For context, Adam secured new employment in May 2026. His

More importantly, the writ seeks "all non-exempt personal and real property," Compl., Ex. I at 4—including the frozen real estate, accounts, and cryptocurrency. It is not limited to funds in the post freeze account. A narrow income provision does not eliminate the conflict when Bliss Creek's own writ targets the entirety of the Disputed Assets.

### 3. Sovereign Immunity Does Not Bar Claims Against the SEC.

Bliss Creek's sovereign-immunity argument fails because Plaintiffs seek no money damages from the SEC. They seek equitable and declaratory relief: a determination of the competing claims' relative priority to identified property and a stay that preserves that property pending adjudication. Two statutory waivers support jurisdiction.

#### i. Section 702 of the APA

Section 702 waives sovereign immunity for an action "seeking relief other than money damages" against a federal agency. 5 U.S.C. § 702. Plaintiffs ask the Court to determine priority and preserve the disputed property; they do not ask the SEC to pay them.

The Fifth Circuit has confirmed that § 702 eliminates the sovereign-immunity defense in all nonmonetary suits against federal agencies. *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 199 (5th Cir. 2024) ("By its terms, § 702 waives immunity for any 'action' seeking nonmonetary relief in federal court . . . its text does not suggest it excludes state or common law claims."). The waiver applies to statutory and nonstatutory causes of action. *Id.*; *see also Salomon Smith Barney v. McDonnell,* 201 F.R.D. 297, 302–03 (S.D.N.Y. 2001) (sustaining federal-question jurisdiction in an interpleader action involving frozen assets subject to competing SEC and private claims). After § 702, "the only portion of the United States' original immunity from suit that

---

salary is contingent on continued employment and, at $20,000 per month gross, could not satisfy the $47 million compensatory-damages judgment for nearly 200 years, even assuming no taxes, no living expenses, and no interruption.

Congress continues to assert" is "a right not to pay damages." *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th at 197; *see also Int'l Marine Carriers v. Oil Spill Liability Trust Fund*, 903 F. Supp. 1097, 1102 (S.D. Tex. 1994) (holding § 702 covers equitable and restitutionary, not monetary, relief). Plaintiffs' requested priority determination and targeted stay fall within the waiver.

Bliss Creek argues that § 702 "depends on agency action" and that the Complaint challenges none. Mot. at 8. That misreads § 702. Section 702 does not require the plaintiff to challenge the agency action—it requires only that the action seek "relief other than money damages." *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 197 (5th Cir. 2024). Plaintiffs do not challenge an SEC enforcement decision; they accept the freeze and the enforcement action and seek only a determination of competing property rights—quintessentially equitable relief within § 702's broad waiver. Moreover, the underlying controversy requires interpretation of a federal enforcement order entered under the Securities Act and the Exchange Act, providing an independent federal-question basis for jurisdiction. *See* Compl. ¶ 6.

**ii. Section 2410(a)(5)**

In addition to § 702, Section 2410(a)(5) provides an independent waiver for "an action of interpleader or in the nature of interpleader with respect to ... real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(5). The SEC has recorded a *lis pendens* against 518 Bryan Street, Ex. N (of which Plaintiffs request judicial notice under Federal Rule of Evidence 201(b)(2) as a public record of the Brazoria County Clerk's Office whose accuracy is readily verifiable) and has requested relinquishment of the Angleton properties—including 518 Bryan—through a constructive trust. Compl. ¶¶ 17-19; Ex. M. The *lis pendens* is a recorded instrument reflecting the United States' claimed interest in specifically

identified real property; that claim triggers § 2410(a)(5)'s broad "has or claims" language at the pleading stage.

Bliss Creek may argue that § 2410 is narrow. That's true. The Fifth Circuit does require more than a generalized claim. But the SEC's claim here is anchored to a recorded *lis pendens* and a pending motion for a constructive trust over identified property—not a generalized assertion of title. At minimum, the Complaint plausibly invokes § 2410(a)(5) as an alternative waiver.

Bliss Creek contends that a preliminary asset freeze is not a lien and that the SEC's requested constructive trust is merely a "request, not an adjudicated property interest." Mot. at 8. But § 2410 reaches property on which the United States "has or claims" a lien; the SEC's recorded *lis pendens* and pending constructive-trust motion suffice at the pleading stage. Whether the SEC ultimately establishes a lien is a later question and cannot support dismissal under Rule 12(b)(1).

Even accepting Bliss Creek's narrow reading, § 702 independently waives sovereign immunity, and the § 2410 argument provides no basis for dismissal under Rule 12(b)(1).[6]

**B. BLISS CREEK'S RULE 12(b)(6) CHALLENGE FAILS.**

Interpleader proceeds in two stages: first, whether interpleader is proper; second, the merits. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). This Motion concerns Stage 1 only. The Complaint satisfies each element Bliss Creek challenges.

---

[6] Importantly, federal-question jurisdiction would remain even if the SEC were not a defendant. The controversy requires interpretation of a federal enforcement order entered under the Securities Act and the Exchange Act. *SEC v. Novinger*, 40 F.4th 297, 301 (5th Cir. 2022); see also *Franchise Tax Bd. v. Constr. Lab. Vacation Trust*, 463 U.S. 1, 13 (1983). Section 1367 supplies supplemental jurisdiction over related state-law issues. The Asset Freeze Order is not background; it is one of the two commands that created this dispute. Bliss Creek argues that dismissing the SEC eliminates federal-question jurisdiction. Mot. at 13–14. That argument assumes the SEC is the sole basis for jurisdiction. It is not. The underlying controversy requires interpretation of a federal enforcement order, and that federal question exists whether or not the SEC remains a party.

### 1. Rule 22 Imposes No "Innocent Stakeholder" Requirement.

Bliss Creek's central argument is that Adam, as a "judgment debtor" and "enforcement defendant," cannot invoke interpleader because only a neutral, disinterested stakeholder may do so. *See, e.g.*, Mot. at 13-14. Rule 22 says otherwise.

Rule 22(a)(1) provides: "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though ... the claims lack a common origin or are adverse and independent of one another, and **the plaintiff denies liability in whole or in part to any or all of the claimants**." Fed. R. Civ. P. 22(a)(1) (emphasis added).

That text permits a plaintiff to invoke interpleader while denying liability, claiming an interest in the property, or facing claims with no common origin. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 532 n.9 (1967), suggests that Rule 22 reaches actions "in the nature of interpleader," including cases where the plaintiff is not wholly disinterested. The Fifth Circuit likewise permits a "plaintiff-stakeholder [who] also makes a claim to the stake" to maintain interpleader. *Airborne Freight*, 195 F.3d at 240 (vacated on other grounds).

Bliss Creek reads *Tashire* as limiting interpleader to neutral stakeholders. Mot. at 9–10, 21–22. But *Tashire* recognized actions "in the nature of interpleader" where the plaintiff "is not wholly disinterested with respect to the fund," 386 U.S. at 532 n.9. The 1937 Advisory Committee Note confirms that Rule 22 adopted "the newer and more liberal lines of joinder in the alternative," eliminating the former restriction to wholly disinterested stakeholders. Fed. R. Civ. P. 22 advisory committee's note (1937). Bliss Creek's argument would restore the removed limitation.

### 2. The Disputed Assets Are a Single, Identifiable Fund.

Bliss Creek argues the Complaint identifies no single fund, relying on *Wausau Insurance Cos. v. Gifford*, 954 F.2d 1098, 1101 (5th Cir. 1992). *Wausau* dismissed because six separate insurance policies covered different periods and risks, making it "unclear whether there are legitimate claims against each fund." 954 F.2d at 1101. That was scatter. This is convergence: one federal order defines the pool, both claims arise from the same alleged securities scheme, and the $16 million overlap eliminates any argument that they target independent funds.

*Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976), requires a fund that is "definite" and "ascertainable." The Disputed Assets identified in the Factual Background satisfy that standard: four Angleton parcels, five financial institutions, Kraken, Coinbase, and the two legal instruments that define the pool. Exact valuation can come later. Cryptocurrency fluctuates, and real estate may require appraisal. Identity and value are different questions. The Complaint therefore plausibly identifies a single, identifiable fund. Bliss Creek's challenge to this element fails under Rule 12(b)(6).[7]

### 3. The SEC and Bliss Creek Assert Adverse Claims to the Same Property.

On the adversity element, Bliss Creek characterizes its $141 million judgment as a general money judgment, not a claim adverse to a specific fund. Mot. at 17–18. It relies on *Airborne Freight*, where a judgment creditor could satisfy its judgment from other assets held by a fully solvent debtor. 195 F.3d at 241–42. But here, Bliss Creek's writ reaches the same frozen assets the

[7] Bliss Creek overstates *Murphy* for the proposition that inchoate claims against general assets cannot support interpleader. In *Murphy*, the Fifth Circuit dismissed an interpleader involving a speculative attorney-fee claim—an obligation that was genuinely contingent, with no adjudication, no pending motion, and no fixed amount. 534 F.2d at 1158–59. Bliss Creek applies that holding to claims backed by consent judgments, a pending SEC remedies motion seeking $30,512,775 in disgorgement, and a $47 million compensatory-damages judgment that has been entered, domesticated, and survived a Rule 60(b) challenge. These are not "inchoate, uncertain claims" in the *Murphy* sense. *Murphy* warned against broadening interpleader to reach purely speculative obligations. It did not bar interpleader where, as here, both claimants hold existing judgments or orders directed at specifically identified property.

SEC claims. The SEC's "claim" is not the freeze order alone—it is the pending motion for $30,512,775 in disgorgement, the request for a constructive trust over specifically identified property, and the lis pendens recorded against 518 Bryan Street, Ex. M. The freeze merely preserves those claims; Bliss Creek's writ threatens to frustrate them.

Ex. L confirms that the compensatory-damages judgment stands. This is a live claim, not a contingent one. Plaintiffs' remaining property cannot satisfy even the $47 million compensatory-damages component that survives the Wyoming court's August 14, 2026 Order. Bliss Creek's writ seeks "all non-exempt personal and real property" and therefore reaches the frozen properties, accounts, and cryptocurrency. Compl., Ex. I at 4. Its realistic path to recovery runs through the same assets the SEC claims.

*Airborne Freight* reserved this scenario—a debtor "bankrupt or otherwise **bereft of funds other than those in the stake**." 195 F.3d at 241–42 (emphasis added). The debtor there was "fully solvent" and could satisfy its judgment from other assets; the opposite is true here. *Id.* A debtor whose only non-frozen assets are exempt from execution or *de minimis* is functionally bereft. The general form of Bliss Creek's judgment does not change that the frozen assets are the only meaningful source of recovery.

The overlap makes adversity clear: the SEC's calculation includes Bliss Creek's approximately $16,040,000 investment in the approximately $61.5 million loss pool. Compl. ¶ 35. Bliss Creek is an alleged victim in that pool, so its compensatory judgment and the SEC's disgorgement seek the same assets for the same loss category. Allowing Bliss Creek to execute ahead of the SEC's disgorgement process would permit one investor to recover in full while other victims of the same scheme receive nothing, the very inequity orderly interpleader prevents. No mechanism currently exists to credit one recovery against the other: Bliss Creek has declined to

agree to any offset, and no court has imposed one. Plaintiffs therefore face two separate, enforceable obligations with no automatic coordination—the multiple-liability risk Rule 22(a)(1) addresses. *SEC v. Bergin,* No. 3:13-CV-1940-M, 2015 WL 4275509, at *3-4 (N.D. Tex. July 15, 2015) (offsetting criminal forfeiture against civil disgorgement because "[d]efendant is only required to give back the proceeds of his securities fraud once"), confirms that a defendant should not pay twice for the same ill-gotten gains. The Complaint plausibly alleges that risk and survives Bliss Creek's Rule 12(b)(6) challenge.

**4. Rule 22 Does Not Require a Pre-Filing Deposit.**

Separate from its substantive objections, Bliss Creek repeatedly argues that Plaintiffs' failure to deposit is fatal. Mot. at 15–16, 19–20. That imports § 1335(a)(2)'s deposit-and-bond requirement into Rule 22, a joinder device with no express pre-discharge deposit prerequisite and no requirement of deposit, bond, or surrender of the stake. Wright & Miller, *Federal Practice and Procedure* § 1716 (3d ed., April 2026 Update); *Murphy*, 534 F.2d at 1159. Plaintiffs proceed under Rule 22, not § 1335; the argument cannot support dismissal.

This Court rejects Bliss Creek's deposit argument: Rule 22 does not require a deposit to establish jurisdiction, and a plaintiff need not perform the impossible act of depositing property it cannot transfer. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 391 F. Supp. 2d 541, n. 29 (S.D. Tex. 2005); *see also Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982).

Bliss Creek's deposit argument proves Plaintiffs' case. The reason Plaintiffs cannot deposit is that the freeze order bars them from transferring the assets. The reason Plaintiffs cannot post a supersedeas bond is that the freeze immobilizes the assets that would serve as security. The reason Plaintiffs cannot simply comply with the writ is that the freeze prohibits exactly what the writ demands. At every turn, the freeze and the writ collide. That is not a hypothetical conflict, it is the

most concrete kind of conflict there is: a party physically unable to comply with both commands at once.

The deposit argument fails as a matter of law and cannot support dismissal under Rule 12(b)(6). [8]

**5. Rule 22 Imposes No Factual-Pattern Limitation**

Bliss Creek's remaining arguments share a premise: this case does not look like a typical interpleader, and accordingly, should be dismissed. But Rule 22 contains no fact-pattern limitation. It asks whether competing claims may expose the plaintiff to double or multiple liability. Fed. R. Civ. P. 22(a)(1). *Tashire*, 386 U.S. at 533–34, and *Airborne Freight*, 195 F.3d at 240, confirm that breadth. As discussed above, the atypical facts here make interpleader more necessary, not less.

Bliss Creek invokes *Tashire*'s warning that interpleader is not an all-purpose "bill of peace." Mot. at 9–10 (quoting 386 U.S. at 535). But *Tashire* upheld the interpleader. It rejected only the overbroad injunction that swept in "all litigation arising from the accident" beyond the deposited fund. 386 U.S. at 531–34. Plaintiffs seek no comparable relief.

**C. The Anti-Injunction Act Does Not Support Dismissal.**

Bliss Creek argues the Anti-Injunction Act, 28 U.S.C. § 2283, bars the limited stay Plaintiffs request. Mot. at 24–25. It does not. The Act bars federal courts from staying state-court proceedings, but it permits a stay "necessary in aid of its jurisdiction."

The facts fall within that exception. The exception applies when state proceedings threaten property the federal court must control. *General Railway Signal Co. v. Corcoran*, 921 F.2d 700,

---

[8] Bliss Creek misreads *SEC v. Blakstad*, No. 20-CV-7468, 2020 WL 7398755 (S.D.N.Y. Dec. 17, 2020), as requiring a deposit before interpleader can proceed. Mot. at 7, 17–20, 24. *Blakstad* held only that "[a]ll that is being decided is whether the Funds may be deposited into the court's registry"—the deposit was relief, not a jurisdictional condition—and that the failure of competing claims to have ripened was immaterial because "Rule 22 requires only the potential existence of adverse claims." *Id*. at *3–4. Thus, *Blakstad* defeats, rather than supports, Bliss Creek's ripeness and deposit arguments.

707 (7th Cir. 1991), makes the point in the Rule 22 context: a federal interpleader court may stay a state proceeding when effective adjudication of the interpleader claim could not proceed without preventing collection of a competing judgment. Bliss Creek's writ threatens the same assets subject to the federal freeze, so execution could dissipate the fund before priority is decided.

The Fifth Circuit applied the same principle in *Newby v. Enron Corp.*, 338 F.3d 467, 475 (5th Cir. 2003) (upholding a narrowly tailored order protecting federal determinations from duplicate or inconsistent relief). *See also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334–35 (5th Cir. 1981) (protecting federal adjudicatory authority); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (preserving the court's ability to adjudicate); and *Tijerina v. Securian Life Insurance Co.*, No. EP-24-CV-86-KC, 2024 WL 4820861, at *5 (W.D. Tex. Nov. 18, 2024) (permitting a Rule 22 court to stay a pending state proceeding under the exception). Together, these authorities support the legal sufficiency of Plaintiffs' narrow stay request; they do not require the Court to decide that relief on a motion to dismiss.

Bliss Creek attempts to distinguish *Corrugated Container* and *Baldwin-United* on the ground that they involved "complex consolidated proceedings and settlements already within [the federal court's] jurisdiction." Mot. at 23. But those cases establish the principle, not the exception: a federal court may stay state proceedings when necessary to protect its adjudicatory authority over competing claims. The Complaint plausibly alleges that need here, so the distinction does not support dismissal.

*Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 902–03 (5th Cir. 2019) offers similar facts. It upheld bar orders protecting a federal receivership res and held that a "threat to the court's jurisdiction" exists where a state proceeding threatens property forming the basis for federal *in rem* jurisdiction. *Id.* at 903. Bliss Creek may distinguish formal *in rem* jurisdiction, but the

principle extends to assets under effective federal control. The Asset Freeze Order placed the Disputed Assets under such control, and Bliss Creek's writ threatens those same assets. Those allegations support a targeted stay; Plaintiffs need not establish at this stage that the Court will grant it.

The collective-action concern identified in *Zacarias* is also present. Bliss Creek is one of many investors in the SEC's approximately $61.5 million loss pool; allowing it to execute ahead of others would undermine orderly disgorgement and recreate that problem. These allegations plausibly support a targeted stay without requiring the Court to decide who ultimately prevails.

Plaintiffs seek no blanket injunction. They seek only a stay of execution, levy, garnishment, and turnover proceedings directed at the specifically identified Disputed Assets—the same assets frozen by the federal order—until this Court determines priority. That is the proportional relief *Tashire* described: "the needs of orderly contest with respect to the fund" mark "the outer limits of the controversy." 386 U.S. at 534. The stay would not prevent Bliss Creek from collecting from genuinely non-frozen, non-disputed assets. The Court need not decide now whether to grant that stay; the Complaint plausibly alleges entitlement to targeted stay relief, which is all Rule 12(b)(6) requires.[9]

### D. Bliss Creek's *Brillhart/Wilton* argument does not warrant dismissal.

Bliss Creek invokes *Brillhart/Wilton* and asks this Court to decline declaratory jurisdiction. That framework requires Bliss Creek to identify an adequate parallel forum capable of resolving the full controversy. It cannot. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283–89 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–96 (1942); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388–92 (5th Cir. 2003).

---

[9]Bliss Creek's discussion on Section 2361's limitation to statutory interpleader is irrelevant because Plaintiffs rely on § 2283's in-aid-of-jurisdiction exception.

No adequate alternative forum exists:

- The **Texas Business Court** cannot join the SEC, interpret the federal Asset Freeze Order, or decide federal enforcement priorities.
- The **Northern District of Georgia** cannot join Bliss Creek, which is not a party to the SEC action and has no known Georgia contacts.
- The **Wyoming state court** has ruled on the Rule 60(b) motion but is not deciding priority among claims to Texas property. On August 14, 2026, it denied relief from default and the compensatory-damages judgment and set aside only punitive damages for a hearing.
- The **Fifteenth Court of Appeals** is deciding only whether the Wyoming judgment was properly domesticated—not priority to the frozen assets.

Taken as true, these allegations plausibly show that no other forum can bring the SEC, Bliss Creek, and the frozen Texas property into one proceeding. *Sherwin-Williams* therefore provides no basis for dismissal at this stage, and the seven *Trejo* factors point the same way. See *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

**The first, fourth, fifth, and seventh factors** do not support dismissal. Multiple proceedings exist in Texas, Wyoming, and Georgia, but none can resolve the full controversy — no single court has jurisdiction over the SEC, Bliss Creek, and the Texas property. Exercising jurisdiction creates no inequity; interpleader subjects Plaintiffs to the Court's priority determination without advantaging them at any claimant's expense. Only this Court can clarify the relative priority of the SEC's and Bliss Creek's claims to the identified property. And consolidating competing claims in one forum reduces friction — it replaces the current patchwork spanning three states with a single proceeding.

**The second, third, and sixth factors** likewise do not support dismissal. The Complaint plausibly alleges that Plaintiffs filed in direct response to Bliss Creek's June 5, 2026 Application for Writ of Execution—an active enforcement step—not in anticipation of a lawsuit. It likewise plausibly alleges no forum shopping: the Southern District of Texas is where the property sits, the

execution is pending, and the principal debtor resides. Finally, the allegations do not show procedural fencing; interpleader brings all claimants together rather than excluding anyone. See *Trejo*, 39 F.3d at 590–91; *Sherwin-Williams*, 343 F.3d at 388–92.

These allegations plausibly show that a coordinated forum would prevent double liability while preserving each claimant's opportunity to litigate; Bliss Creek therefore has not shown on a motion to dismiss that the declaratory claim warrants dismissal under *Brillhart/Wilton*.[10]

## CONCLUSION

The Complaint presents two irreconcilable commands directed at the same finite pool of assets and a concrete risk of double liability. Those allegations plausibly support each element of the Rule 22 interpleader, the targeted stay request, and the declaratory relief sought. Bliss Creek has not met the Rule 12 dismissal standard. The Motion should be denied. If it is not, no court will determine priority before the frozen assets are seized—and no court can, because no other forum has jurisdiction over both claimants and the Texas property.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. DENY Bliss Creek's Motion to Dismiss in its entirety;
2. Maintain subject-matter jurisdiction over this interpleader and declaratory judgment action;
3. Enter a preliminary order preserving the Disputed Assets pending adjudication of the competing claims; and
4. Grant such other and further relief as the Court deems just and proper.

---

[10]Bliss Creek invokes *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 487 (7th Cir. 1984), for the proposition that interpleader brought in bad faith must be dismissed. But in *Indianapolis Colts*, a party used interpleader to relocate a dispute to a more favorable forum when existing courts were fully competent to resolve it. *Id*. at 486–87. That is not this case. No existing forum can bring the SEC, Bliss Creek, and the Texas property into one proceeding. Adam filed in the Southern District of Texas because that is where the property sits, where the execution is pending, and where the principal debtor lives. Filing where the assets are located is not forum shopping, it is the jurisdictional logic of interpleader itself.

Respectfully submitted,


*/s/ Victor Vital*

Victor Vital
State Bar No. 00794798
victor.vital@haynesboone.com
Elizabeth Wirmani
State Bar No. 24052268
elizabeth.wirmani@haynesboone.com
Haynes and Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR PLAINTIFFS JONATHAN L. ADAM AND GCZ GLOBAL, LLC**


**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure on September 3, 2026.

*/s/ Elizabeth Wirmani*

Elizabeth Wirmani